## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

James G. Mermigis, Esq.
**THE MERMIGIS LAW GROUP, P.C.**
85 Cold Spring Road, Suite 200
Syosset, New York  11791
516-353-0075
James@MermigisLaw.com

*Attorneys for Plaintiffs*

_____

**THE CLEMENTINE COMPANY LLC.** d/b/a **THE THEATER CENTER, PLAYERS THEATER MANAGEMENT CORP.** d/b/a **THE PLAYERS THEATER, WEST END ARTISTS COMPANY** d/b/a **THE ACTORS TEMPLE, SOHO PLAYHOUSE INC.** d/b/a **SOHO PLAYHOUSE, THE GENE FRANKEL THEATRE LLC., TRIAD PROSCENIUM PARTNERS INC.** d/b/a **THE TRIAD, CARAL LTD.** d/b/a **BROADWAY COMEDY CLUB,** and **DO YOU LIKE COMEDY LLC.** d/b/a **NEW YORK COMEDY CLUB,**

|  |  |
|---|---|
| Plaintiffs, | **COMPLAINT** |
| Against | Civil Action No.: |

**ANDREW M. CUOMO**, in his Official Capacity as Governor of the State of New York, **ATTORNEY GENERAL OF THE STATE OF NEW YORK, BILL de BLASIO**, in his Official Capacity as Mayor of the City of New York and **THE STATE OF NEW YORK,**

Defendants.

_____

Plaintiffs The Clementine Company d/b/a The Theater Center ("Theater"), The Players

Theater Management Corp. d/b/a The Players Theater ("Players"), West End Artists Company

d/b/a The Actors Temple ("Actors"), Soho Playhouse Inc. d/b/a Soho Playhouse ("Soho"), The Gene Frankel Theatre LLC. ("Frankel"), Triad Proscenium Partners Inc. d/b/a The Triad ("Triad"), Caral Ltd. d/b/a Broadway Comedy Club ("Broadway"), and Do you like Comedy LLC. d/b/a New York Comedy Club ("New York")(collectively, "Plaintiffs"), for their Complaint against Defendants Governor Andrew M. Cuomo ("Governor"), Attorney General of the State of New York ("Attorney General"), Mayor Bill de Blasio ("Mayor") and State of New York (collectively, "Defendants"), allege as follows:

## NATURE OF THIS ACTION

1.     This civil rights action challenges the executive "shut down" orders issued by Defendants Mayor Bill de Blasio and Governor Andrew M. Cuomo and enforced by the Governor, Defendant Attorney General of the State of New York and the State of New York and the numerous extensions and continued enforcement of the executive orders issued by Defendant Governor Andrew M. Cuomo, which continue to be enforced by them, and by Defendant Attorney General of the State of New York, *now 229 days* after Governor declared a state of emergency on March 7, 2020.

2.     This action seeks declaratory and injunctive relief for deprivations sustained and continued to be sustained by plaintiffs and for violations committed by Defendants, acting under the color of state law, against Plaintiffs' rights as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and for violations of the New York Constitution Article 1, § 11.

2

3.      This is also an action for just compensation required by the Fifth Amendment to the Constitution. The Fifth Amendment to the Constitution requires that the government pay for property it takes: "Rights of Persons…..nor shall private property be taken for public use, without just compensation." U.S. Constitution, 5th Amendment.

## INTRODUCTION

4.      New York City has been the cornerstone of the global theater industry for almost a century. Many of the most notable names in the industry have called this city home, and today it remains a proving ground for countless artists, companies and production teams.

5.      The *small venue theater* industry is an integral piece of the larger performing arts landscape, generating ripple effects into larger scale theater productions. They continue to be a stage for provocative, cutting edge work, and are an invaluable platform for both established and up-and-coming talent, playwrights and creative production teams.

6.      Commercial *small venue theaters* have a median capacity of *only 144 seats,* which is a lesser capacity than most restaurants, gyms, movie theaters, casinos, malls, schools, colleges and catering halls. The median capacity of only 144 seats also distinguishes *small venue theaters* from Broadway Theaters which range in capacity from 539 seats to 1933 seats. This important distinction makes *small venue theaters* eminently more capable of conforming to CDC health and safety guidelines.

7.      The *small venue theater industry* generates $1.3 billion in total economic output, over 8,400 full-time equivalent jobs and $512 million in wages.

8.      Plaintiffs are all *small venue theaters* with seating capacity of 199 seats or less. Plaintiffs are all located in Manhattan.

9.      Plaintiffs have been shut down since March 16, 2020 or for 220 days.

10.     Casinos, Malls, Movie Theaters, Restaurants, Gyms, Catering Halls for weddings, christenings and bar mitzvahs, Bowling Alleys, "Saturday Night Live", schools and colleges have been allowed to re-open but the *small venue theater* industry remains shuttered despite its median capacity of only 144 seats.

11.     The borough of Manhattan has had an average covid-19 infection rate of substantially below 1% since June 13, 2020.[1] Manhattan has had a lower infection rate than most of the state of New York since June 13, 2020 and remains the safest borough in New York City.

12.     Defendant Mayor Bill de Blasio has stated publicly, "With our record low infection rate, New York City is the safest major city in America."[2]

13.     In short, Plaintiffs bring this lawsuit to define the limits of a State's and the City's police power. Whatever its limits, this legal term of art is not a principle that unlocks absolute executive power and casts our constitution to the wind. The issues raised in this Complaint are novel, and they will not be rendered moot if the executive orders are lifted before the Court issues judgment. The issues presented are capable of repetition and are of such importance that they cannot evade judicial review.

---

[1] covid19tracker.health.ny.gov

[2] Official Website of the City of New York, August 24, 2020.

## PARTIES

14.     Plaintiff, **THE CLEMENTINE COMPANY LLC.** d/b/a **THE THEATER CENTER,** is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates two theaters, the Jerry Orbach Theater and the Anne L. Bernstein Theater. Both theaters have seating capacity of 199 seats. Because of Defendants' executive orders, both theaters have been shut down since March 16, 2020 through the date of the filing of this Civil Action.

15.     Plaintiff, **PLAYERS THEATER MANAGEMENT CORP.** d/b/a **THE PLAYERS THEATER,** is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. Because of Defendants' executive orders, The Players Theater has been shut down since March 16, 2020 through the date of the filing of this Civil Action.

16.     Plaintiff, **WEST END ARTISTS COMPANY d/b/a THE ACTORS TEMPLE,** is a New York Company  with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Actors Temple Theater with a seating capacity of 175. Because of Defendants' executive orders, The Actors Temple Theater has been shut down since March 16, 2020 through the date of the filing of this Civil Action.

17.     Plaintiff, **SOHO PLAYHOUSE INC. d/b/a SOHO PLAYHOUSE,** is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Soho Playhouse with a seating capacity of 178 seats. Because of Defendants' executive orders, The Soho Playhouse has been shut down since March 16, 2020 through the date of the filing of this Civil Action.

18.     Plaintiff, **THE GENE FRANKEL THEATRE LLC.,** is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Gene Frankel Theater with a seating capacity of 74 seats. Because of Defendants' executive orders, the Gene Frankel Theatre has been shut down since March 16, 2020 through the date of the filing of this Civil Action.

19.     Plaintiff, **TRIAD PROSCENIUM PARTNERS INC.** d/b/a **THE TRIAD,** is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Triad Theater with a seating capacity of 130 seats. Because of Defendants' executive orders, the Triad Theater has been shut down since March 16, 2020 through the date of the filing of this Civil Action.

20.     Plaintiff, **CARAL LTD.** d/b/a **BROADWAY COMEDY CLUB,** is a New York private company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Broadway Comedy Club with a seating capacity of 160 seats. Because of Defendants' executive orders, the Broadway Comedy Club has been shut down since March 16, 2020 through the date of the filing of this Civil Action.

21.     Plaintiff, **DO YOU LIKE COMEDY LLC.** d/b/a **NEW YORK COMEDY CLUB,** is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates New York Comedy Club with a seating capacity of 150 seats. Because of Defendants' executive orders, the New York Comedy Club has been shut down since March 16, 2020 through the date of the filing of this Civil Action.

22.     Defendant **Andrew M. Cuomo** is the Governor of the State of New York and signed Executive Order 202.3 on March 16, 2020 (Attached as Exhibit A.), which ordered the ***shutdown of small venue theaters until further notice.*** The State Constitution requires that the Governor ensure that the laws of the state are "faithfully executed." Governor Cuomo's office for the transaction of business is located at the New York State Capitol Building, Albany, New York 12224. Governor Cuomo is sued herein in his official capacity. Pursuant to Executive Law § 223, the superintendent of state police and its members "shall be subject to the call of the governor and are empowered to co-operate with any other department of the state or with local authorities."

23.     Defendant the Office of the Attorney General of the State of New York, pursuant to Executive Law § 60, is the head of the New York State Department of Law and prosecutes and defends all actions in which the state has an interest, and has charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel to protect the interest of the State.

24.     Defendant **BILL de BLASIO** is the Mayor of New York City. Defendant de Blasio's offices are located at City Hall, New York, New York. Defendant de Blasio is being sued in his official capacity. Defendant de Blasio signed Executive Order 100 on March 16, 2020 (Attached as Exhibit B.), which ordered ***the shutdown of small venue theaters until further notice.***

## JURISDICTION & VENUE

25.     This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiff's constitutional rights to due process and equal protection rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a) and 42 U.S.C. § 1983; and attorneys' fees and costs under 42 U.S.C. § 1988.

26.     The Court has jurisdiction over Plaintiffs' federal law claims under 42 U.S.C. § 1331 and 28 U.S.C. § 1343.

27.     The Court has jurisdiction over Plaintiffs' supplemental state court claims under 28 U.S.C. 1367.

28.     Venue is proper in the Southern District of New York under 28 § 1391(b) in that a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## STATEMENT OF FACTS

29.     Based on speculative modeling on the infectiousness and lethality of a new coronavirus, Governor Cuomo has issued executive orders that have shuttered civil society, placed 19.5 million people under house arrest, and taken jobs away from millions of people, all without due process of law. The Governor has not disclosed and/or disclosed only a minimal amount of the data or methodology used to create the modeling that purportedly justifies this extreme action.

30.     On March 16, 2020, Plaintiffs were ordered by Defendants' executive order 202.3 to shutdown their *small venue theaters* effective at 8pm on March 16, 2020, until further notice. As of October 22, 2020, Plaintiffs remain shuttered and have been shut for 220 days. Target, Walmart and Home Depot were allowed to remain open for on premises shopping as "Essential" businesses. Plaintiffs' health protocols are greater or sufficiently similar to those businesses that were allowed to remain open.

31.     The Governor's initial Executive Orders were premised on the perceived need to "flatten the curve" so as to avoid overwhelming the State's hospitals and healthcare centers, not to eradicate the virus. Although the curve has been flattened for more than five months now, the Governor has nonetheless issued stricter and confusing executive orders that unreasonably and unnecessarily interfere with Plaintiffs' constitutional rights.

32.     What were initially billed as temporary measures necessary to "flatten the curve" and protect hospital capacity have become open-ended and ongoing restrictions aimed at a very different end- stopping the spread of an infectious disease and preventing new cases from arising-which requires ongoing and open-ended efforts.

33.     Defendants' executive order 202.3 and the executive orders that followed did not provide a pre- or post- deprivation remedy to question a designation of "essential" or to determine whether Plaintiffs can open with the same health related protocols as the "essential" businesses allowed to open. There has never been any health inspection of the Plaintiffs' *small venue theaters,* no analysis of the health status of *small venue theaters* as essential and no analysis of Plaintiffs' health related protocols to see if they meet the same health standards as allowed for essential businesses.

34.     There was a list of businesses that were allowed to remain open for on-premises purchasing and that the classification was not reasonable or rational and was arbitrary and random without any data, and therefore a denial of due process.

35.     On June 4, 2020, during his press conference, Cuomo said that, "*this is a public health issue and you don't want people sick and dead.*" During the same press briefing, Cuomo stated that he wanted to thank the protesters for protesting in thousands throughout New York City. The only conclusion you draw from that is that thousands of people can march together throughout New York City and there is no public health issue for these marches, but *small venue theaters* in NYC who want to open their small theaters with CDC safety guidelines are endangering the public.

36.     The Governor cannot selectively enforce his executive orders. There is either a public health emergency or there's not. It cannot be both.

37.     Cuomo boasts on CNN on June 25, 2020: "*What we're saying in New York, look, we did the right thing and New Yorkers paid a terrible cost as you know, Alisyn. They have been locked up. They have been closing their businesses. We have the virus under control finally. We had to flatten the curve.*"[3]

38.     The State continues to govern impartially and arbitrarily by allowing Malls, Casinos, Churches, Movie Theaters, Restaurants, Gyms, Catering Halls for weddings, christenings and bar mitzvahs, Bowling Alleys, "Saturday Night Live", schools and colleges in the state to open, yet *small venue theaters* in Manhattan continue to be shut down even though

---

[3] Audio & Rush Transcript: Governor Cuomo announces New York at Lowest Hospitalization Rate since Beginning of Covid-19 Pandemic. June 25, 2020.

Manhattan has met and exceeded the re-opening metrics put in place by Governor Cuomo since June 13, 2020.

39.     These statistics show that the curve flattened a long time ago and there is no longer a state of emergency in the borough of Manhattan.

40.     Seven months into the state's experiment with executive order shut downs, the constitutional landscape has changed. Whatever latitude for constitutionally questionable orders may have existed when the pandemic was new, there is no longer legal justification for prohibiting people from earning a living if they work in or own what a governor deems a "non-essential" business.

41.     For one thing, the underlying facts have changed markedly. New York reopened "non-essential" businesses over the summer while keeping the virus at bay.

42.     The use of masks and social distancing is universal, supplemented by temperature checks on the part of some businesses.

43.     Multiple studies now suggest the lockdowns were not effective,[4] and medical and public health professionals have raised concerns about their "devastating effects on short and long term public health."[5]

44.     New York's selective enforcement of social distancing requirements has undermined the rationale for continued business closures.

_____

[4] www.wsj.com/articles/the-failed-experiment-of-covid-lockdowns

[5] https://gbdeclaration.org

45.     Over the summer thousands of protestors were allowed to march shoulder to shoulder, unmasked and emitting droplets with their chants, with no enforcement by the Defendants.

46.     If such gatherings were not a risk to public health, why should a *small venue theater* with exceptional safety protocols not be allowed to open its doors?

47.     Closing *small venue theaters* that can mitigate risk looks more arbitrary than ever.

48.     The Courts may provide state and local officials greater deference when making time-sensitive decisions in the midst of an emergency but the deference cannot go on forever. It is no longer March, April or May. It is now late October and Defendants have no anticipated end-date to their emergency interventions.

49.     Absent a robust system of checks and balances, the guarantees of liberty set forth in the Constitution are just ink on parchment. There is no question that a global pandemic poses serious challenges for governments. But the response to this pandemic or any emergency for that matter cannot be permitted to undermine our system of constitutional liberties or the system of checks and balances protecting those liberties. Defendants are permitted to act with no input from the legislature. The judiciary remains the ONLY check on the exercise of defendants' power.

50.     Plaintiffs are individually owned *small venue theaters* with a median of 144 seats. If not allowed to open this fall, Plaintiffs may be forced to permanently shut their doors.

51.     Plaintiffs have all conformed their *small venue theaters* to exceed CDC safety protocols for covid-19.

52.     Plaintiffs have been affected terribly by the Governor's executive orders. Under threat of criminal penalties, Plaintiffs have been forced to close their "*small venue theaters,*" depriving the Plaintiffs of their liberty and property interests without due process. At the same time, without offering any justification, the Governor has allowed, and is still allowing, Malls, Casinos, Restaurants, Gyms, Catering Halls, Bowling Alleys, Schools and Colleges to open even though: (a) those businesses must also adhere to guidance from the U.S. Centers for Disease Control and Prevention ("CDC") on "social distancing"; and (b) Plaintiffs are fully capable of adhering to those same guide-lines if allowed to open their *small venue theaters*.

53.     At the present time, Plaintiffs have lost millions of dollars in revenue and have had to lay off at least 8,000 employees throughout New York City.

54.     A public health emergency does not give Defendants *carte blanche* to disregard the Constitution for as long as the medical problem persists.

55.     "One percent is an unbelievably low infection rate.[6] New York has had an infection rate at about one percent for the last ten weeks. New York is the outlier in all of these international and national trajectories.[7] We are the exception to the rule."[8] Governor Cuomo was bragging that how New York is the exception to the rule because New York has flat infection rates but infection rates are climbing throughout the country and the world.

---

[6] Governor Cuomo, Press Conference, October 5, 2020. <u>governor.ny.gov</u>

[7] id.

[8] id.

## FIRST CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FOURTEENTH
### AMENDMENT (By Plaintiffs against All Defendants)

56.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

57.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

58.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 3.

59.    The procedural component of the Due Process Clause prohibits government from depriving Plaintiffs of liberty and property interests without providing any process before or after the deprivations occurred.

60.    To establish a procedural due process claim under 42 U.S.C. § 1983, Plaintiffs must show that (1) they had a life, liberty, or property interest protected by the Due Process Clause; (2) they were deprived of this protected interest; and (3) the state did not afford them adequate procedural rights. See *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Circ. 2014).

61.     Plaintiffs have a protected liberty interest in the right to live without arbitrary governmental interference with their liberty and property interests. *County of Sacramento v. Lewis,* 523 U.S. 833, 845 (1988).

62.     Liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972) (emphases added).

63.     Plaintiffs have protected liberty and property interests, which Defendants infringed through the Executive shut down Orders:

        a.  Plaintiffs have been, and are being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating *small venue theaters*.

64.     Governor Cuomo did not provide any procedural due process before issuing the executive shut down Orders. Nor do the shutdown Orders provide any mechanism for post-deprivation review.

65.     Governor Cuomo acted under color of State law in an official capacity and within the scope of his official duties when issuing the executive shut down Orders.

66.     As a direct and proximate cause of the failure to provide any pre- or post-deprivation process, Plaintiffs suffered prejudice under threat of criminal and civil sanctions.

67.     These orders and rules acknowledge that so-called "essential" businesses and those "non-essential" can safely operate by adhering to "social distancing" rules delineated in

including the arbitrary "enhanced social distancing" rules that apply only to the "non-essential"

businesses allowed to resume operations.

68.     Plaintiffs can operate in full compliance with all of these rules.

69.     By failing to provide any pre- or post-deprivation review of the orders and

rules shuttering their businesses, Plaintiffs are suffering substantial losses of  liberty and

property:

a. Plaintiffs have lost significant revenue over the eight months since the

executive shut down Orders went into effect. Plaintiffs will continue to experience financial

losses in the fourth quarter of 2020 and beyond because of the executive shut down Orders.

70.     The prejudice that Plaintiffs have suffered would not have occurred but for

Defendants' deprivations of their liberty and property interests.

71.     Plaintiffs seek a declaration that the executive shut down Orders violate the

procedural component of the Due Process Clause, and an injunction against further

infringements of their rights under this Clause as described in the Prayer for Relief.


**SECOND CLAIM FOR RELIEF**

**SUBSTANTIVE DUE PROCESS**
**OF THE FOURTEENTH AMENDMENT**
**(By Plaintiffs against All Defendants)**


72.     Plaintiffs incorporate paragraphs 1-71 as if fully set forth herein.

73.     "Every person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit

in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

74.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution

provides that no State can "deprive any person of life, liberty, or property, without due

process of law." U.S. Const. amend. XIV, § 1, cl. 3.

75.     The substantive component of the Due Process Clause prohibits government from

taking action that "shocks the conscience" or "interferes with rights implicit in the concept of

ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

76.     Plaintiffs have a protected liberty interest in the right to live without arbitrary

governmental interference with its liberty and property interests. *County of Sacramento v. Lewis,*

523 U.S. 833, 845 (1988).

77.      Liberty "denotes not merely freedom from bodily restraint but also the right of

the individual to contract, to engage in any of the common occupations of life, to acquire

useful knowledge, to marry, establish a home and bring up children, to worship God

according to the dictates of his own conscience, and generally to enjoy those privileges

long recognized . . . as essential to the orderly pursuit of happiness by free men." *Board*

*of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972) (emphases added).

78.     The Executive shut down Orders shock the conscience and interfere with

Plaintiffs' deeply-rooted liberty and property rights, including the right to work, right to contract,

and right to engage in commerce, for all of the reasons described in the General Allegations and

in each of the Counts of this Complaint, which are incorporated into this Paragraph by reference.

79.     Plaintiffs can conduct business in full compliance with all of the rules imposed on businesses allowed to operate under the executive shut down Orders, or reasonably equivalent and equally safe measures tailored to the unique nature of the in-person operations. Thus, the shut down Orders are not narrowly tailored to achieve a compelling governmental interest.

80.     Nor is there any rational basis any longer since the virus is under control to deprive Plaintiffs of their liberty and property interests in performing services for willing customers when they can do so safely and in the same (or reasonably safe equivalent) manner as other businesses allowed to operate (such as manufacturing, casinos, gyms, catering facilities, restaurants, bars, malls, tanning salons, tattoo parlors and retail).

81.     In the alternative, the Executive shut down Orders are not reasonably related to a legitimate governmental interest.

82.     Governor Cuomo and Mayor de Blasio acted under color of State law in an official capacity and within the scope of their official duties when issuing the shut down Orders.

83.     Plaintiffs seek a declaration that the Executive shut down Orders violate the substantive component of the Due Process Clause, and an injunction against further infringements of its rights under this Clause as described in the Prayer for Relief.

### **THIRD CLAIM FOR RELIEF**

**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT (By Plaintiffs against All Defendants)**

84.     Plaintiff incorporates paragraphs 1-83 as if fully set forth herein.

85.     "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

86.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4.

87.     The Executive shut down Orders deprive Plaintiffs of the equal protection of the law because they allow some businesses to operate but not Plaintiffs' businesses, even though they are similarly situated.

88.     Plaintiffs could and can conduct business in full compliance with all of the rules imposed on businesses allowed to operate under the Executive shut down Orders, or reasonably equivalent and equally safe measures tailored to the unique nature of the in-person operations. Thus, the Executive shutdown Orders are not narrowly tailored to achieve a compelling governmental interest.

89.     Nor is there any rational basis any longer since Governor Cuomo announced that the virus is contained to deprive Plaintiffs of their liberty and property interests in performing services to willing customers when they can do so safely and in the same (or reasonably safe equivalent) manner as other businesses allowed to operate.

90.     In the alternative, the Executive shut down Orders are not reasonably related to a legitimate governmental interest.

91.     Governor Cuomo and Mayor de Blasio acted under color of State law in an official capacity and within the scope of their official duties when issuing the shut down Orders.

92.     Plaintiffs seek a declaration that the Executive shut down Orders violate the Equal Protection Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

**FOURTH CLAIM OF RELIEF**

**EQUAL PROTECTION UNDER STATE LAW**
**(By Plaintiffs against All Defendants)**

93.     Plaintiff incorporates paragraphs 1-92 as if fully set forth herein.

94.     Article 1 § 11 of the New York Constitution states that "No person shall be denied the equal protection of the laws of this state or any subdivision thereof."

95.     By classifying businesses into essential v. non-essential, the State is treating like businesses differently.

96.     According to the State and the executive orders, businesses deemed "essential" are allowed to stay open and operate, while Plaintiffs have been ordered to shut down even though Plaintiffs' health protocols are sufficiently similar to those businesses that were allowed to stay open.

97.     Defendants' orders did not provide any pre- or post- deprivation remedy to question "essential" status. There has never been a health inspection of the *small venue theaters*,

no analysis of the *small venue theaters* as essential and no analysis of Plaintiffs' health related protocols to see if they meet the same health standards as allowed for essential businesses.

98.    The unequal, random, arbitrary and unfair treatment has continued in the re-opening guidance. Casinos, malls, movie theaters, wedding catering halls, restaurants, indoor gymnastics, gyms, schools, colleges, tattoo parlors, tanning salons, churches, health spas and dentists are allowed to open their doors, but *small venue theaters* remain locked down.

99.    As a result of the unequal treatment of like businesses, the executive lock down orders violates Article 1, § 11 of the New York Constitution.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff requests that this Court:

(1) Issue a declaratory judgment with the following:

a. Declaration that Defendants' Executive

Orders  are null and void, of no effect, as:

i. unconstitutional under the Fifth Amendment;

ii. unconstitutional under the Fourteenth Amendment;

iii. arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or New York Constitutions;

iv. contrary to constitutional right, power, privilege, or immunity in violation of the U.S. and/or New York Constitutions;

v. in excess of statutory jurisdiction, authority, or
limitations, or short of statutory right in violation of the
U.S. and/or New York Constitutions.

(2) Set aside and hold unlawful Defendants' Executive Orders

(3) Permanently enjoin Defendants and all persons and entities in active
concert or participation with Defendants from enforcing the Orders.

(4) Issue a preliminary injunction preventing Defendants from
enforcing or implementing their Orders until this Court decides the merits
of this lawsuit.

(5) Permanently enjoin Defendants and all persons and entities in active
concert or participation with Defendants from enforcing the Orders unless
they are issued in accordance with all procedural and substantive due
process requirements of the U.S. Constitution.

(6) Award Plaintiff damages arising out of their Section 1983 Claims, and
specifically under the Fifth Amendment of the U.S. Constitution.

(7) Award Plaintiff its costs and reasonable attorneys' fees incurred in
this action; and

(8) Grant all other such relief as the Court may deem just and proper.


Dated: October 22, 2020


THE MERMIGIS LAW GROUP, P.C.


___/s/ James Mermigis___
James G. Mermigis, Esq.
Attorneys for Plaintiff