UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**THE CLEMENTINE COMPANY LLC.** d/b/a **THE THEATER CENTER, PLAYERS THEATER MANAGEMENT CORP.** d/b/a **THE PLAYERS THEATER, WEST END ARTISTS COMPANY** d/b/a **THE ACTORS TEMPLE, SOHO PLAYHOUSE INC.** d/b/a **SOHO PLAYHOUSE, THE GENE FRANKEL THEATRE LLC., TRIAD PROSCENIUM PARTNERS INC.** d/b/a **THE TRIAD, CARAL LTD.** d/b/a **BROADWAY COMEDY CLUB,** and **DO YOU LIKE COMEDY LLC.** d/b/a **NEW YORK COMEDY CLUB,**

|  |  |
|---|---|
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Against | Civil Action No.:  1:20-CV-08899 |

**ANDREW M. CUOMO**, in his Official
Capacity as Governor of the State of New York,
**ATTORNEY GENERAL OF THE STATE OF NEW YORK**,
**BILL de BLASIO**, in his Official Capacity as Mayor of the
City of New York and **THE STATE OF NEW YORK,**

Defendants.

---

**THE MERMIGIS LAW GROUP, P.C.**
James G. Mermigis, Esq.
85 Cold Spring Road, Suite 200
Syosset, New York  11791
516-353-0075
James@MermigisLaw.com

*Attorneys for Plaintiffs*

1

## PRELIMINARY STATEMENT

For nine months the citizens of New York have had to learn to adapt to life with COVID. During that time, we have learned much about how the virus spreads, including activities and behaviors that increase the potential spread of the virus. Plaintiffs, *small venue theaters* in Manhattan have worked proactively to be able to reopen *small venue theaters* in a manner consistent with protecting the public's health. Plaintiffs have presented detailed, comprehensive plans to reopen safely but nevertheless remain closed by Defendants' executive orders.

Small venue theaters remain closed while other places of public assembly including catering halls, restaurants, casinos, shopping malls, churches, bowling alleys, gyms have been allowed to reopen to the public. Small venue theaters have a median capacity of *only 144 seats*, which is a lesser capacity than most restaurants, catering halls, gyms, casinos, shopping malls and bowling alleys. The median capacity of 144 seats also distinguishes small venue theaters from Broadway Theaters which range in capacity between 539 to 1933 seats. This *important* distinction makes *small venue theaters* eminently more capable of conforming to CDC health and safety guidelines. Defendants have failed to provide a legally satisfactory reason for this discriminatory treatment. Defendants can not base this discriminatory treatment on any identifiable differences in public health risks, nor can they claim that *small venue theater*s pose a greater health risk than these other venues, some of which present far more difficult challenges to practices such as social distancing. Nor can this discriminatory treatment be explained by a

failure by *small venue theaters* to propose comprehensive safety plans for the reopening of small venue theaters that address all aspects of small theater operations.

More than six months ago, the state issued guidance that permitted far riskier businesses and venues to open. On June 26, 2020, catering halls were allowed to host weddings, bar mitzvahs and christenings at a 50-person limit. Gyms and bowling alleys were opened in New York on August 24, 2020. Casinos were allowed to open on September 9, 2020. Also on September 9, 2020, shopping malls were also allowed to open in New York City at 50% capacity, as long as they have air filtration, ventilation  and purification standards in place. Indoor dining in New York City was reinstated on September 30, 2020 at 25% capacity. The state issued this guidance believing that indoor dining was safe as long as individuals wore masks and maintained appropriate social distancing when they left the table.

The state's refusal to allow small venue theaters to open at 25% capacity or at a 50-person limit — while allowing far riskier activities to proceed — is the very definition of an equal protection violation. The plaintiffs seek a preliminary injunction that prohibits the defendants from enforcing its continued shut down of *small venue theaters*. Plaintiffs are seeking to open at 25% capacity or at a 50-person limit.

Accordingly, for the reasons discussed at greater length below, Plaintiffs respectfully request that this Court issue a preliminary injunction enjoining the defendants from enforcing the continued shut down of *small venue theaters*.

## STATEMENT OF FACTS

On March 7, 2020, Defendant Governor Andrew Cuomo ("Cuomo") issued Executive Order 202 ("Order 202") which, in relevant part, declared a State Disaster Emergency for the State of New York based on the presence of travel-related cases and community transmission of COVID-19 in the state. Subsequently, Cuomo issued a flurry of additional executive orders, all premised on the finding in Order 202 that COVID-19 had been documented in the state and was expected to continue.

On March 16, 2020, Plaintiffs were ordered by Defendants' executive order 202.3 to shutdown their *small venue theaters* effective at 8pm on March 16, 2020, until further notice. As of October 22, 2020, Plaintiffs remain shuttered and have been shut for 220 days. Target, Walmart and Home Depot were allowed to remain open for on premises shopping as "Essential" businesses. Plaintiffs' health protocols are greater or sufficiently similar to those businesses that were allowed to remain open.

The Governor's initial Executive Orders were premised on the perceived need to "flatten the curve" so as to avoid overwhelming the State's hospitals and healthcare centers, not to eradicate the virus. Although the curve has been flattened for more than five months now, the Governor has nonetheless issued stricter and confusing executive orders that unreasonably and unnecessarily interfere with Plaintiffs' constitutional rights.

What were initially billed as temporary measures necessary to "flatten the curve" and protect hospital capacity have become open-ended and ongoing restrictions aimed at a very different end- stopping the spread of an infectious disease and preventing new cases from arising-which requires ongoing and open-ended efforts.

4

Defendants' executive order 202.3 and the executive orders that followed did not provide a pre- or post- deprivation remedy to question a designation of "essential" or to determine whether Plaintiffs can open with the same health related protocols as the "essential" businesses allowed to open. There has never been any health inspection of the Plaintiffs' *small venue theaters,* no analysis of the health status of *small venue theaters* as essential and no analysis of Plaintiffs' health related protocols to see if they meet the same health standards as allowed for essential businesses.

There was a list of businesses that were allowed to remain open for on-premises purchasing and that the classification was not reasonable or rational and was arbitrary and random without any data, and therefore a denial of due process.

On June 4, 2020, during his press conference, Cuomo said that, "*this is a public health issue and you don't want people sick and dead.*" During the same press briefing, Cuomo stated that he wanted to thank the protesters for protesting in thousands throughout New York City. The only conclusion you draw from that is that thousands of people can march together throughout New York City and there is no public health issue for these marches, but *small venue theaters* in NYC who want to open their small theaters with CDC safety guidelines are endangering the public.

The Governor cannot selectively enforce his executive orders. There is either a public health emergency or there's not. It cannot be both.

Cuomo boasts on CNN on June 25, 2020: *"What we're saying in New York, look, we did the right thing and New Yorkers paid a terrible cost as you know, Alisyn. They have been locked*

*up. They have been closing their businesses. We have the virus under control finally. We had to*

*flatten the curve."*[1]

The State continues to govern impartially and arbitrarily by allowing Malls, Casinos, Churches, Movie Theaters, Restaurants, Gyms, Catering Halls for weddings, christenings and bar mitzvahs, Bowling Alleys, "Saturday Night Live", schools and colleges in the state to open, yet *small venue theaters* in Manhattan continue to be shut down even though Manhattan has met and exceeded the re-opening metrics put in place by Governor Cuomo since June 13, 2020.

These statistics show that the curve flattened a long time ago and there is no longer a state of emergency in the borough of Manhattan.

Nine months into the state's experiment with executive order shut downs, the constitutional landscape has changed. Whatever latitude for constitutionally questionable orders may have existed when the pandemic was new, there is no longer legal justification for prohibiting people from earning a living if they work in or own what a governor deems a "non-essential" business. For one thing, the underlying facts have changed markedly. New York has reopened businesses over the summer while keeping the virus at bay. The use of masks and social distancing is universal, supplemented by temperature checks on the part of some businesses.

---

[1] Audio & Rush Transcript: Governor Cuomo announces New York at Lowest Hospitalization Rate since Beginning of Covid-19 Pandemic. June 25, 2020.

Multiple studies now suggest the lockdowns were not effective,[2] and medical and public health professionals have raised concerns about their "devastating effects on short and long term public health."[3]

New York's selective enforcement of social distancing requirements has undermined the rationale for continued business closures.

Over the summer thousands of protestors were allowed to march shoulder to shoulder, unmasked and emitting droplets with their chants, with no enforcement by the Defendants. If such gatherings were not a risk to public health, why should a *small venue theater* with exceptional safety protocols not be allowed to open its doors? Closing *small venue theaters* that can mitigate risk looks more arbitrary than ever.

The Courts may provide state and local officials greater deference when making time-sensitive decisions in the midst of an emergency but the deference cannot go on forever. It is no longer March, April or May. It is now late October and Defendants have no anticipated end-date to their emergency interventions.

Absent a robust system of checks and balances, the guarantees of liberty set forth in the Constitution are just ink on parchment. There is no question that a global pandemic poses serious challenges for governments. But the response to this pandemic or any emergency for that matter cannot be permitted to undermine our system of constitutional liberties or the system of checks and balances protecting those liberties. Defendants are permitted to act with no input from the legislature. The judiciary remains the ONLY check on the exercise of defendants' power.

---

[2] www.wsj.com/articles/the-failed-experiment-of-covid-lockdowns

[3] https://gbdeclaration.org

Plaintiffs are individually owned *small venue theaters* with a median of 144 seats. If not allowed to open this fall, Plaintiffs may be forced to permanently shut their doors. Plaintiffs have all conformed their *small venue theaters* to exceed CDC safety protocols for covid-19.

Plaintiffs have been affected terribly by the Governor's executive orders. Under threat of criminal penalties, Plaintiffs have been forced to close their "*small venue theaters,*" depriving the Plaintiffs of their liberty and property interests without due process. At the same time, without offering any justification, the Governor has allowed, and is still allowing, Malls, Casinos, Restaurants, Gyms, Catering Halls, Bowling Alleys, Schools and Colleges to open even though: (a) those businesses must also adhere to guidance from the U.S. Centers for Disease Control and Prevention ("CDC") on "social distancing"; and (b) Plaintiffs are fully capable of adhering to those same guide-lines if allowed to open their *small venue theaters*.

At the present time, Plaintiffs have lost millions of dollars in revenue and have had to lay off at least 8,000 employees throughout New York City.

A public health emergency does not give Defendants *carte blanche* to disregard the Constitution for as long as the medical problem persists.

"One percent is an unbelievably low infection rate.[4] New York has had an infection rate at about one percent for the last ten weeks. New York is the outlier in all of these international and national trajectories.[5] We are the exception to the rule."[6] Governor Cuomo was bragging that how New York is the exception to the rule because New York has flat infection rates but infection rates are climbing throughout the country and the world.

---

[4] Governor Cuomo, Press Conference, October 5, 2020. governor.ny.gov

[5] id.

[6] id.

Simply, the crux of this case is that there is no basis for imposing a shut down of *small venue theaters*, while otherwise permitting restaurants, catering halls, shopping malls, gyms, casinos and bowling alleys to operate.

**POINT I**

### PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, plaintiffs must demonstrate: (1) irreparable injury; (2) a likelihood of success on the merits; (3) a balance of equities tipping in the moving party's favor; and (4) that the public interest would not be disserved by injunctive relief. See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Glossip v. Gross,* 576 U.S. 863, 876 (2015); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010). For the reasons explained below, the plaintiffs satisfy each of these four elements required to issue a preliminary injunction. Therefore, this Court should issue an order enjoining enforcement of the shut down of *small venue theaters*.

### A.      Plaintiffs are Suffering Irreparable Harm.

The Second Circuit has repeatedly found that the showing of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 233-34 (2d Cir. 1999); *accord Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020). The court can presume irreparable injury where it is alleged that a constitutional right has been violated. See, e.g., *Yang*, 960 F.3d at 128; *Beal v. Stern,* 184 F.3d 117, 123-24 (2d Cir. 1999) (presuming irreparable harm and proceeding directly to likelihood-of-success standard where constitutional right violations were alleged); *Jolly v. Coughlin,* 76 F.3d

468, 482 (2d Cir. 1996) ("it is the alleged violation of a constitutional right that triggers a finding of irreparable harm," as such "a harm that cannot be adequately compensated monetarily") (emphasis in original) (citations omitted).

As explained below, plaintiffs are able to show a likelihood of success on the merits for their equal protection claim, which merits a presumption of irreparable harm. Indeed, analogous to *Jolly,* it is proper for this Court to presume irreparable injury by the mere fact that the plaintiffs allege in their complaint a violation of their equal protection rights. As the Second Circuit held in *Jolly,* it is beyond question that the denial of plaintiffs' equal protection rights "is a harm that cannot be adequately compensated monetarily." Thus, by demonstrating below a likelihood of success regarding plaintiffs' equal protection claim, this Court may similarly find that plaintiffs have made a "strong" showing of irreparable harm. See *Yang,* 960 F.3d at 128.

In addition, Second Circuit courts have held that the "significant possibility" that plaintiffs may be driven out of business in the period before a trial can be held is sufficient to find that the irreparable harm prong has been satisfied. *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48, 58 (2d Cir. 1979) ("[t]here can be no doubt that if the [applicant] had shown a significant possibility that it would be driven out of business in the period before a trial could be held, the *Hamilton-Benrus* test would have been amply passed"). Indeed, the Second Circuit has expanded the *Hamilton* test to include "major disruption of business" and a "threat to the continued existence of a business." *Nemer Jeep-Eagle, Inc. v. Jeep Eagle Sales Corp.*, 992 F.2d 430, 435-36 (2d Cir. 1993) (emphasis in original).

Beyond harm to constitutional rights, a "substantial loss of business and perhaps even bankruptcy" absent preliminary injunctive relief shows "irreparable injury." *Doran v. Salem Inn,*

*Inc.*, 422 U.S. 922, 932 (1975). "Price erosion, loss of goodwill, damage to reputation, and loss

of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc.*

*v. CellzDirect, Inc.,* 664 F.3d 922, 930 (Fed. Cir. 2012).

Defendants' orders requiring the entire *small venue theater industry* in New York to

remain closed for nine months and with no end in sight is causing an existential crisis for the

*small venue theater* industry in New York.

Here, the plaintiffs allege in their complaint that the shut down of their small theaters has

resulted in devastating economic loss, and that each day the shut down is allowed to exist

plaintiffs are at further risk of permanently shutting their doors. (Russell Decl. ¶ 2). Even if the

plaintiffs were to win this case at trial, small venue theaters throughout New York State may not

be able to return due to the significant financial harm caused by Defendants' shut down orders.

Thus, the plaintiffs have made a strong showing of irreparable harm on this basis as well.

### B. Plaintiffs are Likely to Prevail on the Merits of Their Equal Protection Claim.

The Constitution guarantees to all persons the "equal protection of the laws," and this

right means that the government must treat similarly-situated individuals in the same manner.

U.S. Const. Amend. XIV, § 1; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439

(1985) ("[t]he Equal Protection Clause . . . is essentially a direction that all similarly situated

persons should be treated alike"). The Supreme Court recognized in *Olech* that equal protection

claims may be brought by a "class of one" "where the plaintiff alleges that she has been

intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in treatment." See *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135, 140 (2d Cir. 2010). The class-of-one claim protects every person within the state's jurisdiction "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Olech*, 528 U.S. at 564 (emphasis added) (citations omitted). To prove their equal protection claim under a class-of-one theory, the plaintiffs must show only a high degree of similarity between themselves and the persons with whom they compare themselves, and proof of the "defendant's subjective ill-will" is not required. *Hu v. City of New York,* 927 F.3d 81, 93 (2d Cir. 2019).

Here, the plaintiffs easily satisfy each of the necessary class-of-one elements. First, the plaintiffs are similarly-situated because there is no difference whether patrons sit in restaurant, catering hall, bowling alley, casino or a *small venue theater* with air filtration, ventilation and purification standards in place. Second, the state's difference in treatment when the plaintiffs seek to open their small venue theaters under the same guidelines in place for restaurants, catering halls, gyms, casinos and shopping malls has no rational basis.

## I.   Plaintiffs Satisfy the Similarly-Situated Requirement.

Although *Olech* did not define "similarly situated," it is clear from other decisions from the Supreme Court and the Second Circuit that "similarly situated" means "similarly," rather than "identically." See, e.g., *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 447-450 (1985) (holding that requiring special permit for group home for the intellectually disabled violated equal protection when a permit was "not require[d] . . . for apartment houses, multiple dwellings, boarding and lodging houses, fraternity or sorority houses, dormitories, apartment

hotels, hospitals, sanitariums, nursing homes for convalescents or the aged"); *Third Church of Christ v. New York City,* 626 F.3d 667, 670 (2d Cir. 2010) (holding that hotels' catering was "similarly situated" to church's catering). Indeed, this principle was reaffirmed by the Second Circuit in a class-of-one analysis. See *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221-224 (2d Cir. 2012). In that case, the court held: The Church's use of multiple comparators is unusual . . . We conclude, however, that the Church's evidence of several other projects treated differently with regard to discrete issues is sufficient . . . to support a class-of-one claim . . . [T]he Church has presented overwhelming evidence that its application was singled out by the Town for disparate treatment. Though each of the comparator projects involved features unique to that proposal, the Town has not explained how those other features could have influenced discrete issues like the adequacy of parking, the safety of retaining walls, or increased traffic . . . [W]here, as here, a decision is based on several discrete concerns, and a claimant presents evidence that comparators were treated differently with regard to those specific concerns without any plausible explanation for the disparity such a claim can succeed . . . We affirm the district court's conclusion that the Church has adequately established a class-of-one Equal Protection claim . . ." *Fortress Bible Church*, 694 F.3d at 221-224 (emphasis added); see also *LaTrieste Restaurant & Cabaret v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir. 1994) (finding that comparator properties were similarly-situated — even though they had different zoning classifications and also were a different type of business — because those purported differences did not explain the government's differential treatment).

Here, the similarly-situated requirement for the class-of-one category has easily been met. Restaurants in Manhattan are allowed to open at 25% plus outdoor dining. Catering halls

are allowed to host weddings, christenings and other events at a 50-person limit. Gyms are open at 33% capacity and bowling alleys are open at 50%. Casinos are also open since September 9, yet small venue theaters continue to be shut down. Such an arbitrary distinctions are a denial of equal protection of the laws in the most literal sense. The state cannot credibly argue that plaintiffs do not satisfy the similarly-situated requirement.

Further, the state's guidance that allows significantly riskier activities then sitting in small ventilated theater — including bowling alleys, museums, and gyms — all of which are permitted by the state to operate at capacities far greater than 50 people. These examples are certainly relevant under Second Circuit precedent for plaintiffs' equal protection claim. See *Fortress Bible Church*, 694 F.3d at 221-224.

**II. There is No Rational Basis for Treating the Plaintiffs Differently.**

Plaintiffs have installed 10 Matterhorn 1002 Air Scrubbers. (Russell Decl. ¶ 5.a.). Plaintiffs have installed Merv 13 filters in every HVAC unit. (Russell Decl. ¶ 5.b.). All patrons and staff will be required to have a temperature check before entering the theaters and masks will be required through out the small venue theater. (Russell Decl. ¶ 5.d.-e.). Plexiglass barricades have been installed between all employees and patrons. (Russell Decl.¶ 5.g.).

Restaurants and catering halls are not required to install air scrubbers and Merv 13 filters, yet they are allowed to open. The state gives no plausible explanation why these businesses can be trusted to comply with all COVID-19 protocols, but the plaintiffs' small venue theaters cannot.

C.      **Balance of Equities Weighs in Favor of the Plaintiffs**

"A balance of equities tipping in favor of the party requesting a preliminary injunction"

means a balance of the hardships against the benefits. *Ligon v. City of New York*, 925 F. Supp. 2d

478, 539 (S.D.N.Y. 2013) (characterizing the balancing of "hardship imposed on one party" and

"benefit to the other" as "balance[ing] [of] the equities"). With respect to balancing the

hardships, economic or financial hardships have been sufficient to tip the scales in favor of

granting a preliminary injunction. See, e.g., *Buffalo Courier-Express, Inc. v. Buffalo Evening*

*News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp. 2d 321,

333-34 (S.D.N.Y. 2009). Furthermore, when an injunction is sought to stay enforcement of a law

that is purported to protect the public interest, the hardship to the non- movant government can

be measured by the extent to which the law furthers such protection. See *Ass'n of Jewish Camp*

*Operators v. Cuomo,* 1:20-CV-0687, 2020 WL 3766496, at *4 (N.D.N.Y. July 6, 2020)

Here, as explained above, absent a stay the plaintiffs' equal protection rights will be

violated. Although the state will argue that the threat to public health outweighs the harm caused

by its violation of plaintiffs' equal protection rights, such an argument ignores the fact that the

opening of *small venue theaters* contemplated by the plaintiffs is less risky than the indoor

dining, attending a wedding, going to a gym, bowling or sitting in a casino. In sum, because the

plaintiffs have already established that they will be irreparably harmed absent a stay, the

defendants cannot contest that the plaintiffs have demonstrated that the balance of equities tip in

their favor.

**D. The Public Interest is Served by Issuing a Preliminary Injunction.**

The public interest is served by the protection of plaintiffs' constitutional rights. *Jolly v. Coughlin,* 907 F. Supp. 63, 65 (S.D.N.Y. 1995) ("defendants have failed to demonstrate that their epidemiological concerns outweigh the strong public interest in following the law, namely RFRA and the Eighth Amendment to the Constitution"); *Roberts v. Neace,* 958 F.3d 409, 416 (6th Cir. 2020) ("treatment of similarly situated entities in comparable ways serves public health interest at the same time it preserves bedrock free-exercise guarantees"). A preliminary injunction is the best — and only — relief available to protect the plaintiffs' rights under the Fourteenth Amendment. Thus, granting the plaintiffs a preliminary injunction protects not just the plaintiffs, but also the public, from irreparable injury.

**POINT II**

**JACOBSON V. MASSACHUSETTS DOES NOT AFFECT THIS COURT'S ANALYSIS**

Undoubtedly, the state's opposition will attempt to focus this Court's attention on the Supreme Court's holding in Jacobson v. Massachusetts. However, even though courts have upheld "broad" discretion for state officials during the COVID crisis, there are limits to that discretion. See *S. Bay United Pentecostal Church v. Newsom*, --- U.S. ---, 140 S. Ct. 1613, 1613, --- L. Ed. 2d --- (2020) (Roberts, C.J., concurring); *Ass'n of Jewish Camp Operators v. Cuomo,* 1:20-CV-0687, 2020 WL 3766496, at *10 (N.D.N.Y. July 6, 2020) (citing *Jacobson v. Massachusetts,* 197 U.S. 11 (1905)) ("authority to respond to an emergency, while broad, is not without limits: it may not be arbitrary or oppressive"). When determining whether state action reasonably and permissibly restricts constitutional rights during this COVID crisis, the Court

16

must consider whether the challenged state action lacks a "real or substantial relation [to public health]" or is "beyond all question, a plain, palpable invasion of rights." *Ass'n of Jewish Camp Operators,* 2020 WL 3766496, at *8 (citing Jacobson, 197 U.S. 11).

Constitutional rights do not wholly evaporate in times of emergency. See *Jacobson v. Massachusetts,* 197 U.S. 11, 29; 25 S. Ct. 358; 49 L. Ed. 643 (1905). Indeed, the law has long been settled that all essential liberties remain protected at all times, even during the gravest of emergencies. *Bell v. Burson*, 402 U.S. 535, 542; 91 S. Ct. 1586; 29 L. Ed. 2d 90 (1971); *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 164-65; 83 S. Ct. 554; 9 L. Ed. 2d 644 (1963). While States may implicate police powers to take swift action necessary to protect public health and safety, those powers are not limitless, and are subject to judicial review. See *Jacobson,* 197 U.S. at 31, 38-39; *Robinson v. Attorney Gen.*, 957 F.3d 1171, 1179 (11th Cir. 2020) ('while constitutional rights have limits, so does a state's power to issue executive orders limiting such rights in times of emergency').

Generally, courts apply a deferential standard of review when reviewing a State's implication of its police powers to preserve public health during a declared state of emergency. See, e.g., *Jacobson*, 197 U.S. at 28. "[I]f a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of courts to so adjudge, and thereby give effect to the Constitution." Id. at 31. In *Jacobson*, the Court explained that State action may improperly deviate from having a "real or substantial relation" to the public health if it is "exercised in particular circumstances and in references to particular persons . . . in an arbitrary, unreasonable

17

manner." Id. at 28. For example (and as more thoroughly explored in Plaintiffs' Equal Protection

argument), orders that have opened restaurants, catering halls, malls, indoor gymnastics, mass

protests, bowling alleys, casinos, but not *small venue theaters* under any circumstances, is a red

flag that the Governor's Executive Orders are improperly arbitrary and bear "no real or

substantial relation" to its proffered public health end.

A public health crisis state of emergency does not entitle the Governor to cast away

constitutional rights and protections full throttle with arbitrary and discriminatory Executive

Orders. As outlined above, the Governor's issuance of such patently arbitrary orders under the

contrived guise of "mitigating the spread of COVID-19, protecting the public health, and

providing essential protections to vulnerable New Yorkers" is undoubtedly an improper

constraint on Plaintiffs' protected Constitutional rights. (See *Meyer v. Nebraska*, 262 U.S. 390,

399-400; 43 S. Ct. 625; 67 L. Ed. 1042 (1923).

Here, the reasons why the state's refusal to grant plaintiffs the requested exemption to

open *small venue theaters* does not have a rational basis as discussed above — namely, the state

fails to plausibly explain why it treats the plaintiffs differently versus other similarly situated

businesses or venues. For those reasons, the shut down of small venue theaters fails the Jacobson

test.

### CONCLUSION

In summary, Plaintiffs are not seeking through this lawsuit any kind of special treatment.

To the contrary, they are only seeking to be treated the same as other business venues that

Defendants have already allowed to reopen.

For all the foregoing reasons, Plaintiffs respectfully ask the Court to issue a preliminary injunction against Defendants' orders to the extent they require small venue theaters to remain closed while Restaurants, Catering Halls, Shopping Malls, Casinos, Bowling Alleys and Gyms are allowed to be open.


Dated:  Syosset, New York
        November 3, 2020

                          Respectfully submitted,


                          **THE MERMIGIS LAW GROUP, P.C.**

                                /s/James Mermigis
                          By:_____
                          James G. Mermigis, Esq.
                          85 Cold Spring Road, Suite 200
                          Syosset, New York  11791
                          516-353-0075
                          James@MermigisLaw.com

                          *Attorneys for Plaintiffs*

19