UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CLEMENTINE COMPANY LLC. d/b/a THE
THEATER CENTER, PLAYERS THEATER
MANGAEMENT CORP. d/b/a THE PLAYERS
THEATER, WEST END ARTISTS COMPANY
d/b/a THE ACTORS TEMPLE, SOHO
PLAYHOUSE INC. d/b/a SOHO PLAYHOUSE,
THE GENE FRANKEL THEATER LLC., TRIAD
PROSCENIUM PARTNERS INC. d/b/a THE
TRIAD, CARAL LTD. d/b/a BROADWAY
COMEDY CLUB, and DO YOU LIKE COMEDY
LLC. d/b/a NEW YORK COMEDY CLUB,

Plaintiffs,

-against-

ANDREW M. CUOMO, in his Official Capacity as
Governor of the State of New York, ATTORNEY
GENERAL OF THE STATE OF NEW YORK,
BILL de BLASIO, in his Official Capacity as
Mayor of the City of New York, and THE STATE
OF NEW YORK,

Defendants.



No. 20 Civ. 8899 (CM)

**ORDER**

McMahon, C.J.:

In this lawsuit, a consortium of eight individually-owned "small venue theaters"[1] located in Manhattan seek preliminary and permanent injunctive relief preventing the defendants – Governor Cuomo, the New York Attorney General, and Mayor de Blasio – from enforcing Executive Order ("EO") 202.3, which compelled New York's theaters, among other enterprises, to cease operations indefinitely to halt the transmission of Covid-19. The plaintiffs argue that their

---

[1] The small venue theaters have a median capacity of 144 seats. (Dkt. No. 9-2 at 2.)

1

equal protection rights are being violated because these artistic venues must remain closed, while EO 202.45 now permits "restaurants, catering halls, gyms, casinos, and shopping malls" to open subject to limited capacity and other social distancing requirements.[2] (Dkt. No. 9-2 at 2-3.)

Presently before this Court is the plaintiffs' motion for a mandatory preliminary injunction that would enjoin enforcement of EO 202.3 as against the small venue theaters and allow them to reopen. The moving and opposition briefs were filed before the United States Supreme Court entered an injunction *pendente lite* in the case of *Roman Catholic Diocese of Brooklyn, New York v. Andrew M. Cuomo, Governor of New York*, 592 U.S. ___ (2020) ("*Diocese*"), which is presently pending before the Second Circuit. In *Diocese* and a companion case, *Agudath Israel of America, et al. v. Cuomo*, No. 20A90, the plaintiffs argue, *inter alia*, that their First Amendment rights are being violated because houses of worship located in identified "clusters" (areas experiencing significant increases in new outbreaks of coronavirus) are subject to severe attendance restrictions pursuant to a separate but related executive order (EO 202.63), whereas many secular enterprises are not so limited. The Supreme Court voted 5-4 to enjoin enforcement of EO 202.63 against religious institutions pending an appeal from a district court order upholding the Order. The unusual injunction issued because five justices of the Court opined that the restriction on religious institutions in EO 202.63 would likely be held to violate the First Amendment. Specifically, the justices in the majority concluded that the applicants for injunctive relief made a strong showing that the challenged restrictions violated "the minimum requirement of neutrality" to religion. *Diocese*, 592 U.S. at ___. They reasoned that the regulations singled out houses of worship for especially harsh treatment vis a vis secular activities, and that this treatment would not survive the

---

[2] The complaint, filed prior to the motion for a preliminary injunction, raised several claims, including claims of equal protection and due process violations. The motion for a preliminary injunction, however, is premised only on the claim that the plaintiffs' equal protection rights have been violated.

strict scrutiny used to assess whether governmental activity that intrudes on rights protected by the First Amendment – one of which, of course, is the free exercise of religion – is lawful.

Plaintiffs in this case assert that the Supreme Court's injunction order in *Diocese* overturned *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) and *South Bay Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (2020) – the two cases on which the defendants primarily rely for their position that a state is given extra latitude to protect its citizens during a public health emergency in opposing plaintiffs' equal protection claim. This argument, first raised in the plaintiffs' reply brief, is made in cursory fashion and does not appear to take into account the fact that one of the justices who chose to opine on the issuance of the temporary injunction took pains to distinguish both *Jacobson* and *South Bay Pentecostal*. *See, e.g., Diocese*, 592 U.S. at ___ (Gorsuch, J., concurring) (opining that Jacobson "involved an entirely different mode of analysis, an entirely different right, and an entirely different kind of restriction"); *id.* at ___ & n.2 (noting the restrictions at issue in *South Bay Pentecostal* were far less severe than those that EO 202.63 placed on houses of worship).

Nonetheless, plaintiffs have argued that the interim injunction in *Diocese* has implications for this case; and this court is not free to ignore their argument. As Justice Kavanaugh said in his concurrence in *Diocese*, "judicial deference in an emergency or a crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, *free speech*, or the like are raised." *Diocese*, 592 U.S. at ___ (Kavanaugh, J., concurring) (emphasis added).

The arts have long been recognized to embody expressive speech and are thus protected from governmental overreach by the First Amendment. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65, 101 S. Ct. 2176,

3

2181, 68 L. Ed. 2d 671 (1981); *Winters v. People of the State of New York*, 333 U.S. 507, 510 (1948). The public performance of artistic works represents an exercise of First Amendment rights. While scientists tell us that such performances bear an increased risk of spreading Covid-19 – an issue of legitimate concern to our government, which is doing its level best to decrease the spread of a deadly disease – scientists also tell us that large gatherings of persons at religious assemblies, where people engage in communal acts like singing and praying aloud, are potential super-spreader events. Like the Roman Catholic churches in *Diocese,* which held services in compliance with social distancing and masking protocols, the plaintiff theaters in this case have been hard at work to find ways to make the arts available to the public safely and in accordance with social distancing guidelines.[3] (*See, e.g.*, Dkt. Nos. 9-3 ¶ 5; 37-1 ¶¶ 8-9; 37-2 ¶¶ 6-7.)

This court accords great deference to the government's exercise of its police powers during a public health crisis of unprecedented proportions. However, if the Governor of New York is not permitted to issue carefully targeted restrictions barring more than a certain number of worshippers from gathering together and engaging in behavior that scientists tell us is inimical to public health, then he may also be unable to issue restrictions that have as their effect the suppression of the free speech of artists and the right of members of the public to assemble for enjoyment of the arts – both of which, under the Executive Order, are not simply limited, but are barred altogether. Both religion and theatre implicate the exercise of First Amendment rights, and the prioritization of religious events over secular artistic events that enjoy First Amendment free speech protection raises potentially thorny questions.

---

[3] This past summer, the Berkshire Theater Group presented a month-long run of the musical "Godspell" (albeit outdoors), complete with thrice-weekly Covid-19 tests for the actors, mask and partitions on stage, temperature checks, social distancing, and a front row that was 25-feet from the stage. *See* Performing in a Pandemic, N.Y. Times (Sept. 23, 2020) https://www.nytimes.com/interactive/2020/09/23/theater/godspell-berkshires.html; 'Godspell' in 2020: Masks, Partitions and a Contactless Crucifixion, N.Y. Times (Aug. 5, 2020) https://www.nytimes.com/2020/08/05/theater/godspell-berkshires-coronavirus.html. Musical productions are arguably the most dangerous to the public health during the pandemic.

4

Since *Diocese* has been raised by plaintiffs, the First Amendment implications of that case for this one (if indeed there are any, given the procedural posture of *Diocese*) need to be fully aired before the court rules on the plaintiffs' application for a preliminary injunction. The City and State have had no opportunity to respond to plaintiffs' argument based on *Diocese*, either substantively or procedurally. They need to have that opportunity; and the plaintiffs in turn need to respond to the City and State. Moreover, because of the novelty and importance of these issues, it may be that there are *amici* out there who wish to weigh in.

The Attorney General and Corporation Counsel may have until December 22, 2020 to brief the implications of *Diocese* for the pending application. In light of the holidays, Plaintiffs have until January 8, 2021 to file an additional reply brief, again limited to that single issue. Any amici who might wish to weigh in are welcome to submit a motion together with a proposed brief by January 8, 2021. The court will turn to this matter promptly in the new year.

Dated: December 11, 2020
    New York, New York

_____
Chief Judge

BY ECF TO ALL COUNSEL