20-CV-8899 (CM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CLEMENTINE COMPANY LLC, d/b/a THE THEATER CENTER, PLAYERS THEATER MANAGEMENT CORP, d/b/a THE PLAYERS THEATER, WEST END ARTISTS COMPANY d/b/a THE ACTORS TEMPLE, SOHO PLAYHOUSE, INC., d/b/a SOHO PLAYHOUSE, THE GENE FRANKEL THEATRE L.L.C, TRIAD PROSCENIUM PARNERS, INC., d/b/a THE TRIAD CARAL LTD. d/b/a BROADWAY COMEDY CLUB, and DO YOU LIKE COMEDY LLC, d/b/a NEW YORK COMEDY CLUB,

Plaintiffs,

-against-

ANDREW M. CUOMO, in his Official Capacity as Governor of the State of New York, ATTORNEY GENERAL OF THE STATE OF NEW YORK, BILL de BLASIO, in his Official Capacity as Mayor of the City of New York and THE STATE OF NEW YORK,

Defendants.

**DEFENDANT MAYOR BILL DE BLASIO'S SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendant Mayor Bill de Blasio*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Aimee K. Lulich*
*On the Memorandum: Scali Riggs*
*Tel:  (212) 356-2369*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT

        THE DECISION IN <u>ROMAN CATHOLIC DIOCESE OF BROOKLYN</u> IS DISTINGUISHABLE FROM THE INSTANT ACTION ..................................................................................... 4

        A.    The Decision In <u>Diocese</u> Does Not Control In This Action Premised On A Claim Of Violation Of Plaintiffs' Equal Protection Rights ........................................................................................ 5

        B.    The Diocese Decision Does Not "Overturn" South Bay Or "Limit" Jacobson ........................................... 7

        C.    Even If Plaintiffs Had Raised A First Amendment Claim, <u>Diocese</u> Would Not Render Such A Claim Likely To Succeed On The Merits ..................................................................................... 8

CONCLUSION ............................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Pages**

Castro v. United States,
    540 U. S. 375, 386 (2003).................................................................................................5-6

Church of Lukumi Babalu Aye, Inc. v. Hialeah,
    508 U.S. 520, 533 (1993)...............................................................................................7-8

City of Renton v. Playtime Theaters, Inc.,
    475 U.S. 41, 46-48 (1986) ................................................................................................10

Concerned Home Care Providers, Inc. v. Cuomo,
    783 F.3d 77 (2d Cir. 2015)...................................................................................................6

Geller v Cuomo,
    No. 20-CV-4653 (ER), 2020 US Dist LEXIS 137863 (SDNY Aug. 3, 2020) ................10-11

Greenlaw v. United States,
    554 U. S. 237, 243 (2008)....................................................................................................5

Heffron v. Int'l Soc. For Krishna Consciousness, Inc.,
    452 U.S. 640, 647 (1981)...................................................................................................11

Hobbs v County of Westchester,
    397 F3d 133, 149 (2d Cir 2005).........................................................................................11

Int'l. Action Ctr. v City of N.Y.,
    587 F3d 521, 528 (2d Cir 2009).........................................................................................11

Jacobson v. Massachusetts,
    197 U.S. 11 (1905)...................................................................................................3, 4, 7, 8

Mastrovincenzo v City of N.Y.,
    435 F3d 78, 101 (2d Cir 2006)...........................................................................................11

Reed v Town of Gilbert,
    576 US 155, 165-166 (2015) .............................................................................................10

Roman Catholic Diocese of Brooklyn v. Cuomo,
    592 U.S. __ (2020)..................................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11

South Bay United Pentecostal v. Newsom,
    140 S. Ct 1613 (2020)................................................................................................3, 4, 7, 8

United States v. Sineneng-Smith,
    140 S. Ct. 1575, 1579 (2020)...............................................................................................5

Village of Willowbrook v. Olech,
    528 U.S. 562 (2000) ............................................................................................................... 6

Ward v. Rock Against Racism,
    491 U.S. 781, 791 (1989) ..................................................................................................... 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

THE CLEMENTINE COMPANY LLC, d/b/a THE
THEATER CENTER, PLAYERS THEATER
MANAGEMENT CORP, d/b/a THE PLAYERS
THEATER, WEST END ARTISTS COMPANY d/b/a
THE ACTORS TEMPLE, SOHO PLAYHOUSE, INC.,
d/b/a SOHO PLAYHOUSE, THE GENE FRANKEL
THEATRE L.L.C, TRIAD PROSCENIUM PARNERS,
INC., d/b/a THE TRIAD CARAL LTD. d/b/a
BROADWAY COMEDY CLUB, and DO YOU LIKE
COMEDY LLC, d/b/a NEW YORK COMEDY CLUB,

20-CV-8899 (CM)

                                             Plaintiffs,

                -against-

ANDREW M. CUOMO, in his Official Capacity as
Governor of the State of New York, ATTORNEY
GENERAL OF THE STATE OF NEW YORK, BILL de
BLASIO, in his Official Capacity as Mayor of the City of
New York and THE STATE OF NEW YORK,

                                             Defendants
------------------------------------------------------------------------ x

### DEFENDANT MAYOR BILL DE BLASIO'S SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to the Court Order dated December 11, 2020, Defendant Mayor Bill de Blasio ("Mayor de Blasio"), by his attorney James E. Johnson, Corporation Counsel of the City of New York, respectfully submits this memorandum of law in further opposition to plaintiffs' motion for a preliminary injunction. Specifically, as the Court directed, defendant limits this memorandum to discussion of the decision in Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. __ (2020) ("Diocese"), which was issued after defendant Mayor de Blasio's opposition

papers were filed and which, as set forth below, does not require the court to grant the instant motion.

Briefly, plaintiffs filed a motion for a preliminary injunction arguing that their Equal Protection rights are violated by New York State Governor Andrew Cuomo's ("Governor Cuomo") Executive Order No. 202.3 of March 16, 2020 ("Subject EO") which requires theaters to remain closed in order to prevent the transmission of COVID-19 while "restaurants, catering halls, gyms, casinos, and shopping malls" are permitted to open.[1] See Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction ("Pl. Mem.") at pp. 2-3 and 12-13. Plaintiffs argue that they are harmed financially by the Subject EO because they have been unable to operate since March. See Reply Memorandum of Law ("Pl. Reply") at pp. 15-18.

In opposition, on November 20, 2020, Defendant Mayor de Blasio filed a Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("de Blasio Opp. Mem."), the Declaration of Dr. Jay Varma ("Varma Decl."), and the Declaration of Aimee K. Lulich ("Lulich Decl.") with exhibits. Mayor de Blasio opposed plaintiffs' motion on the grounds that (1) the Subject EO is an authorized use of state emergency power; and (2) the Subject EO does not violate plaintiffs' Equal Protection rights because plaintiffs failed to identify any similarly-situated comparators and there is a rational basis for the continuing closure of theaters. Defendants State, Governor Cuomo, and the Attorney General of the State of New York also opposed plaintiffs' motion by opposition papers dated November 20, 2020.

Thereafter, on November 25, 2020, the Supreme Court issued the decision in Diocese and its companion case Agudath Israel of America v. Cuomo, granting a preliminary injunction which prevented the State from enforcing, as against the plaintiff religious institutions,

---

[1] As of December 14, 2020, and continuing to date, establishments in New York City may not offer indoor dining.

-2-

State EO No. 202.68 which capped attendance at religious services in zones in which coronavirus transmission is elevated. Diocese, 592 U.S. at __. Specifically, applying strict scrutiny to the Diocese plaintiffs' First Amendment Free Exercise claim, the Supreme Court found that the plaintiffs in those cases demonstrated a likelihood of success on the merits because the restrictions were not "narrowly tailored" to the compelling government interest of stemming the tide of COVID-19 infection. Id. Further, the Supreme Court found that the restrictions caused irreparable harm by limiting in-person attendance to 10 or 25 people regardless of the physical size of the house of worship, thereby preventing significant numbers of people from attending in-person religious services, including religious rites, strictures, or traditions that require in-person participation. Id. Finally, the Supreme Court found that the public interest weighed in favor of granting the preliminary injunction because there was no evidence that the plaintiffs had contributed to the spread of COVID, there were less restrictive means of accomplishing the State's goal than limiting in-person attendance to 10 or 25 people, and the State had not demonstrated that a preliminary injunction would imperil the public health. Id.

On December 1, 2020, plaintiff filed a Reply to Mayor de Blasio's and the State Defendants' opposition papers. With regard to Diocese, plaintiffs argue that the decision "reversed" or "overturned" South Bay Pentecostal Church v. Newsom, 140 S. Ct 1613 (2020) ("South Bay"), one of the decisions upon which defendant relied in his opposition. Pl. Reply at pp. 4-5 and 18-19. Additionally, plaintiffs allege that the Supreme Court distinguishes Jacobson v. Massachusetts, 197 U.S. 11, 38 (1905) ("Jacobson"), upon which defendants also relied, from the facts and claims at issue in Diocese.

On December 11, 2020, noting that the Diocese decision was issued after defendants' oppositions were filed, this Court issued an Order permitting defendants to submit additional briefing limited to the implications of the decision in Diocese, including potential First Amendment implications, by December 22, 2020, and permitting plaintiffs to respond by January 8, 2020.

Pursuant to the Court's December 11, 2020 Order, defendant Mayor de Blasio submits this memorandum of law in further opposition to the plaintiffs' motion for a preliminary injunction on the grounds that Diocese is not the appropriate controlling authority for the instant motion because (A) Diocese is limited to a First Amendment Free Exercise claim, while the instant motion is premised upon Equal Protection rights; (B) Diocese did not "overturn" South Bay and Jacobson, which remain precedential in this matter; (C) even if plaintiffs had raised a First Amendment claim, which they did not, Diocese would not render such a claim likely to succeed on the merits.

## ARGUMENT

### THE DECISION IN ROMAN CATHOLIC DIOCESE OF BROOKLYN IS DISTINGUISHABLE FROM THE INSTANT ACTION

Plaintiffs argue that their Equal Protection rights are violated by the Subject EO, resulting in financial loss. As described in Mayor de Blasio's opposition papers, this argument fails because plaintiffs are not likely to succeed on the merits of their Equal Protection claim and the public interest does not weigh in their favor. The Diocese decision, based entirely on a First Amendment Free Exercise analysis, is not applicable to the instant motion wherein plaintiffs have made only an Equal Protection claim. Further, contrary to plaintiffs' assertions, Diocese did not "overturn" or "limit" the relevant legal standards as described in defendant's opposition

papers. Finally, even if this Court were to infer First Amendment claims here, the specific facts and relevant law do not support granting plaintiffs' motion for a preliminary injunction based upon Diocese.

### A. The Decision In Diocese Does Not Control In This Action Premised On A Claim of Violation Of Plaintiffs' Equal Protection Rights.

Most significantly, the Diocese decision is specific to the First Amendment Free Exercise claim raised by the Diocese plaintiffs. The Supreme Court makes clear that the Diocese decision is fact-based and is rooted in the principles of Free Exercise. Diocese, 592 U.S. at __. By contrast, the instant motion is premised on a claim of violation of plaintiffs' Equal Protection rights, a separate legal claim with its own legal standard and precedent. The Diocese decision does nothing to change the legal analysis where plaintiffs seek an injunction on the basis of alleged Equal Protection violations, and the Court should not violate the principle of party presentation by imputing a First Amendment challenge on plaintiffs' behalf. Because plaintiffs have not raised a First Amendment challenge, and Diocese offers little to no guidance given the very different claim, facts, and circumstances at issue here, plaintiffs' motion must fail for the reasons set forth in defendants' opposition papers.

It is generally accepted that the Courts must follow the principle of party presentation. See United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020) (holding that the Appeals Court abused its discretion where it ordered further briefing on a new claim not raised by either party). Accordingly, the Courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Greenlaw v. United States, 554 U. S. 237, 243 (2008); see also Castro v. United States, 540 U. S. 375, 386 (2003) (The judicial system "is designed around the premise that [parties represented by

competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (Scalia, J., concurring in part and concurring in judgment).

Here, plaintiffs did not bring a First Amendment claim in the Complaint, did not raise a First Amendment argument in the instant motion, and, even while directly addressing the Diocese decision in the Reply, did not make any arguments arising out of the First Amendment. In addition, plaintiffs claim that the Subject EO harms them financially. It is not clear what plaintiffs would argue should they decide to raise a First Amendment challenge, since at no point do plaintiffs raise any allegations related to speech, art, or expression. Rather, they allege that they are suffering financial losses because the theaters must remain closed while some other businesses may open. Accordingly, this Court should limit its decision to the Equal Protection claim and arguments made in the motion pending before it.

The Diocese decision, based on an analysis of the Free Exercise clause of the First Amendment, offers little to no guidance in the instant matter. Because the Diocese plaintiffs alleged that the challenged regulation burdened their religious exercise, and the Supreme Court found that the challenged regulation did not treat houses of worship neutrally, the State's EO was subject to the exacting strict scrutiny standard. Diocese, 592 U.S. at __. Under strict scrutiny, a regulation must be "narrowly tailored to a compelling government interest." Id. In Diocese, the Supreme Court applied the First Amendment's strict scrutiny standard to find that the challenged regulation was not "narrowly tailored" because less restrictive limitations were available. Id. The Equal Protection clause, by contrast, does not place such a high burden on the challenged regulation. First, unlike the Diocese plaintiffs, the plaintiffs in the instant matter must demonstrate that they were treated differently from comparators to which they are similarly-situated. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). They have not done

so. Second, the plaintiffs must demonstrate that there was "no rational basis" for the alleged disparate treatment. Id. While the challenged regulation in Diocese needed to be "narrowly tailored," here the Subject EO carries "a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." Concerned Home Care Providers, Inc. v. Cuomo, 783 F.3d 77, 90–92 (2d Cir. 2015). The law applied in Diocese is not applicable to the instant motion, and plaintiffs cannot demonstrate a likelihood of success on the merits of their Equal Protection claim.

The Supreme Court's analysis of the irreparable harm and public interest prongs in Diocese are equally inapplicable to the instant matter. In Diocese, the alleged irreparable harm centered on the plaintiffs' inability to practice religion, and, in particular, to participate in sacraments and religious strictures that require personal attendance. Diocese, 592 U.S. at __. Here, plaintiffs' only identified harm is financial. Similarly, the Diocese decision identifies the public interest as weighing against restrictions that "strike at the very heart of the First Amendment's guarantee of religious liberty" where less burdensome restrictions are available. Id. Again, here, plaintiffs' allegation of financial losses is weighed against the need to protect the community from the transmission of COVID-19. The Diocese decision does not provide a basis upon which this Court could find plaintiffs are irreparably harmed or that the public interest weighs in their favor.

**B.      The Diocese Decision Does not "Overturn" South Bay or "Limit" Jacobson.**

Plaintiffs allege in a conclusory manner that the Diocese decision "overturned" the decision in South Bay and "limited" the decision in Jacobson. There is no support for either contention. The Diocese decision accords with the decision in South Bay, in which the Supreme Court found the challenged regulation to be content neutral and applied intermediate scrutiny in declining to enjoin the challenged regulation. The Diocese and South Bay decisions do not

-7-

contradict each other, and, in fact, demonstrate that the application of the strict scrutiny standard in Diocese, as opposed to a less stringent intermediate scrutiny or rational basis review, was likely determinative.

Similarly, Diocese neither "limits" nor "overturns" Jacobson. Rather, like with South Bay, Diocese and Jacobson address different claims and sets of facts, and apply different standards, to reach, unsurprisingly, different results. As described in Justice Gorsuch's concurrence in Diocese, the Jacobson court applied rational basis review to the plaintiff's Equal Protection claim, whereas the Diocese court applied strict scrutiny to plaintiffs' Free Exercise claims. Indeed, the Jacobson decision, unlike Diocese, is precedential to the instant matter and supports the denial of plaintiffs' motion.

Contrary to plaintiffs' assertions, Diocese does not meaningfully "overturn" or "limit" South Bay or Jacobson. Rather, the different outcomes are a result of the legal claims brought by plaintiffs and the attendant legal standards which must be applied. Here, plaintiffs cannot prevail in an Equal Protection claim, and their motion must be denied.

**C.      Even If Plaintiffs Had Raised A First Amendment Claim, Diocese Would Not Render Such A Claim Likely To Succeed On The Merits.**

The only issue that was preliminarily analyzed in Diocese was the impact of a State Executive Order ("EO 202.68") on plaintiff religious institutions' rights under the Free Exercise clause of the First Amendment[2]. See Diocese 592 U.S. at __. In Diocese, the Court first found that plaintiffs had demonstrated a likelihood of success on the merits of their claim that EO 202.68 violated "the minimum requirement of neutrality" to religion for purposes of a temporary stay. Diocese, 592 U.S. at __. (citing Church of Lukumi Babalu Aye, Inc. v. Hialeah,

---

[2] Specifically, Diocese was an application for injunctive relief in which the Court enjoined enforcement of EO 202.68's 10 and 25-person occupancy limits on certain plaintiffs' houses of worship pending disposition of their appeal.

508 U.S. 520, 533 (1993)). The Court found that the challenged restrictions "cannot be viewed as neutral because they single out houses of worship for especially harsh treatment." Diocese, 592 U.S. at __. The Diocese Court also considered a perceived lack of neutrality towards religion due to public statements made in connection with EO 202.68. The Court noted that the statements could be viewed as targeting the Orthodox Jewish community. Diocese, 592 U.S. at __. Finding, on the preliminary record before them, that EO 202.68 was neither "neutral" nor generally applicable as it specifically addressed religious activity, the Court applied strict scrutiny to plaintiffs' First Amendment claim. Diocese, 592 U.S. at __. The Court's holding in Diocese applies *narrowly* to claims raised under the Free Exercise Clause of the First Amendment. Diocese, 592 U.S. at __ (citing Lukumi, 508 U.S. at 533). Diocese is not applicable here.

Plaintiffs are not, and do not claim to be, religious institutions or religious places of worship. Importantly, Plaintiffs do not assert *any* claim that their First Amendment rights have been violated, be it Free Exercise, Free Speech, or otherwise. Rather, Plaintiffs primarily contend that the Subject EO violates their rights to Equal Protection under the Fourteenth Amendment, resulting in financial harm because they cannot hold indoor public theater productions. As set forth above, that claim must fail.

Assuming arguendo that plaintiffs' First Amendment right to Free Speech is implicated by the Subject EO, as contemplated by this Court's Order, plaintiffs still would not prevail on that hypothetical claim under the long-standing principles for reviewing such claims, which are separate and distinct from the Court's analysis in Diocese.

Under the traditional framework, a time, place, or manner restriction on speech or expression will survive a constitutional challenge if it is content neutral, satisfies intermediate

508 U.S. 520, 533 (1993)). The Court found that the challenged restrictions "cannot be viewed as neutral because they single out houses of worship for especially harsh treatment." Diocese, 592 U.S. at __. The Diocese Court also considered a perceived lack of neutrality towards religion due to public statements made in connection with EO 202.68. The Court noted that the statements could be viewed as targeting the Orthodox Jewish community. Diocese, 592 U.S. at __. Finding, on the preliminary record before them, that EO 202.68 was neither "neutral" nor generally applicable as it specifically addressed religious activity, the Court applied strict scrutiny to plaintiffs' First Amendment claim. Diocese, 592 U.S. at __. The Court's holding in Diocese applies *narrowly* to claims raised under the Free Exercise Clause of the First Amendment. Diocese, 592 U.S. at __ (citing Lukumi, 508 U.S. at 533). Diocese is not applicable here.

Plaintiffs are not, and do not claim to be, religious institutions or religious places of worship. Importantly, Plaintiffs do not assert *any* claim that their First Amendment rights have been violated, be it Free Exercise, Free Speech, or otherwise. Rather, Plaintiffs primarily contend that the Subject EO violates their rights to Equal Protection under the Fourteenth Amendment, resulting in financial harm because they cannot hold indoor public theater productions. As set forth above, that claim must fail.

Assuming arguendo that plaintiffs' First Amendment right to Free Speech is implicated by the Subject EO, as contemplated by this Court's Order, plaintiffs still would not prevail on that hypothetical claim under the long-standing principles for reviewing such claims, which are separate and distinct from the Court's analysis in Diocese.

Under the traditional framework, a time, place, or manner restriction on speech or expression will survive a constitutional challenge if it is content neutral, satisfies intermediate

scrutiny, and leaves open ample alternative means for communication. City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 46-48 (1986). The first step in a neutrality analysis is to determine whether a law is neutral "on its face." Reed v Town of Gilbert, 576 US 155, 165-166 (2015). This preliminary inquiry requires a court to consider whether a regulation of speech, on its face, "draws distinctions based on the message a speaker conveys." Id. at 163. The Subject EO draws no such distinctions. The Subject EO applies to all theaters, regardless of the content or message of any specific production. Since the Subject EO is neutral on its face, the remaining inquiry is whether the Subject EO has an impermissible purpose. Id. at 165-166. A court must determine whether "the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). "A regulation that serves a purpose unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers' messages but not others." Id. The Subject EO does not have an impermissible purpose. The purpose of the Subject EO is to help reduce the transmission of the COVID-19 virus. The Subject EO is content neutral.

A content-neutral restriction will be constitutionally sound if it is narrowly tailored to serve a significant government interest, and it leaves open ample alternative channels of communication. Ward, 491 US at 791. As Diocese recognized, "stemming the spread of COVID–19 is unquestionably a compelling interest." Diocese, 592 U.S. at __. The Subject EO is narrowly tailored to serve that interest. The purpose of the Subject EO is limiting the spread of COVID-19. As detailed in Defendant Mayor de Blasio's November 20, 2020 opposition, the State's objective would be achieved less effectively if theaters were permitted to reopen. "The narrow tailoring requirement is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation[.]" Geller v

Cuomo, No. 20-CV-4653 (ER), 2020 US Dist LEXIS 137863, at *28 (SDNY Aug. 3, 2020); citing Hobbs v County of Westchester, 397 F3d 133, 149 (2d Cir 2005).

Moreover, Plaintiffs are left open ample alternative methods of communication. "The First Amendment does not guarantee the right to communicate one's views at all times and places and in any manner that may be desired." Heffron v. Int'l Soc. For Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981). Plaintiffs are free to hold outdoor or virtual performances. In fact, many performing arts institutions across the City are utilizing these methods.[3] The law does not require that alternative methods of communication be perfect substitutes. Intl. Action Ctr. v City of NY, 587 F3d 521, 528 (2d Cir 2009); see also Mastrovincenzo v City of NY, 435 F3d 78, 101 (2d Cir 2006) ("The requirement that 'ample alternative channels' exist does not imply that alternative channels must be perfect substitutes for those channels denied to plaintiffs by the regulation at hand[.]").

The Subject EO is a content neutral time, place, or manner restriction which is narrowly tailored to serve a compelling government interest of slowing the spread of a deadly virus, and the Subject EO leaves open alternative methods of communication. Therefore, had plaintiffs asserted a First Amendment Free Speech challenge, plaintiffs' hypothetical claim would be unlikely to succeed on the merits and, thus, would not support the issuance of the preliminary injunction sought herein. The finding in Diocese applies *narrowly* to claims raised under the Free Exercise Clause of the First Amendment and is not applicable to a hypothetical Free Speech claim nor is it applicable to plaintiffs' actual claim that the Subject EO violates their rights to Equal Protection under the Fourteenth Amendment.

---

[3] See, e.g., Virtual NYC, NYC The Official Guide, available at https://www.nycgo.com/virtual-nyc/, (last visited December 17, 2020).

## CONCLUSION

For the foregoing reasons, defendant Mayor Bill de Blasio respectfully requests that this Court deny Plaintiffs' motion for a preliminary injunction in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         December 22, 2020

>                          James E. Johnson
>                          Corporation Counsel
>                            of the City of New York
>                          *Attorney for Defendant Bill de Blasio*
>                          100 Church Street
>                          New York, New York 10007
>                          (212) 356-2369
>
>                          By: _____/S/_____
>                                Aimee K. Lulich
>                                Assistant Corporation Counsel

Scali Riggs, Assistant Corporation Counsel
On the Memorandum

20-CV-8899 (CM)

| |
|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK |
| THE CLEMENTINE COMPANY LLC, d/b/a THE THEATER CENTER, PLAYERS THEATER MANAGEMENT CORP, d/b/a THE PLAYERS THEATER, WEST END ARTISTS COMPANY d/b/a THE ACTORS TEMPLE, SOHO PLAYHOUSE, INC., d/b/a SOHO PLAYHOUSE, THE GENE FRANKEL THEATRE L.L.C, TRIAD PROSCENIUM PARNERS, INC., d/b/a THE TRIAD CARAL LTD. d/b/a BROADWAY COMEDY CLUB, and DO YOU LIKE COMEDY LLC, d/b/a NEW YORK COMEDY CLUB,<br><br>                       Plaintiffs,<br><br>            -against-<br><br>ANDREW M. CUOMO, in his Official Capacity as Governor of the State of New York, ATTORNEY GENERAL OF THE STATE OF NEW YORK, BILL de BLASIO, in his Official Capacity as Mayor of the City of New York and THE STATE OF NEW YORK,<br><br>                       Defendants. |
| **MEMORANDUM OF LAW BY DEFENDANT BILL DE BLASIO IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| *JAMES E. JOHNSON*<br>*Corporation Counsel of the City of New York*<br> *Attorney for Defendant Mayor Bill de Blasio*<br> *100 Church Street*<br> *New York, N.Y.  10007*<br><br> *Of Counsel: Aimee Lulich*<br> *On the Memorandum: Scali Riggs*<br> *Tel:  (212) 356-2369*<br> *Matter No.:* |
| *Due and timely service is hereby admitted.*<br><br>*New York, N.Y.  ........................................................................................, 2020......*<br><br>*................................................................................................................. , Esq.*<br><br>*Attorney for ................................................................................................................* |