UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CLEMENTINE COMPANY LLC. d/b/a THE
THEATER CENTER, PLAYERS THEATER
MANAGEMENT CORP. d/b/a THE PLAYERS THEATER,
WEST END ARTISTS COMPANY d/b/a THE ACTORS
TEMPLE, SOHO PLAYHOUSE INC. d/b/a SOHO
PLAYHOUSE, THE GENE FRANKEL THEATRE LLC.,
TRIAD PROSCENIUM PARTNERS INC. d/b/a THE
TRIAD, CARAL LTD. d/b/a BROADWAY COMEDY
CLUB, and DO YOU LIKE COMEDY LLC. d/b/a NEW
YORK COMEDY CLUB,

                                        Plaintiffs,                No. 20-cv-8899 (CM)

                        v.

ANDREW M. CUOMO, in his Official Capacity as Governor
of the State of New York, ATTORNEY GENERAL OF THE
STATE OF NEW YORK, BILL de BLASIO, in his Official
Capacity as Mayor of the City of New York, and THE STATE
OF NEW YORK,

                                        Defendants.

---

### STATE DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
*Attorney for the State Defendants*
28 Liberty Street
New York, NY 10005
Tel. (212) 416-8610
Matthew.Conrad@ag.ny.gov

Matthew L. Conrad
Assistant Attorney General
*Of Counsel*

Defendants Andrew M. Cuomo, in his official capacity as Governor of the State of New York, Letitia James, in her official capacity as Attorney General of the State of New York, and the State of New York (collectively, the "State Defendants"), respectfully submit this supplemental memorandum of law, as directed by the Court in its Order issued on December 11, 2020 (ECF No. 42) and in further opposition to Plaintiffs' motion for a preliminary injunction dated November 9, 2020 (ECF No. 9).

## ARGUMENT

In Roman Catholic Diocese of Brooklyn, New York v. Andrew M. Cuomo, Governor of New York, 592 U.S. ___, 2020 WL 6948354 (2020) ("Diocese"), the Supreme Court recently addressed whether a different Executive Order ("EO") not at issue here, EO 202.68, was likely to violate the First Amendment's Free Exercise Clause for the purposes of granting a preliminary injunction. EO 202.68 enacted 10- and 25-person limits on houses of worship in "Red Zones" and "Orange Zones," narrowly defined geographical areas in which elevated numbers of COVID-19 infections required that additional steps be taken to reduce further spread of the contagion. Id. at *1. The Supreme Court applied strict scrutiny to those limits on the ground that they burdened the fundamental right of religious freedom and were not neutral but disfavored religion. Id. at *2. It found that the provisions of EO 202.68 implementing the Red Zone and Orange Zone restrictions were unlikely to survive strict scrutiny because they were not narrowly tailored to the State's compelling interest in addressing the COVID-19 pandemic. Id.

Diocese does not provide any new or additional basis for this Court to grant Plaintiffs' preliminary injunction motion. First, this lawsuit does not raise any First Amendment claim and does not involve Executive Order 202.68. (Point I, infra.) While Plaintiffs raise the Diocese decision in their reply brief, they only argue that it precludes the application of the deferential

review of state directives directed towards public health crises first articulated in <u>Jacobson v.</u> <u>Massachusetts</u>, 197 U.S. 11 (1905). Plaintiffs do *not* argue, nor could they, that <u>Diocese</u> compels that the Court issue a preliminary injunction on First Amendment grounds, and, as the Plaintiffs have never raised a First Amendment claim in this case, the Court should not issue a decision on this basis. Second, even had Plaintiffs ever raised such a claim, <u>Diocese</u> by its terms only applies to cases relating to the free exercise of religion, which this is not. Any First Amendment claim would remain subject to the traditional time, place, and manner analysis of content-neutral regulations such as those at issue here. Finally, analyzing <u>Diocese</u> for the purpose by which it *was* raised by Plaintiffs, it does not modify the <u>Jacobson</u> standard and would not, in any event, affect the correct outcome of Plaintiffs' motion for a preliminary injunction overturning the Executive Orders and related guidance issued by Governor Cuomo and various state agencies directing the continued closure of the eight Plaintiff theater venues (collectively, the "State Guidance"). (Point II, <u>infra</u>.)

## I.      THIS IS NOT A FIRST AMENDMENT CASE AND, IN ANY EVENT, <u>DIOCESE</u> IS INAPPLICABLE TO THE FACTS AT ISSUE HERE

### A.      The Court Should Not Enjoin the State Guidance Pursuant to Claims that Plaintiffs Have Never Made

The Court has asked the parties to consider whether the First Amendment implications of <u>Diocese</u> require that the Plaintiff theaters be permitted to operate as well. Whether the decision in <u>Diocese</u> should be construed to impact secular forms of First Amendment expression is indeed an important question, as the Court articulated in its Order directing additional briefing. However, first and foremost, although the artistic expression that occurs in theaters is certainly a form of speech protected by the First Amendment, Plaintiffs have chosen not to pursue that line of argument in this case. Neither Plaintiffs' motion for a preliminary injunction, nor the Complaint, raises a single claim under the First Amendment – nor, even, is it mentioned in Plaintiffs' reply

memorandum in which they (inaccurately) discuss <u>Diocese</u>. The Court should not enjoin the State Guidance based on a claim that Plaintiffs have never raised.

The Supreme Court recently opined on the propriety of a court issuing a dispositive decision based on an issue that the parties never themselves raised, also in the First Amendment context. In <u>United States v. Sineneng-Smith</u>, 140 S. Ct. 1575 (2020), the Supreme Court considered a case relating to a federal law criminalizing the encouragement or inducement of illegal entry into the United States. The defendant, a person who had been convicted under the law, unsuccessfully argued, *inter alia*, that the statute was unconstitutional as applied to her under the Petition and Free Speech Clauses of the First Amendment. <u>Id.</u> at 1578. On appeal, the Ninth Circuit asked *amici* and the parties to opine on whether the statute was unconstitutional as overbroad under the First Amendment – an issue never raised by the parties – and concluded that it was. <u>Id.</u> In a unanimous decision authored by Justice Ruth Bader Ginsburg, the Supreme Court overturned the Ninth Circuit's decision, holding "that the appeals panel departed so drastically from the principle of party presentation as to constitute an abuse of discretion," and remanded the case "for an adjudication of the appeal attuned to the case shaped by the parties rather than the case designed by the appeals panel." <u>Id.</u> The Court elaborated that "in both civil and criminal cases, in the first instance and on appeal, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." <u>Id.</u> at 1579 (internal citation omitted). While "the party presentation principle is supple" and "[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate," the Court pointed to "a party's evident miscalculation of the elapsed time under a statute" as an example of when such a role would be appropriate. <u>Id.</u> (internal citation omitted).

Here, as in <u>Sineneng-Smith</u>, it would be appropriate for the parties, rather than the Court,

to "frame the issues for decision." While <u>Diocese</u> was issued during the pendency of this case, Plaintiffs nevertheless could have raised a First Amendment issue in their Complaint, or in their motion for a preliminary injunction. They did neither. Even in their reply brief, filed *after* the issuance of <u>Diocese</u> and relying heavily on <u>Diocese</u> for its purported effect on the <u>Jacobson</u> standard, Plaintiffs did not so much as mention the First Amendment. Even more than in <u>Sineneng-Smith</u>, where the appeals court merely added a new First Amendment theory in a case where other First Amendment concerns had already been raised, the Court should not issue a decision based on a theory that the parties never intended to litigate. If the <u>Diocese</u> decision raises questions relating to the prioritization of religious events over secular artistic speech, those questions should be addressed in a proceeding where they are squarely at issue as raised by the parties. As it is currently pled, this is not that case.

**B.      <u>Diocese</u> is Limited to the Free Exercise of Religion and the State Guidance Must Be Upheld As a Reasonable Time, Place, and Manner Restriction**

In the absence of any First Amendment claims raised by Plaintiffs, it is difficult to address the merit of any hypothetical claims that they might have brought, and the State Defendants cannot speculate on the specifics of such claims or craft Plaintiffs' arguments for them. Nevertheless, <u>Diocese</u> is, by its clear terms, limited to cases relating to the free exercise of religion, and is therefore inapposite to the present case under any circumstances. The First Amendment's protection of free speech and of artistic expression are governed by a separate set of doctrines that permit the State Guidance regarding theaters to stand, and the Court should not take the extraordinary step of transplanting legal frameworks between these distinct areas of law.

In <u>Diocese</u>, applying the preliminary injunction standard, the Court found that plaintiffs had demonstrated a likelihood of success on the merits of their claim that EO 202.68 violated "the minimum requirement of neutrality" to religion. <u>Diocese</u>, 2020 WL 6948354 at \*1 (citing <u>Church</u>

of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533 (1993)). The Court found that the challenged restrictions "cannot be viewed as neutral because they single out houses of worship for especially harsh treatment." Id. Finding that EO 202.68 was neither "neutral" nor generally applicable as it specifically addressed religious activity, the Court applied strict scrutiny to plaintiffs' First Amendment claim. Id. at *2. Although the Court noted that stemming the spread of COVID-19 is "unquestionably a compelling interest," the Court found that the challenged EO was not "narrowly tailored" to serve this purpose. Id. The Court found that "there are many other less restrictive rules that could be adopted to minimize the risk of those attending religious services." Id. Accordingly, the Court's holding in Diocese applies narrowly to claims raised under the Free Exercise Clause of the First Amendment, which by their very nature implicate a fundamental right subject to strict scrutiny. Id. (citing Lukumi, 508 U.S. at 533). Nothing in the Diocese decision suggests that it applies outside of the free exercise context, or mandates that the Jacobson standard no longer applies to Plaintiffs' claims, which are not brought under the Free Exercise Clause.

Diocese did not create any new standard for First Amendment cases, but instead simply applied the usual "minimum requirement of neutrality" standard applicable in a typical free exercise case. Even if this Court were to determine it should extend Diocese beyond the Free Exercise Clause context, it should not transplant a free exercise doctrine to the speech context, but rather should simply apply the doctrines that typically apply to speech cases. Here, that is the long-standing rule that government regulation of the time, place, and manner of expressive activity is permissible as long as the restrictions "are content neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication." Paulsen v. Gotbaum, 982 F.2d 825, 828 (2d Cir. 1992).

If the Court were to determine that it must dispense with the <u>Jacobson</u> standard as a result of <u>Diocese</u>, the State Guidance easily satisfies the time, place, and manner test that would instead apply. <u>First</u>, a speech restriction "is content neutral when it is justified without reference to the content of the regulated speech." <u>Marcavage v. City of N.Y.</u>, 689 F.3d 98, 104 (2d Cir. 2012). A facially neutral regulation "does not become content based simply because it may disproportionately affect speech on certain topics." <u>McCullen v. Coakley</u>, 573 U.S. 464, 480 (2014). That is undoubtedly the case here. The challenged rule temporarily restricting the operation of theaters and other similar activities such as karaoke and comedy clubs is indifferent to what might be expressed during such activities, which all present a specifically heightened risk of viral spread. The restriction refers only to the mode of speech, as opposed to the content.

  <u>Second</u>, a time, place, and manner restriction must be "narrowly tailored to serve a significant governmental interest." <u>Paulsen</u>, 982 F.2d at 828. Importantly, this is *not* equivalent to the strict scrutiny standard applied in <u>Diocese</u>. <u>Compare</u> <u>Diocese</u>, 2020 WL 6948354, at *2 ("Because the challenged restrictions are not 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this means that they must be 'narrowly tailored' to serve a 'compelling' state interest.") <u>with</u> <u>McCullen</u>, 573 U.S. at 485 (a speech restriction that is "neither content nor viewpoint based . . . therefore need not be analyzed under strict scrutiny"). Rather, "for a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests. Such a regulation, unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government's interests." <u>McCullen</u>, 573 U.S. at 486 (citing <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 799 (1989)). Here, the State Guidelines do not burden substantially more speech than is necessary to further the government's legitimate – and in fact overwhelmingly

compelling – interest in saving lives by stemming the spread of the COVID-19 pandemic. As described in State Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction (ECF No. 29) ("Def. Memo") and the Declaration of Debra S. Blog, M.D., MPH (ECF No. 28), "[T]heaters inherently operate in a manner that poses an elevated risk of causing a 'superspreader' event" (Def. Memo, p. 12). The temporary closures of venues that pose this risk, while permitting the partial operation of activities that pose lesser risks, is a narrowly tailored restriction in the context of the time, place, and manner doctrine.

Finally, a valid time, place, and manner regulation must "leave open ample alternatives for communication." Paulsen, 982 F.2d at 828. In the context of the present public health crisis, safe alternatives to live in-person theater exist and are available to Plaintiffs – for example, streaming webcasts of theatrical performances have made live theater accessible to online audiences.[1] Federal courts that have addressed similar questions during the course of the COVID-19 pandemic have held that these sorts of alternatives are adequate to satisfy the time, place, and manner analysis. See CH Royal Oak, LLC v. Whitmer, No. 20-cv-570, 2020 WL 4033315, at *6 (W.D. Mich. July 16, 2020) (in a First Amendment challenge brought by a movie theater seeking to hold a film festival in support of the Black Lives Matter movement, holding that Michigan's closure of movie theaters satisfied the alternative method of communication requirement, as the plaintiff could "host its planned event outside in any outdoor theater, cinema, or performance venue. Or, [plaintiff] could hold a different outdoor protest or fundraiser to voice its support for Black Lives Matter. While an outdoor event is not [plaintiff's] preferred form of communication, it is certainly an available method of communication."); Antietam Battlefield KOA v. Hogan, 461 F. Supp. 3d

---

[1]   See, e.g., https://www.timeout.com/newyork/theater/the-best-theater-to-watch-online-today-streaming (listing numerous theater webcasts); https://www.playbill.com/article/schedule-of-upcoming-and-current-free-live-stream-broadcasts-com-322823 (same).

214, 236 (D. Md. 2020), <u>appeal dismissed</u>, 2020 WL 6787532 (4th Cir. July 6, 2020) (holding that Maryland's restrictions on gatherings of more than ten people is a valid time, place, and manner restriction, as it "leaves open several alternatives: [Plaintiffs] for instance, may still protest in groups of ten or fewer, and can also communicate information in other ways such as through the Internet, newspaper, or signs. Similarly, religious organizations may perform services in groups of ten or fewer people, virtually, or through drive-in services. The court understands that these alternatives might not carry the same force as a large rally or an in-person religious service with all congregants. But, especially in view of the COVID-19 pandemic, sufficient alternatives are available.").

The State Guidelines at issue here easily satisfy the time, place, and manner test applicable to content-neutral restrictions on speech. Even if the Court extended <u>Diocese</u> beyond the religious context, there is no clear likelihood of success so as to enjoin the State Guidelines.

## II.   <u>DIOCESE</u> DOES NOT ALTER THE APPLICATION OF <u>JACOBSON</u> IN THE EQUAL PROTECTION CONTEXT AND WOULD NOT, IN ANY EVENT, CHANGE THE OUTCOME OF PLAINTIFFS' MOTION

As discussed above, Plaintiffs have not raised any First Amendment claims in this matter. In their reply brief, however, they argue that <u>Diocese</u> modifies the appropriate standard of review applicable to their Equal Protection claim (the only claim upon which they base their preliminary injunction). Plaintiffs are incorrect, and in any event would not prevail on their motion for a preliminary injunction regardless.

### A.   <u>Diocese</u> Does Not Overturn <u>Jacobson</u> or <u>South Bay</u>

In their reply brief, Plaintiffs incorrectly argue that <u>Diocese</u> overturned, in all contexts, the holdings of <u>Jacobson</u> and <u>South Bay United Pentecostal Church v. Newsom</u>, 140 S. Ct. 1613 (2020). (Plaintiff's Memorandum of Law in Reply, Dkt. No. 38, at pp. 4-6, 18-19.) However, Plaintiffs ignore that the entirety of <u>Diocese</u>'s commentary on <u>Jacobson</u> and <u>South Bay</u> was

contained in a *concurring* opinion, not in the opinion of the Court. Plaintiffs repeatedly quote Justice Gorsuch's single-justice concurrence, but misleadingly attribute the quoted language to the Supreme Court's *per curiam* opinion rather than to that concurrence. (See, e.g., id. at p. 18.) Importantly, the *per curiam* decision in Diocese does not even cite Jacobson or South Bay, let alone discuss either of those decisions in a substantive manner. Although Justice Gorsuch's concurrence takes issue with Jacobson and South Bay, it is well-established that statements in a concurrence do not constitute binding precedent. See Maryland v. Wilson, 519 U.S. 408, 412-13 (1997) (observing that statement in a concurrence does not "constitute[ ] binding precedent"); U.S. v. Izzo, 144 F. App'x 906, 908 (2d Cir. 2005) (summary order) ("That Justice Thomas, in a concurrence in Shepard, reiterated his opposition to Almendarez-Torres's holding does not change the fact that Almendarez-Torres remains binding precedent.").

Moreover, the Supreme Court has frequently admonished lower courts from renouncing its precedent on the suspicion that such cases have been overruled by implication.  Instead, the Court has repeatedly directed lower courts to "follow the case which directly controls [and] leaving to this Court the prerogative of overruling its own decisions[,]" even if that precedent "appears to rest on reasons rejected in some other line of decisions." Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484 (1989); see also Bosse v. Oklahoma, 137 S. Ct. 1, 2 (2016) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.") (citation omitted); Agostini v. Felton, 521 U.S. 203, 237 (1997); Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 442 (1987). Accordingly, any argument that Justice Gorsuch's concurrence in Diocese overturned or limited Jacobson and/or South Bay, either expressly or by implication, must be rejected.

**B.** **Even if <u>Jacobson</u> Did Not Apply to Plaintiffs' Equal Protection Claim, They Would Still Not Prevail**

In any event, should this Court decline to apply the deferential standard set forth in <u>Jacobson</u> to Plaintiffs' equal protection claim, the Plaintiffs would still not prevail on their motion for a preliminary injunction.

First, as discussed at length in State Defendants' prior memorandum, "[e]ven if <u>Jacobson's</u> more deferential standard did not apply, Plaintiffs' claims fail under a standard equal protection analysis." (Def. Memo., p. 11.) Even if Plaintiffs had identified highly similar comparators subject to differing treatment (which they did not), their "class of one" claim would be subject to rational basis review, which the State Guidance easily satisfies. (Def. Memo., pp. 11-14). Second, nothing about <u>Diocese</u> relieves Plaintiffs of demonstrating "not only that they have some likelihood of success on the merits and will suffer irreparable harm absent an injunction, but also that the 'balance of the equities tips in [their] favor and an injunction is in the public interest.'" <u>Otoe-Missouria Tribe v. New York State Dep't of Fin. Svcs.</u>, 769 F.3d 105, 112 n.4. (2d Cir. 2014). Given the current deteriorating public health metrics regarding the spread of COVID-19, including in New York State, the public interest strongly militates against enjoining the State Guidance in light of the potentially disastrous health consequences that would result. (<u>See</u> Blog Decl., ¶¶ 85-108.)

<u>**CONCLUSION**</u>

For the reasons set forth above, in addition to those reasons set forth in State Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, it is respectfully requested that the Court deny Plaintiffs' motion for a preliminary injunction and grant such other and further relief as is just and proper.

Dated:  New York, New York
         December 22, 2020

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York
                                        *Attorney for the State Defendants*

                                   By: /s/ Matthew L. Conrad
                                        MATTHEW L. CONRAD
                                        Assistant Attorney General
                                        28 Liberty Street
                                        New York, NY 10005
                                        Tel: (212) 416-8610
                                        Matthew.Conrad@ag.ny.gov