UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



THE CLEMENTINE COMPANY LLC. d/b/a THE THEATER CENTER, et al.,

                              Plaintiffs,

-against-

ANDREW M. CUOMO, in his Official Capacity as Governor of the State of New York, et al.,

                              Defendants.

No. 20 Civ. 8899 (CM)

## REQUEST FOR HEARING/ORAL ARGUMENT/ADDITIONAL BRIEFING

Counsel:

    At no point has anyone pressed for a hearing in this matter.

    I believe that a hearing – and some oral argument – is necessary.

    I don't need a hearing to listen to the Defendants' evidence about COVID and its impact. You can take it on faith that this court will conclude that the State has a compelling interest in protecting its citizens against the spread of COVID. I am also aware of how COVID spreads and of what activities are super-spreaders; your record is made with the affidavits already in evidence, and I am not in need of further education on that score.

    But the factual record is very sketchy in a number of respects, particularly with respect to the reasons why certain types of activities are able to proceed with restrictions while the plaintiff theatres must remain closed.

    And the briefing does not sufficiently address the impact of the Second Circuit's decision in *Agudath Israel*, which raises a tricky and untested issue about the standard of review to be applied in this case.

    Let me start from the proposition that the plaintiffs in this case are bringing an equal protection claim under the Fourteenth Amendment. They have not asked to amend their complaint to assert a First Amendment claim, and contrary to defendants' suggestion, the court is not adding any new claims to the case.

    However, the fact that the plaintiffs engage in Frist Amendment protected activity is not irrelevant, because not all Fourteenth Amendment equal protection claims can be analyzed in the

same way. In particular, when an equal protection claim attacks a regulation that impinges on a fundamental right – not just the right to be treated equally to similarly situated persons, but some other fundamental right –a Fourteenth Amendment claim can be subject to intermediate or even strict scrutiny, rather than rational basis analysis. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 70 (2020) (Gorsuch, J., concurring); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). This is because, "The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Police Dep't of Chicago v. Mosely*, 408 U.S. 92, 101 (1972).

This appears to me to be such a case. The plaintiffs are engaged (or would be, if they were open) in expressive conduct that is protected by the First Amendment's guarantee of free speech. It is not activity that the State is ordinarily privileged to regulate, or to shut down. As a result, Defendants may need to meet a different and higher standard of justification, even in the face of a compelling state interest. Put otherwise, the First Amendment-protected nature of Plaintiffs' activities is part of the Equal Protection analysis.

If strict scrutiny must be applied, then I am having a hard time figuring out how a regulation passes muster. For example, I am unimpressed with the distinctions Defendants draw between plaintiffs – indoor theatres that have every possible protection against viral transmission during a live performance with an audience – and *Saturday Night Live*, which performs weekly, in an indoor television studio, in front of a studio audience that does not consist of "paid employees of the production" simply because they are handed a check for $150 at the end of the performance (that is sheer sophistry, and I am unimpressed by sophistry in this context).

Plaintiffs have framed this as a class-of-one case. My research has not yet turned up a class-of-one equal protection case that was analyzed under any standard other than rational basis analysis – indeed, as I understand it, "class of one" analysis is a form of rational basis analysis. However, in light of the challenges to COVID restrictions by actors engaged in constitutionally protected activity, I would be interested in the parties' views on (1) whether the application of strict scrutiny requires a predicate finding, on my part, that there has been a violation of the First Amendment, (2) whether the strict scrutiny standard would still apply to the equal protection claim if the First Amendment inquiry were governed only by intermediate scrutiny, and (3) whether the "fundamental rights" strand of equal protection law still applies when, as here, the plaintiff has not brought a separate claim for a violation of that underlying fundamental right.

I have a number of other questions about the state's regulations insofar as they allow for certain First Amendment protected activities to take place and others not – and I mention the First Amendment because I think engaging in constitutionally protected activity is a factor that plays into the "fair comparator" analysis for Equal Protection purposes. For example, the plaintiffs have obviously taken great pains to do precisely what this court has done to make our courthouses safe for trials – from installing air scrubbers and filters, to revamping seating so that people can be socially distanced to, closing down non-essential areas where people might be inclined to congregate, to requiring masks, temperature checks, and testing. Are jazz clubs which are allowed to offer "incidental music" in their facilities required to do all those things?[1] Were movie theaters

---

[1] And by the way, what exactly is "incidental" about music in a jazz club? It was my understanding that the food was incidental to the entertainment – not vice versa.

that have reopened upstate required to take these precautions? How about other entertainment venues? Other venues where First Amendment protected super-spreader activity is known to be taking place? If not, why not? What are the meaningful differences between those enterprises and plaintiffs?[2]

In short, I have a lot of questions about the state's regulations as applied to various types of businesses and activities. Those questions are pertinent even if this case is to be analyzed using a rational basis standard because, on the sketchy record before me, I don't see why there is anything rational about allowing some of the activities you have identified to take place but not allowing these theatres to open. Nor does Defendants' heavy reliance on *Jacobson* deference lessen the import of those questions. Putting aside whether recent Supreme Court and Second Circuit pronouncements have resulted in the demise of such deference, the *Jacobson* court itself made plain that, "A local enactment or regulation, even if based on the acknowledged police powers of a State, must always yield in case of conflict with . . . any right which [the Constitution] gives." *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905). The Constitution gives both the right to engage in expressive speech and the right to equal protection under law.

I thus ask the parties to set a date for a hearing with my courtroom deputy, Mariela de Jesus, who can be reached by email at mariela_dejesus@nysd.uscourts.gov. We are restarting public proceedings in the Southern District of New York on February 16; Ms. de Jesus knows my schedule. I think that it should be possible to get a decision out pretty quickly after we get together; I have been wrestling with these issues for some weeks on my own. But I can't finish without fleshing out both the record and the legal arguments. I have set down what is troubling me so that you will know how to focus your presentations, be they evidentiary or simply oral argument. The parties should work out the details.

Finally, I want to suggest that it might be time for the Solicitor General to be consulted. These are very tricky and very important issues, and they require additional and more focused briefing. Her constitutional expertise, which exceeds mine, would be helpful to the court.

Dated: February 10, 2021

_____
Chief Judge

BY ECF TO ALL COUNSEL

---

[2] More sophistry: the "simultaneous arrival" argument. People arrive simultaneously for any activity that is set to begin at a specific time – church services, for example – and controlling entry over a period of time with enforced social distancing, as is customary in many business and especially medical establishments (COVID test centers being the prime example) is an easy fix.