UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

James G. Mermigis, Esq.
**THE MERMIGIS LAW GROUP, P.C.**
85 Cold Spring Road, Suite 200
Syosset, New York  11791
516-353-0075
James@MermigisLaw.com

*Attorneys for Plaintiffs*

---

THE CLEMENTINE COMPANY LLC. d/b/a THE THEATER CENTER, PLAYERS THEATER MANAGEMENT CORP. d/b/a THE PLAYERS THEATER, WEST END ARTISTS COMPANY d/b/a THE ACTORS TEMPLE, SOHO PLAYHOUSE INC. d/b/a SOHO PLAYHOUSE, THE GENE FRANKEL THEATRE LLC., TRIAD PROSCENIUM PARTNERS INC. d/b/a THE TRIAD, CARAL LTD. d/b/a BROADWAY COMEDY CLUB, and DO YOU LIKE COMEDY LLC. d/b/a NEW YORK COMEDY CLUB,

               Plaintiffs,

Against

**ANDREW M. CUOMO**, in his Official Capacity as Governor of the State of New York,

               Defendants.

**AMENDED COMPLAINT**

Civil Action No.: 20-cv-08899

---

Plaintiffs The Clementine Company d/b/a The Theater Center ("Theater"), The Players Theater Management Corp. d/b/a The Players Theater ("Players"), West End Artists Company d/b/a The Actors Temple ("Actors"), Soho Playhouse Inc. d/b/a Soho Playhouse ("Soho"), The Gene Frankel Theatre LLC. ("Frankel"), Triad Proscenium Partners Inc. d/b/a The Triad ("Triad"), Caral Ltd. d/b/a Broadway Comedy Club ("Broadway"), and Do you like Comedy

1

LLC. d/b/a New York Comedy Club ("New York")(collectively, "Plaintiffs"), for their Complaint against Defendant Governor Andrew M. Cuomo ("Governor"), allege as follows:

## NATURE OF THIS ACTION

1. This civil rights action challenges the executive orders 202.97 and 202.98 (Attached as Exhibit A.) issued by Governor Andrew M. Cuomo *now 381 days* after Governor declared a state of emergency on March 7, 2020. Executive Order 202.98 imposes selective and discriminatory gathering restrictions on theaters. Executive Order 202.98 discriminates against all theaters by singling out theaters for more restrictive treatment than similarly situated venues or businesses. Executive Orders must be carefully scrutinized when alleged to infringe on important fundamental rights.

2. Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 to remedy Defendant's violations of the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also seeks declaratory and injunctive relief to remedy Defendant's violations of Article I, Section 8, of the New York State Constitution and Article I, Section 11, of the New York State Constitution.

## INTRODUCTION

3. New York City has been the cornerstone of the global theater industry for almost a century. Many of the most notable names in the industry have called this city home, and today it remains a proving ground for countless artists, companies and production teams.

4. The *small venue theater* industry is an integral piece of the larger performing arts landscape, generating ripple effects into larger scale theater productions. They continue to be a

2

stage for provocative, cutting edge work, and are an invaluable platform for both established and up-and-coming talent, playwrights and creative production teams.

5. Commercial *small venue theaters* have a median capacity of *only 144 seats,* which is a lesser capacity than most restaurants, gyms, movie theaters, casinos, malls, schools, colleges and catering halls. The median capacity of only 144 seats also distinguishes *small venue theaters* from Broadway Theaters which range in capacity from 539 seats to 1933 seats. This important distinction makes *small venue theaters* eminently more capable of conforming to CDC health and safety guidelines.

7. The *small venue theater industry* generates $1.3 billion in total economic output, over 8,400 full-time equivalent jobs and $512 million in wages.

8. Plaintiffs are all *small venue theaters* with seating capacity of 199 seats or less. Plaintiffs are all located in Manhattan.

9. Plaintiffs have been shut down since March 16, 2020 or for 372 days.

10. Restaurants and bars with "live music," jazz supper clubs, night clubs and event venues for weddings, christenings and bar mitzvahs have been allowed to re-open up to 50% capacity but the *small venue theater* industry remains shuttered despite its median capacity of only 144 seats and will re-open on April 2, 2021 to 33% capacity.

11. Plaintiffs have been ready to open and become leaders in COVID-19 safety since the early days of the pandemic. They are ready to implement daily temperature checks, testing of all employees and to require all guests, actors and employees to wear masks. As of today, Plaintiffs are ready to open and safely operate with a modified venue layout, air scrubbers, merv-13 filters, frequent cleanings of all surfaces throughout the day by dedicated staff,

installation of multiple hand sanitizer stations, and other measures. Plaintiffs have repeatedly offered to comply with any reasonable public health guidelines that New York might prescribe.

12. Yet Defendant has ordered small venue theaters to open to 33% capacity while permitting restaurants and bars with "live music," jazz supper clubs, night clubs and event venues for weddings that pose similar or greater risks of COVID-19 transmission to reopen to 50% capacity.

13. The borough of Manhattan has had an average covid-19 infection rate of 2.7% over the last 14 days. Manhattan has had a lower infection rate than most of the state of New York since June 13, 2020 and remains the safest borough in New York City.

**https://forward.ny.gov/percentage-positive-results-county-dashboard**

14. In short, Plaintiffs bring this lawsuit to define the limits of a State's police power. Whatever its limits, this legal term of art is not a principle that unlocks absolute executive power and casts our constitution to the wind. The issues raised in this Complaint are novel, and they will not be rendered moot if the executive orders are lifted before the Court issues judgment. The issues presented are capable of repetition and are of such importance that they cannot evade judicial review.

**PARTIES**

15. Plaintiff, **THE CLEMENTINE COMPANY LLC.** d/b/a **THE THEATER CENTER,** is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates two theaters, the Jerry Orbach Theater and the Anne L. Bernstein Theater. Both theaters have seating capacity of 199 seats. Because of

Defendants' executive orders, both theaters have been shut down since March 16, 2020 through April 2, 2021, when they are scheduled to open to 33% capacity.

16. Plaintiff, **PLAYERS THEATER MANAGEMENT CORP.** d/b/a **THE PLAYERS THEATER,** is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. Because of Defendants' executive orders, The Players Theater has been shut down since March 16, 2020 through April 2, 2021, when it is scheduled to open to 33% capacity.

17. Plaintiff, **WEST END ARTISTS COMPANY d/b/a THE ACTORS TEMPLE,** is a New York Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Actors Temple Theater with a seating capacity of 175. Because of Defendants' executive orders, The Actors Temple Theater has been shut down since March 16, 2020 through April 2, 2021, when it is scheduled to open to 33% capacity.

18. Plaintiff, **SOHO PLAYHOUSE INC. d/b/a SOHO PLAYHOUSE,** is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Soho Playhouse with a seating capacity of 178 seats. Because of Defendants' executive orders, The Soho Playhouse has been shut down since March 16, 2020 through April 2, 2021, when it is scheduled to open to 33% capacity.

19. Plaintiff, **THE GENE FRANKEL THEATRE LLC.,** is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Gene Frankel Theater with a seating capacity of 74 seats. Because of Defendants' executive orders, the Gene Frankel Theatre has been shut down since March 16, 2020 through April 2, 2021, when it is scheduled to open to 33% capacity.

20. Plaintiff, **TRIAD PROSCENIUM PARTNERS INC.** d/b/a **THE TRIAD,** is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Triad Theater with a seating capacity of 130 seats. Because of Defendants' executive orders, the Triad Theater has been shut down since March 16, 2020 through April 2, 2021, when it is scheduled to open to 33% capacity.

21. Plaintiff, **CARAL LTD.** d/b/a **BROADWAY COMEDY CLUB,** is a New York private company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Broadway Comedy Club with a seating capacity of 160 seats. Because of Defendants' executive orders, the Broadway Comedy Club has been shut down since March 16, 2020 through April 2, 2021, when it is scheduled to open to 33% capacity.

22. Plaintiff, **DO YOU LIKE COMEDY LLC.** d/b/a **NEW YORK COMEDY CLUB,** is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates New York Comedy Club with a seating capacity of 150 seats. Because of Defendants' executive orders, the New York Comedy Club has been shut down since March 16, 2020 through April 2, 2021, when it is scheduled to open to 33% capacity.

23. Defendant **Andrew M. Cuomo** is the Governor of the State of New York and signed Executive Order 202.3 on March 16, 2020 (Attached as Exhibit B.), which ordered the *shutdown of small venue theaters until further notice.* The State Constitution requires that the Governor ensure that the laws of the state are "faithfully executed." Governor Cuomo's office for the transaction of business is located at the New York State Capitol Building, Albany, New York 12224. Governor Cuomo is sued herein in his official capacity. Pursuant to Executive Law § 223,

6

the superintendent of state police and its members "shall be subject to the call of the governor and are empowered to co-operate with any other department of the state or with local authorities."

## JURISDICTION & VENUE

24. This action arises under 42 U.S.C. § 1983 in relation to Defendant's deprivation of Plaintiffs' constitutional rights to free speech, due process and equal protection rights under the First, Fifth and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a) and 42 U.S.C. § 1983; and attorneys' fees and costs under 42 U.S.C. § 1988.

25. The Court has jurisdiction over Plaintiffs' federal law claims under 42 U.S.C. § 1331 and 28 U.S.C. § 1343.

26. The Court has jurisdiction over Plaintiffs' supplemental state court claims under 28 U.S.C. 1367.

27. Venue is proper in the Southern District of New York under 28 § 1391(b) in that a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## STATEMENT OF FACTS

28. Based on speculative modeling on the infectiousness and lethality of a new coronavirus, Governor Cuomo has issued executive orders that have shuttered civil society, placed 19.5 million people under house arrest, and taken jobs away from millions of people, all

without due process of law. The Governor has not disclosed and/or disclosed only a minimal amount of the data or methodology used to create the modeling that purportedly justifies this extreme action.

29. On March 16, 2020, Plaintiffs were ordered by Defendant's executive order 202.3 to shutdown their *small venue theaters* effective at 8pm on March 16, 2020, until further notice. As of March 23, 2021, Plaintiffs remain shuttered and have been shut for 372 days. Target, Walmart and Home Depot were allowed to remain open for on premises shopping as "Essential" businesses. Plaintiffs' health protocols are greater or sufficiently similar to those businesses that were allowed to remain open. Plaintiffs are set to open on April 2, 2021 to 33% capacity while restaurants and bars with live music, bowling alleys, jazz supper clubs, night clubs and event venues can open to 50% capacity.

30. What were initially billed as temporary measures necessary to "flatten the curve" and protect hospital capacity have become open-ended and ongoing restrictions aimed at a very different end- stopping the spread of an infectious disease and preventing new cases from arising-which requires ongoing and open-ended efforts.

31. Defendants' executive order 202.3 and the executive orders that followed did not provide a pre- or post- deprivation remedy to question a designation of "essential" or to determine whether Plaintiffs can open with the same health related protocols as the "essential" businesses allowed to open. There has never been any health inspection of the Plaintiffs' *small venue theaters,* no analysis of the health status of *small venue theaters* as essential and no analysis of Plaintiffs' health related protocols to see if they meet the same health standards as allowed for essential businesses.

8

32. There was a list of businesses that were allowed to remain open for on-premises purchasing and that the classification was not reasonable or rational and was arbitrary and random without any data, and therefore a denial of due process.

33. Justice Gorsuch opined that, *"People may gather inside for extended periods in bus stations and airports, in laundromats and banks, in hardware stores and liquor shops. No apparent reason exists why people may not gather, subject to identical restrictions, in churches or synagogues, especially when religious institutions have made plain that they stand ready, able and willing to follow all the safety precautions required of "essential" businesses."* Roman Catholic Diocese v. Andrew M. Cuomo, 592 U.S._____ (2020).

34. In reversing *South Bay United Pentecostal Church v. Newsom*, 140 Sup. Ct. 1613 (2020), the Court opined in *Roman Catholic Diocese* that, *"At that time, Covid had been with us, in earnest for just three months. Now, as we round out 2020 and face the prospect of entering a second calendar year living in the pandemic's shadow, that rationale has expired according to its own terms. Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical."*

35. The State continues to govern impartially and arbitrarily by allowing restaurants and bars with live music, bowling alleys, jazz supper clubs, night clubs and event venues to open to 50% capacity, yet small venue theaters can only open to 33% capacity. There has never been any health inspection of the Plaintiffs' small venue theaters, no analysis of the health status of small venue theaters and no analysis of Plaintiffs' health related protocols to see if they meet the same health standards as allowed for restaurants and bars with live music, bowling alleys, jazz supper clubs, night clubs and event venues.

36. Defendant has never publicly explained how small venue theaters are meaningfully different from restaurants and bars with live music, night clubs, jazz supper clubs, bowling alleys and event venues in the context of covid-19.

37. Restaurant, bar, night club, jazz supper club and event venue guests engage in activities equally likely to present concerns about the transmission of covid-19. Restaurant, bar, night club, jazz supper club and event venue patrons spend extended period of time indoors in groups listening to live music, bands, DJs or jazz with the opportunity to purchase food and beverages. Patrons often attend with groups of family or friends. Restaurants, bars, night clubs, jazz supper clubs and event venues are permitted to operate to 50% capacity under safety protocols that are similar to what Plaintiffs have proposed, while Plaintiffs can only operate to 33% capacity.

38. Such disparate treatment for similarly situated businesses has no countenance under the laws and constitutions of the United States and the State of New York.

39. At the present time, Plaintiffs have lost millions of dollars in revenue and have had to lay off at least 8,000 employees throughout New York City.

40. A public health emergency does not give Defendants *carte blanche* to disregard the Constitution for as long as the medical problem persists.

**COUNT I**
**Violation of the First and Fourteenth Amendments to the United States Constitution (Freedom of Speech)**
**42 U.S.C. § 1983**

41. Plaintiffs incorporate by reference the factual allegations in ¶¶ 1–40.

42. "Judicial deference in an emergency or crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, *free speech* or the like are raised." *Roman Catholic Diocese of Brooklyn v. Andrew M. Cuomo*, 592 U.S.\_\_\_\_(2020). (Kavanaugh, J., concurring).

43. "The arts have long been recognized to embody expressive speech and are thus protected from governmental overreach by the First Amendment." See, e.g., *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1985).

44. The public performance of artistic works represents an Exercise of First Amendment rights. Theaters implicate the exercise of First Amendment rights.

45. Live theater is a venerated form of speech and expression that is protected by both the First Amendment and the Equal Protection Clause.

46. Executive Orders must be carefully scrutinized when alleged to infringe on important fundamental rights.

47. "Constitutional rights do not receive diminished protection simply because the government wants to abridge them in an effort to curb the spread of a disease." *Roman Catholic Diocese of Brooklyn v. Andrew M. Cuomo*, 592 U.S.\_\_\_\_(2020).

48. Yet Defendant, through his executive order, has singled out Plaintiffs' speech on the basis of its content. Restaurants and bars with live music, churches, night clubs, jazz supper clubs and event venues are permitted to operate to 50% capacity in New York, yet small venue theaters are permitted to reopen to 33% capacity.

49. Defendant's orders are overinclusive with respect to the State's interest in reducing the transmission of COVID-19. The precautions that Plaintiffs have proposed— and

churches, restaurants and bars, jazz supper clubs, event venues and night clubs are required to take in New York—are adequate to reduce the risk of transmission.

50. Defendant's orders are also underinclusive with respect to the State's interest in reducing the transmission of COVID-19. The activities that patrons engage in at these other businesses are similar to the activities that guests engage in at Plaintiffs' theater venues. Compared to Plaintiffs' small theater venues, the risk of exposure to COVID-19 is thus similar, if not greater, at businesses that Defendant has permitted to reopen at higher capacities.

51. Defendant has never publicly justified his discrimination against Plaintiffs based on the subject, function or purpose of the speech central to Plaintiff's business.

52. As applied to Plaintiffs, the issuance and enforcement of Defendant's orders violate the Free Speech Clause of the First Amendment made applicable to the states by the Fourteenth Amendment.

53. At all relevant times, Defendant's actions were taken under color of state law.

54. Plaintiffs have no adequate remedy at law for the deprivation of its constitutional rights.

55. Plaintiffs will be irreparably harmed in the absence of declaratory and injunctive relief.

## COUNT II
### Violation of Article I, Section 8, of the New York Constitution
### (Liberty of Speech)

56. Plaintiffs incorporate by reference the factual allegations in ¶¶ 1–40.

57. The performance of "live theater" and "live comedy" is the heart of Plaintiffs' unique business models constitutes speech within the meaning of Article I, Section 8, of the New York Constitution.

58. Defendant's aforementioned orders single out Plaintiffs' speech on the basis of its content.

59. Defendant's orders are overinclusive with respect to the State's interest in reducing the transmission of COVID-19 because they prohibit Plaintiffs' speech when safety protocols would accomplish the same interest.

60. Defendant's orders are also underinclusive with respect to the State's interest in reducing the transmission of COVID-19 because they allow speech by other businesses that pose a similar or greater risk of COVID-19 transmission.

61. Defendant has never publicly justified his discrimination against Plaintiffs based on the subject, function or purpose of the speech central to Plaintiffs' business.

62. As applied to Plaintiffs, the issuance and enforcement of Defendant's orders violate the right to freely speak protected by Article I, Section 8, of the New York Constitution.

63. Plaintiffs have no adequate remedy at law for the deprivation of its constitutional rights.

64. Plaintiffs will be irreparably harmed in the absence of declaratory and injunctive relief.

## COUNT III
## Fourteenth Amendment to the United States Constitution
## (Equal Protection of the Laws)
## 42 U.S.C. § 1983

65. Plaintiffs incorporate by reference the factual allegations in ¶¶ 1–40.

66. Defendant's orders intentionally treat theater and comedy venues differently from similarly situated businesses. Restaurants and bars with live music, night clubs, churches, jazz supper clubs and event venues are all permitted to reopen in New York to 50% capacity under Defendant's orders. The activities at these businesses are similar to the activities at Plaintiffs' small theater and comedy venues, and they pose similar or greater risks of COVID-19 transmission.

67. Classifications that "impinge upon the exercise of a fundamental right" are "presumptively invidious" and subject to strict scrutiny. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

68. "A statutory classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

69. Defendant has never explained his reasons for treating comedy venues differently from churches, event venues, restaurants and bars with live music and jazz supper clubs. As the Supreme Court has made clear, "the Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objective." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972).

70. Defendant's actions in promulgating and enforcing the lower capacity limits to Plaintiffs' venues deprive Plaintiffs of the equal protection of the laws guaranteed by the Fourteenth Amendment. Defendant's actions are neither narrowly tailored nor rational.

71. At all relevant times, Defendant's actions were taken under color of state law.

72. Plaintiffs have no adequate remedy at law for the deprivation of their constitutional rights.

73. Plaintiffs will be irreparably harmed in the absence of declaratory and injunctive relief.

## COUNT IV
### Article I, Section 11, of the New York Constitution
### (Equal Protection of the Laws)

74. Plaintiffs incorporate by reference the factual allegations in ¶¶ 1–40.

75. Defendant's aforementioned orders intentionally treat small venue theaters and comedy venues differently from businesses that conduct similar activities and pose similar or greater risks of COVID-19 transmission.

76. Defendant has never explained his reasons for treating small venue theaters and comedy venues differently from businesses that pose similar COVID-related risks, and there is no rational basis for Defendant's actions nor are Defendant's actions narrowly tailored.

77. Defendant's actions in promulgating and enforcing the executive orders requiring lower capacity limits to Plaintiffs' small venue theaters and comedy venues thus deprives Plaintiffs of the equal protection of the laws guaranteed by Article I, Section 11, of the New York Constitution.

78. Plaintiffs have no adequate remedy at law for the deprivation of its constitutional rights.

79. Plaintiffs will be irreparably harmed in the absence of declaratory and injunctive relief.

## PRAYER FOR RELIEF

Plaintiff respectfully prays that this Court grant the following relief:

1. A preliminary injunction, followed by a permanent injunction, restraining Defendant from issuing or enforcing any orders limiting Plaintiffs' small venue theaters and comedy venues to 33% capacity while any similar business, including restaurants and bars, jazz dinner theaters, churches, event venues, bowling alleys and night clubs are permitted to operate at higher capacity limits, and further restraining Defendant from imposing any health and safety requirements on Plaintiffs' small venue theaters and. comedy venues that are more restrictive than the least restrictive requirements imposed on any similar business, including restaurants and bars, jazz dinner theaters, churches, event venues, bowling alleys and night clubs; and

2. A declaratory judgment that (1) Defendant's implementation of lower capacity limits to Plaintiffs' small venue theaters and comedy venues violates the freedom of speech protected by the First and Fourteenth Amendments to the U.S. Constitution, as applied to Plaintiffs; (2) Defendant's capacity limitations to Plaintiffs' comedy venues violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (3) Defendant's capacity limitations to Plaintiffs' small venue theaters and comedy venues violates the freedom of speech protected by Article I, Section 8, of the New York Constitution; (4) Defendant's capacity limitations to Plaintiffs' small venue theaters and

comedy venues denies Plaintiffs the equal protection of the laws guaranteed by Article I, Section 11, of the New York Constitution.

3. An award of costs of this litigation, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

4. Such other and further relief as this Court may deem just and proper.

Dated: March 23, 2021

                                           **THE MERMIGIS LAW GROUP, P.C.**

                                           ___/s/ James Mermigis___
                                           James G. Mermigis, Esq.
                                           Attorneys for Plaintiff