**Exhibit A**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CLEMENTINE COMPANY, LLC d/b/a THE THEATER CENTER; PLAYERS THEATRE MANAGEMENT CORP. d/b/a THE PLAYERS THEATRE; WEST END ARTISTS COMPANY d/b/a THE ACTORS TEMPLE THEATRE; SOHO PLAYHOUSE INC. d/b/a SOHO PLAYHOUSE; CARAL LTD. d/b/a BROADWAY COMEDY CLUB; and DO YOU LIKE COMEDY? LLC d/b/a NEW YORK COMEDY CLUB | No. 1:20-cv-08899-CM **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | |
| -against- | |
| ANDREW M. CUOMO, in his official capacity as Governor of the State of New York; BILL DE BLASIO, in his official capacity as Mayor of New York City, | |
| Defendants. | |

1.      Plaintiffs The Clementine Company, LLC d/b/a The Theater Center; Players Theatre Management Corp. d/b/a The Players Theatre; West End Artists Company d/b/a The Actors Temple Theatre; SoHo Playhouse Inc. d/b/a SoHo Playhouse; Caral Ltd. d/b/a Broadway Comedy Club; and Do You Like Comedy? LLC d/b/a New York Comedy Club for their Complaint against Defendants Governor Andrew M. Cuomo and Mayor Bill de Blasio, allege as follows:

## INTRODUCTION

2.     This civil rights lawsuit seeks to vindicate the constitutional rights of free speech and equal protection for the Plaintiff theaters and comedy clubs, which have been subject to unequal closure orders for more than a year.

3.     Plaintiffs are all small venue theaters and comedy clubs with seating capacity of 199 seats or less. Plaintiffs are all located in Manhattan.

4.     Plaintiffs were shut down from March 16, 2020, through April 2, 2021, pursuant to Defendants' Executive Orders.

5.     Restaurants and bars with "live music," jazz supper clubs, night clubs, and event venues for weddings, christenings, and bar mitzvahs in New York City have been allowed to reopen up to 50% capacity with no numerical limit on the number of attendees.

6.     Houses of worship are similarly allowed to reopen up to 50% capacity with no numerical limit on the number of attendees.

7.     But small venue theaters and comedy clubs are only allowed to open at 33% capacity with numerical limits on the number of attendees.

8.     In violation of the First and Fourteenth Amendments to the United States Constitution, Defendants' Executive Orders continue to discriminate against Plaintiffs by singling out theaters and comedy clubs for more restrictive treatment than similarly situated venues, based on the content of speech that theaters and comedy clubs host and the identity of the speaker as a theater or comedy club.

9.     For small venue theaters and comedy clubs like Plaintiffs, that differential treatment can mean the difference between breaking even and performing at a loss.

10.     Plaintiffs seek declaratory and injunctive relief to remedy Defendants' violations of the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs seek only to reopen on equal terms as other similar venues, without regard to the content of the speech or the identity of the speakers that they host.

## JURISDICTION AND VENUE

11.     Plaintiffs bring this lawsuit pursuant to 42 U.S.C. § 1983 for the violation of rights secured by the First and Fourteenth Amendments to the United States Constitution.

12.     Jurisdiction over Plaintiffs' claims is proper under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201–2202 (Declaratory Judgment Act).

13.     Venue is proper in this Court under 28 U.S.C § 1391(b) on the ground that all or a substantial part of the acts giving rise to Plaintiffs' claims occurred in the Southern District of New York.

## PARTIES

14.     Plaintiff THE CLEMENTINE COMPANY, LLC d/b/a THE THEATER CENTER is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. At that location, Plaintiff operates two theaters, the Jerry Orbach Theater and the Anne L. Bernstein Theater, each of

which has a seating capacity of 199. Because of Defendants' Executive Orders, both theaters were shut down to theatrical performances from March 16, 2020, to April 2, 2021. They reopened on April 9 at 33% capacity. They are currently operating at a loss due to the capacity limits imposed by Defendants' Executive Orders.

15.   Owner and General Manager of The Clementine Company, Catherine Russell, is also the lead actress in the play "Perfect Crime" which is the longest-running non-musical play in the history of New York theater and is featured in the Bernstein Theater. On Sunday mornings, the Orbach Theater is rented by a church, which conducts worship services, including congregational singing, at 50% capacity.

16.   Plaintiff PLAYERS THEATRE MANAGEMENT CORP. d/b/a THE PLAYERS THEATRE is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. The main stage of the Players Theatre has a capacity of 115 and it has a smaller theatre with a capacity of 50 seats. Because of Defendants' Executive Orders, The Players Theatre was shut down from March 16, 2020, to April 2, 2021. It has not yet reopened because it cannot operate sustainably at 33% capacity.

17.   Plaintiff WEST END ARTISTS COMPANY d/b/a THE ACTORS TEMPLE THEATRE is a New York Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates The Actors Temple Theatre with a seating capacity of 199. Because of Defendants' Executive Orders, The Actors Temple Theatre was shut down to theatrical performances from March 16, 2020, to April 2, 2021. It has not yet reopened because it cannot operate sustainably at 33%

capacity. The Actors Temple Theatre also operates as a non-denominational Jewish synagogue which is allowed to open at 50% capacity.

18.     Plaintiff SOHO PLAYHOUSE INC. d/b/a SOHO PLAYHOUSE is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the SoHo Playhouse with a mainstage seating capacity of 178 and two smaller theaters with a 65 and 50 seat capacity. The SoHo Playhouse also regularly rents out its space to be used for events such as dinner parties. Because of Defendants' Executive Orders, SoHo Playhouse was shut down from March 16, 2020, to April 2, 2021. It has not yet reopened because it cannot operate sustainably at 33% capacity.

19.     Plaintiff CARAL LTD. d/b/a BROADWAY COMEDY CLUB is a New York private company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Broadway Comedy Club with a seating capacity of 160. Broadway Comedy Club is owned by legendary comedian Al Martin. Because of Defendants' Executive Orders, the Broadway Comedy Club was shut down from March 16, 2020, to April 2, 2021, when it was opened at 33% capacity.

20.     Plaintiff DO YOU LIKE COMEDY? LLC d/b/a NEW YORK COMEDY CLUB is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates New York Comedy Club with a seating capacity of 150. Because of Defendants' Executive Orders, the New York Comedy Club was shut down from March 16, 2020, to April 2, 2021, when it was opened at 33% capacity.

21.     Defendant ANDREW M. CUOMO is the Governor of the State of New York. In that capacity, he signed and is responsible for enforcing Executive Orders complained of in this action, which continue to restrict Plaintiffs' ability to host speech on the same terms as other venues. Governor Cuomo is sued in his official capacity, pursuant to *Ex parte Young*, 209 U.S. 123 (1908), for depriving Plaintiffs of their First and Fourteenth Amendment rights under color of state law by enforcing Executive Orders complained of in this action.

22.     Defendant BILL DE BLASIO is the Mayor of New York City. In that capacity, he signed and is responsible for enforcing Executive Orders complained of in this action, which continue to restrict Plaintiffs' ability to host speech on the same terms as other venues. Mayor de Blasio is sued in his official capacity, pursuant to *Ex parte Young*, 209 U.S. 123 (1908), for depriving Plaintiffs of their First and Fourteenth Amendment rights under color of state law by enforcing the Executive Orders complained of in this action.

## STATEMENT OF FACTS

23.     For more than a year, Defendants have enforced a series of Executive Orders that have restricted economic liberty, freedom of speech, and freedom of association throughout the State of New York. But the negative impact of these Executive Orders has not been felt in a uniform or even-handed fashion.

24.     In March 2020, in response to the COVID-19 pandemic, Governor Cuomo issued a series of Executive Orders known as "New York on PAUSE" which resulted in the shutdown of all "non-essential" businesses in the State, including

theaters and comedy clubs. (Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, 202.13, 202.14, 202.28, and 202.31.)

25.     Mayor de Blasio issued Executive Order 100 on March 16, 2020, closing Plaintiffs' venues and other businesses in New York City and directing New York City officials to enforce the Governor's Executive Orders.

26.     Mayor de Blasio extended local enforcement of the Governor's Executive Orders as recently as April 29, 2021. (Executive Order 197.)

27.     Plaintiffs were forced by these Executive Orders to shut down their theaters until further notice on March 16, 2020.

28.     What were initially billed as temporary measures necessary to "flatten the curve" and protect hospital capacity became open-ended and ongoing restrictions aimed at stopping the spread of an infectious disease.

29.     From the beginning, Defendants' Executive Orders treated theaters and comedy clubs worse than other businesses, even though the First Amendment protects the expressive activity that defines these venues.

30.     For instance, Walmart and Home Depot were allowed to remain open for on-premises shopping as "essential" businesses while Plaintiffs' theaters and comedy clubs were closed, even though Plaintiffs' health protocols are greater than or sufficiently similar to businesses like Walmart and Home Depot that were allowed to remain open.

31.     Since then, the disparity between the treatment of theaters and comedy clubs and other types of businesses has only grown worse. The state now treats

theaters and comedy clubs significantly more harshly than it treats other businesses, including other venues that host speech.

32.    Governor Cuomo gradually issued orders which allowed shut-down businesses to reopen in one of four phases. (*See, e.g.*, Executive Orders 202.34, 202.35.) Most businesses were allowed to reopen in Phases Two or Three, including indoor restaurants. But theaters and comedy clubs were placed in Phase Four, the last tier for reopening. Many other businesses in Phase Four were allowed to re-open (including gyms, indoor amusement, and family entertainment facilities), but theaters and comedy clubs were not.

33.    On June 26, 2020, the Governor issued an Executive Order which allowed theaters and comedy clubs to reopen in some parts of the state but not New York City. (Executive Order 202.45.)

34.    In October and November 2020, in response to rising COVID-19 cases, the Governor once again restricted gatherings, which resulted in the shutdown of theaters and comedy clubs throughout the state once more. Theaters and comedy clubs in New York City had never been allowed to reopen in the first place. (Executive Orders 202.68, 202.74.)

35.    In December 2020, the Governor allowed a variety of businesses such as gyms and fitness centers to stay open in most of the state, while keeping theaters and comedy clubs closed, even though gyms, fitness centers, theaters, and comedy clubs had originally been in the same reopening tier. (Executive Order 202.81.)

36.     On March 21, 2021, Governor Cuomo issued Executive Order 202.98, which allowed theaters and comedy clubs to reopen starting April 2, 2021. But they were not allowed to reopen on equal terms with similarly situated businesses and activities.

37.     Pursuant to Executive Order 202.98, Plaintiffs are allowed to reopen at 33% capacity, with up to 100 people, or up to 150 people if all attendees present proof of a negative COVID-19 test, provided that social distancing, face covering, and cleaning and disinfection protocols required by the Department of Health are adhered to.

38.     Just a few days prior to issuing Executive Order 202.98, on March 17, 2021, Governor Cuomo issued Executive Order 202.97, which allowed indoor food services and dining throughout the state to operate at 75% capacity and indoor food services and dining in New York City to operate at 50% capacity.

39.     In New York City large events such as wedding receptions and celebrations or meetings and conferences can be held at 50% capacity or a maximum of 150 people indoors. And more than one event can be held on the same premises at the same time so long as the events are separate. Live DJs, music performers, and even some dancing are all permitted.[1]

40.     The Governor has also consistently treated houses of worship more favorably than theaters and comedy clubs. For instance, in October 2020 in the

---

[1] The detailed guidance for New York City Indoor Food Services can be found here, https://www.governor.ny.gov/sites/default/files/atoms/files/NYC_Indoor_Food_Services_Detailed_Guidance.pdf

hardest hit parts of the state, theaters and comedy clubs were shut down completely while houses of worship were subjected to a capacity limit of 25% with a hard cap of 10 people. (Executive Order 202.68.)

41.     The United States Supreme Court enjoined enforcement of the capacity limits on houses of worship pending appeal because religious worship was treated less favorable than commercial activity, such as office work and shopping. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). The Second Circuit subsequently ordered a preliminary injunction against the unequal capacity limits, *Agudath Israel of Am. v. Cuomo*, Nos. 20-3572, 20-3590, 2020 WL 7691715, at *9 (2d Cir. 2020), which was issued by the Eastern District of New York on January 19, 2021. *Agudath Israel v. Cuomo*, Case 20-cv-04834, ECF No. 44 (E.D.N.Y. Feb. 9, 2021). Governor Cuomo subsequently agreed to a permanent injunction against enforcement of the 25% and 33% capacity limits. *Id.*

42.     Following the issuance of the injunction, houses of worship are now allowed to open at 50% capacity with no numerical limits.

43.     On April 30, 2021, Governor Cuomo announced that New York City hair salons, barbershops, other personal care services, and indoor dining will be allowed to expand to 75% capacity beginning May 7, 2021, and that New York City gyms and fitness centers will be allowed to expand to 50% capacity beginning May 15, 2021.

44.     On May 3, 2021, Governor Cuomo announced a plan to lift capacity limits from most businesses in New York, including theaters, as of May 19, 2021. If implemented, theaters would be allowed to open to 100% capacity.

45.     But Governor Cuomo also made clear when announcing the plans for a tentative May 19 reopening that these plans were subject to change depending on COVID-19 transmission rates and that it was entirely possible that theaters or other businesses could be shut down once again without notice.

46.     Governor Cuomo stated at the press conference announcing the May 19 plans: "What happens next? What happens next is what the science and the data says happens next. Well, what happens in two months? What happens in three months? What happens in four months? I don't know. Unless you have a crystal ball, you don't know either, and then you'd have to believe in a crystal ball, even if you had a crystal ball, I followed the numbers and the science and the data."[2]

47.     In addition to disparities in capacity limitations, there are also ongoing disparities in the health and safety requirements related to distancing that are being imposed on theaters and comedy clubs but not on comparable venues like houses of worship. For instance, theaters and comedy clubs are required to separate talent and the audience by a distance of 12 ft while there is no similar requirement for employees and parishioners at houses of worship. Similarly, the rules for theaters expressly lay out other onerous seating requirements such as keeping 2 seats empty between

---

[2] Video, Audio, Photos & Rush Transcript: Governor Cuomo, Governor Murphy and Governor Lamont Announce Significant Easing of COVID-19 Pandemic Restrictions on Businesses, Gatherings, and Venues (May 3, 2021), https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-cuomo-governor-murphy-and-governor-lamont-0.

patrons, only utilizing every other row of seating, and banning standing viewers while no similar limitations apply to houses of worship.[3]

48.    In preparation for reopening, Plaintiffs took extensive safety precautions to minimize the risk that patrons would be exposed to COVID-19. These measures include: (a) mandating that all employees and actors be tested for COVID-19 according to New York guidelines, as well as vaccinated; (b) requiring all patrons and staff to have a temperature check before entering the premises; (c) requiring that masks be worn throughout the theater; (d) implementing seating policies that facilitate spacing groups and ensuring that they are always a minimum of six feet apart; (e) installing plexiglass barricades between employees and patrons; (f) placing hand sanitizer stations throughout the theater; and (g) installing air filters and air scrubbers to disinfect and improve air flow.

49.    The Governor is enforcing the capacity and health and safety disparities explained above, even though speakers and guests at theaters and houses of worship engage in similar activities, which present similar risk for the transmission of COVID-19.

50.    Some houses of worship in New York City meet in buildings that were once used as theaters. The same is also true for restaurants and other event venues.

---

[3] Interim Guidance for Small and Medium Scale Performing Arts & Entertainment During the COVID-19 Public Health Emergency, https://www.governor.ny.gov/sites/default/files/atoms/files/Small_and_Medium_Performing_Arts_Detailed_Guidance.pdf; Interim Guidance for Religious & Funeral Services During the COVID-19 Public Health Emergency, https://www.governor.ny.gov/sites/default/files/atoms/files/ReligiousandFuneralServicesMasterGuidance.pdf.

But theatrical performances are subject to more stringent restrictions than worship services or catered events even if they occur in the same or a nearly identical space.

51.    Even during a pandemic, there is no justification for treating certain kinds of expressive speech worse based on the content of the speech or the identity of the speaker.

52.    Defendants have offered no rationale for why small venue theaters are subjected to more onerous restrictions than restaurants and bars with live music, bowling alleys, jazz supper clubs, night clubs, event venues, and houses of worship.

53.    Any rationale Defendants might offer would not be narrowly tailored to achieve a compelling governmental interest.

54.    The same logic that led the Supreme Court to enjoin New York's unequal capacity limits for houses of worship applies with full logic and force to small theaters like Plaintiffs.

55.    The pandemic provides no excuse for the continued deprivation of Plaintiffs' rights under the First and Fourteenth Amendments. As the Supreme Court has explained, "even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical." *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020).

56.    Plaintiffs are not able to operate sustainably at 33% capacity. Even at 50% capacity these businesses will struggle to recover from the devastating impact of being shut down for more than a year.

57.     The Governor's unequal treatment of theaters and comedy clubs has created a stigma and a false impression that such activities are particularly unsafe. This negative stigma will continue to harm Plaintiffs even after the pandemic is over.

## COUNT I

## Violation of the First and Fourteenth Amendments

## to the United States Constitution (Freedom of Speech)

58.     Plaintiffs incorporate the allegations in the preceding paragraphs.

59.     "[L]ive entertainment, such as musical and dramatic works[,] fall within the First Amendment guarantee." *Schad v. Mount Ephraim*, 452 U.S. 61, 65 (1981).

60.     Our nation boasts a long history of protecting parody and satire. "[F]rom the early cartoon portraying George Washington as an ass down to the present day, … satirical cartoons have played a prominent role in public and political debate." *Hustler Magazine v. Falwell*, 485 U.S. 46, 54 (1988).

61.     Constitutional rights do not receive diminished protection simply because the government wants to abridge them in an effort to curb the spread of a disease. *Roman Catholic Diocese of Brooklyn v. Andrew M. Cuomo*, 141 S. Ct. 63 (2020).

62.     Defendants' Executive Orders single out Plaintiffs' speech on the basis of its content and the identity of the speaker. Restaurants and bars with live music, night clubs, jazz supper clubs, event venues, and houses of worship are permitted to operate up to 50% capacity without numerical capacity limits in New York City, yet

Plaintiffs' theaters and comedy clubs in New York City are permitted to reopen at only 33% capacity with numerical capacity limits.

63.     Because Defendants' Executive Orders are content based, strict scrutiny applies. *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015).

64.     Defendants' Executive Orders are neither narrowly tailored nor rationally related to achieving any government interest.

65.     Defendants' Executive Orders are overinclusive with respect to the government's interest in reducing the transmission of COVID-19. The precautions that Plaintiffs have proposed and undertaken—which are more rigorous than those that restaurants and bars, jazz supper clubs, event venues, night clubs, and houses of worship are required to take in New York—are more than adequate to make the risk of transmission at least equal across these venues.

66.     Defendants' Executive Orders are also underinclusive with respect to the government's interest in reducing the transmission of COVID-19. The activities that patrons engage in at these other businesses are similar to the activities that guests engage in at Plaintiffs' theater and comedy venues. Compared to Plaintiffs' small theater and comedy venues, the risk of exposure to COVID-19 is thus similar, if not greater, at businesses that Defendants have permitted to reopen at higher capacities.

67.     Defendants have never justified this discrimination against the subject, function, and purpose of the speech central to Plaintiffs' businesses.

15

68.     As applied to Plaintiffs, the issuance and enforcement of Defendants'
Executive Orders violate the Free Speech Clause of the First Amendment, made
applicable to the states by the Fourteenth Amendment.

69.     At all relevant times, Defendants' actions were taken under color of
state law.

70.     Plaintiffs have no adequate remedy at law for the deprivation of their
constitutional rights.

71.     Plaintiffs will be irreparably harmed in the absence of declaratory and
injunctive relief.

## COUNT II

## Fourteenth Amendment to the United States Constitution

## (Equal Protection of the Laws)

72.     Plaintiffs incorporate the allegations in the preceding paragraphs.

73.     Defendants' Executive Orders intentionally treat theater and comedy
venues differently from similarly situated venues. Restaurants and bars with live
music, bowling alleys, jazz supper clubs, night clubs, event venues, and houses of
worship are all permitted to reopen in New York City at 50% capacity without
numerical limits under Defendants' Executive Orders. The activities at these venues
are similar to the activities at Plaintiffs' small theater and comedy venues, and they
pose similar or greater risks of COVID-19 transmission. The only distinction between
the favored venues and Plaintiffs' is the subject, function, and purpose of the speech
central to Plaintiffs' businesses.

74.    Classifications that "impinge upon the exercise of a fundamental right" are "presumptively invidious" and subject to strict scrutiny. *Plyler v. Doe*, 457 U.S. 202, 216-217 (1982)

75.    A statutory "classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right[.]" *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

76.    The Supreme Court has made clear, "the Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 101 (1972).

77.    Defendants' Executive Orders promulgating and enforcing lower capacity limits for Plaintiffs' venues deprive Plaintiffs of the equal protection of the laws guaranteed by the Fourteenth Amendment. Defendants' Executive Orders are neither narrowly tailored nor rationally related to achieving any government interest.

78.    At all relevant times, Defendants' actions were taken under color of state law.

79.    Plaintiffs have no adequate remedy at law for the deprivation of their constitutional rights.

80.    Plaintiffs will be irreparably harmed in the absence of declaratory and injunctive relief.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the Court enter judgment against Defendants as follows:

1.      Declaring that Defendants' enforcement of lower capacity limits to Plaintiffs' small venue theater and comedy venues as compared to other similar venues violates the freedom of speech protected by the First and Fourteenth Amendments to the U.S. Constitution;

2.      Declaring that Defendants' enforcement of lower capacity limits to Plaintiffs' small venue theater and comedy venues as compared to other similar venues violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

3.      Granting an order preliminarily, and thereafter permanently, enjoining Defendants from enforcing lower capacity limits to Plaintiffs' small venue theater and comedy venues as compared to other similar venues, and further restraining Defendants from imposing any health and safety requirements on Plaintiffs' small venue theater and comedy venues that are more restrictive than the least restrictive requirements imposed on any similar venues;

4.      Awarding Plaintiffs nominal damages of one dollar;

5.      Awarding Plaintiffs costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

6.      Such other and further relief as this Court may deem just and proper.

DATED: May 5, 2021.

                          Respectfully submitted,

DANIEL M. ORTNER*                    s/ James G. Mermigis
Pacific Legal Foundation             JAMES G. MERMIGIS, ESQ.
930 G Street                         The Mermigis Law Group, P.C.
Sacramento, California 95814         85 Cold Spring Road, Suite 200
Telephone: (916) 419-7111            Syosset, New York 11791
Facsimile: (916) 419-7747            Telephone: (516) 353-0075
Email: DOrtner@pacificlegal.org      Email: James@MermigisLaw.com

                                     GLENN E. ROPER*
                                     Pacific Legal Foundation
                                     1745 Shea Center Drive, Suite 400
                                     Highlands Ranch, Colorado 80129
                                     Telephone: (916) 419-7111
                                     Facsimile: (916) 419-7747
                                     Email: GERoper@pacificlegal.org

                                     *Pro Hac Vice


        Counsel for Plaintiffs