# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CLEMENTINE COMPANY, LLC, et al.,<br><br>                          Plaintiffs,<br><br>       -against-<br><br>ANDREW M. CUOMO, et al.,<br><br>                        Defendants. | No. 1:20-cv-08899-CM<br><br>**REPLY IN SUPPORT<br>OF MOTION FOR LEAVE TO<br>FILE AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

1. Plaintiffs Acted Diligently in Seeking to Amend Their Complaint .................. 1

2. There Is a Strong Presumption in Favor of Plaintiffs'
   Motion to Amend ............................................................................................... 2

3. Amendment Is Not Futile Because This Case Is Not Moot.............................. 4

   A. Plaintiffs Remain Subject to Unequal Health and Safety
      and Social Distancing Requirements .............................................................. 4

   B. Plaintiffs Present a Live Claim for Nominal Damages ................................. 5

   C. The Voluntary Cessation Doctrine Applies.................................................... 6

4. Mayor de Blasio Is a Proper Defendant ......................................................... 12

## TABLE OF AUTHORITIES

### Cases

*421-A Tenants Ass'n, Inc. v. 125 Ct. St. LLC*,
   760 F. App'x 44 (2d Cir. 2019) .................................................................................... 3

*Amato v. City of Saratoga Springs*,
   170 F.3d 311 (2d Cir. 1999) ........................................................................................ 5

*Amato v. Elicker*, No. 3:20CV464 (MPS),
   2021 WL 1430918 (D. Conn. Apr. 15, 2021) ............................................................. 9

*Antietam Battlefield KOA v. Hogan*,
   461 F. Supp. 3d 214 (D. Md. 2020) ............................................................................ 9

*Artists Rts. Enf't Corp. v. Est. of King*, No. 16-CV-1121 (JPO),
   2017 WL 2062988 (S.D.N.Y. May 15, 2017) ......................................................... 2–3

*Campbell v. Greisberger*,
   80 F.3d 703 (2d Cir. 1996) .......................................................................................... 8

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
   494 U.S. 558 (1990) .................................................................................................... 6

*Colon v. Coughlin*,
   58 F.3d 865 (2d Cir. 1995) ........................................................................................ 13

*Connecticut Citizens Def. League, Inc. v. Lamont*,
   No. 3:20-CV-00646 (JAM), 2020 WL 3055983 (D. Conn. June 8, 2020) .................. 9

*Coon v. Town of Springfield*,
   404 F.3d 683 (2d Cir. 2005) ...................................................................................... 12

*Dark Storm Indus. LLC v. Cuomo*,
   471 F. Supp. 3d 482 (N.D.N.Y. 2020) .................................................................... 8–9

*Elim Romanian Pentecostal Church v. Pritzker*,
   962 F.3d 341 (7th Cir. 2020) ....................................................................................... 9

*Ferber v. Travelers Corp.*, No. H-90-842 (AHN),
   1992 WL 34683 (D. Conn. Jan. 9, 1992) .................................................................... 2

*Fikre v. FBI*,
   904 F.3d 1033 (9th Cir. 2018) ..................................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................................ 7, 9

*Granite State Outdoor, Inc. v. Town of Orange*,
   303 F.3d 450 (2d Cir. 2002) ........................................................................................ 6

*Harrell v. City of New York*,
   138 F. Supp. 3d 479 (S.D.N.Y. 2015) ....................................................................... 13

*Hartman v. Acton*,
   499 F. Supp. 3d 523 (S.D. Ohio 2020) .................................................................................. 9

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ............................................................................................................ 13

*Lamar Advert. of Penn, LLC v. Town of Orchard Park*,
   356 F.3d 365 (2d Cir. 2004) .................................................................................................. 7

*Lucente v. Int'l Bus. Machines Corp.*,
   310 F.3d 243 (2d Cir. 2002) .................................................................................................. 3

*McCormack v. Herzog*,
   788 F.3d 1017 (9th Cir. 2015) .............................................................................................. 7

*Mhany Mgmt., Inc. v. Cty. of Nassau*,
   819 F.3d 581 (2d Cir. 2016) ........................................................................................... 4, 6–7

*Monell v. Dep't of Soc. Servs. of N.Y.C.*,
   436 U.S. 658 (1978) ............................................................................................................ 13

*N. Ins. Co. of N.Y. v. Chatham County*,
   547 U.S. 189 (2006) .............................................................................................................. 6

*Nat. Res. Def. Council v. U.S. Dep't of Energy*,
   362 F. Supp. 3d 126 (S.D.N.Y. 2019) ................................................................................... 8

*New York Pub. Int. Rsch. Grp. v. Whitman*,
   321 F.3d 316 (2d Cir. 2003) ............................................................................................ 7, 10

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
   551 U.S. 701 (2007) .............................................................................................................. 8

*Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS),
   2017 WL 11569235 (S.D.N.Y. Sept. 27, 2017) ................................................................ 2–3

*Porter v. Clarke*,
   852 F.3d 358 (4th Cir. 2017) ................................................................................................ 8

*Prof'l Beauty Fed'n of Cal. v. Newsom,* No. 2:20-cv-04275-RGK-AS,
   2020 WL 3056126 (C.D. Cal. June 8, 2020) ........................................................................ 9

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   141 S. Ct. 63 (2020) .............................................................................................................. 9

*Ruffolo v. Oppenheimer & Co.*,
   987 F.2d 129 (2d Cir. 1993) .................................................................................................. 3

*S.S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co.*,
   608 F.2d 28 (2d Cir. 1979) .................................................................................................... 2

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) .......................................................................................................... 9

*Tull v. United States*,
 481 U.S. 412 (1987) ............................................................................................................. 6

*Uzuegbunam v. Preczewski*,
 141 S. Ct. 792 (2021) ........................................................................................................... 6

*Vives v. City of New York*,
 524 F.3d 346 (2d Cir. 2008) ......................................................................................... 14–15

*Workman v. City of New York*,
 179 U.S. 552 (1900) ............................................................................................................. 6

**Rule**

Fed. R. Civ. P. 15(a)(2) ................................................................................................................ 2

**Other Authorities**

2021 N.Y. SB 5357 (Mar. 2, 2021) ................................................................................. 11–12, 14

Executive Order No. 98 (Mar. 12, 2020) ................................................................................... 14

Executive Order No. 99 (Mar. 15, 2020) ................................................................................... 14

Executive Order No. 202.97: Continuing Temporary Suspension and Modification
 of Laws Relating to the Disaster Emergency (Mar. 17, 2021) ............................................ 1

Executive Order No. 202.108 (May 17, 2021) ........................................................................ 4, 7

Governor Cuomo, Governor Murphy and Governor Lamont Announce Significant
 Easing Of COVID-19 Pandemic Restrictions on Businesses, Gatherings and
 Venues (May 3, 2021) ......................................................................................................... 4

Interim Guidance for Religious & Funeral Services During the COVID-19 Public
 Health Emergency (as of Apr. 6, 2021) ............................................................................... 5

Interim Guidance for Small and Medium Scale Performing Arts & Entertainment
 During the COVID-19 Public Health Emergency (as of Apr. 1, 2021 ................................ 5

Mueller, Benjamin, *New Variant Posing Threat, as Global Vaccine Drive Falters*,
 NY Times (May 24, 2021) ................................................................................................. 10

*NYC to Set Up Vax Sites for Theater Industry; Calls to Pause Reopenings Grow as
 Cases Plateau*, NBC News 4 (Mar. 25, 2021) ................................................................... 14

*Seychelles brings back curbs despite vaccination success*,
 BBC News (May 5, 2021) .................................................................................................. 10

*Tokyo, other areas seek extension of virus emergency as Olympics loom*,
 Kyodo News (May 26, 2021) ............................................................................................. 10

Defendants oppose Plaintiffs' motion to amend because they argue this case is moot. The City Defendant also argues that Mayor de Blasio is not a proper defendant. Neither of these arguments has merit, especially in light of the strong presumption in favor of allowing Plaintiffs to amend a complaint.

### 1. Plaintiffs Acted Diligently in Seeking to Amend Their Complaint

Defendants distort the timeline of events to suggest that Plaintiffs sat on their Motion to Amend until after the Governor's May 3, 2021, announcement that capacity limits would be lifted. This is not true. In fact, Plaintiffs have proceeded with diligence to amend their complaint, despite Defendants' shifting regulatory positions and lack of cooperation.

Plaintiffs agreed to withdraw their first motion for preliminary injunction on March 5, 2021, when the Governor committed to reopening theaters at 33% capacity. ECF No. 66. However, on March 17, the Governor announced that indoor food service would be allowed to open at 50% capacity, continuing the disparity in treatment between theaters and other venues that were allowed to open at higher capacity.[1] This change in Defendants' position necessitated an amended complaint, which Plaintiffs first attempted to file on March 24, 2021. Ortner Decl. ¶ 5. On April 5, Plaintiffs sought to retain Pacific Legal Foundation as lead counsel and Plaintiffs entered into representation agreements by April 29. *Id.* ¶ 6.

---

[1] Executive Order No. 202.97: Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency (Mar. 17, 2021), https://www.governor.ny.gov/news/no-20297-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

1

Counsel for Plaintiffs contacted Defendants on April 29 to seek consent to file an Amended Complaint and provided a draft of the Amended Complaint the following day. *Id.* ¶¶ 10–11. Counsel for Defendants repeatedly promised to respond, but failed to provide a position on amendment. *Id.* ¶ 12. After waiting six days, counsel for Plaintiffs indicated their intent to file the motion to amend, and counsel for the City then voiced opposition while counsel for the State did not respond. *Id.* ¶ 13.

In any event, Defendants do not suggest that the lapse of time between Plaintiffs' first attempt to file an amended complaint and this motion to amend was in bad faith or caused Defendants any undue prejudice. The timing of the motion to amend provides no basis for denying the motion.

**2. There Is a Strong Presumption in Favor of Plaintiffs' Motion to Amend**

Leave to amend should be "freely give[n]," Fed. R. Civ. P. 15(a)(2), based on a strong preference that cases be resolved on the merits. In furtherance of that policy, the exception for amendments that would be futile "has been narrowly construed in the Second Circuit." *Ferber v. Travelers Corp.*, No. H-90-842 (AHN), 1992 WL 34683, at *1 (D. Conn. Jan. 9, 1992). So long as a "plaintiff has at least colorable grounds for relief, justice" requires that an amendment be permitted. *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979). Even when "the new allegations will not necessarily be sufficient to withstand a new motion to dismiss," the Court should grant the motion unless amending is "obviously futile." *Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2017 WL 11569235, at *2 (S.D.N.Y. Sept. 27, 2017); *Artists Rts. Enf't Corp. v. Est. of King*, No. 16-CV-1121

(JPO), 2017 WL 2062988, at *3 (S.D.N.Y. May 15, 2017) (granting a motion to amend because the amendment was "not obviously futile"). When "more argument or facts" would be clarifying, amending and allowing further briefing is proper. *Artists Rts.*, 2017 WL 2062988, at *4.

Defendants' cited cases only support denying a motion to amend on futility grounds where there is a plain defect in the pleading, not where there is a debatable matter of jurisdiction. For instance, the City cites to an inapposite case where the Second Circuit rejected a plaintiff's "eleventh-hour attempt to change his theory of recovery" because the court concluded that this theory was "barred by substantive contract law." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002). By contrast, in this case, Defendants do not and cannot reasonably argue that Plaintiffs' theories are substantively defective or insufficient on their face. To the contrary, this case involves important constitutional issues and a complex mootness question that deserve more detailed consideration, including a full round of briefing. *See Patterson*, 2017 WL 11569235, at *2 (granting a motion to amend because the Court would "benefit from further briefing").[2]

Granting leave to amend is also in the interest of judicial economy and justice. Defendants plan to move to dismiss the case regardless of the outcome of this motion,

---

[2] None of Defendants' other cases is remotely analogous. *421-A Tenants Ass'n, Inc. v. 125 Ct. St. LLC*, 760 F. App'x 44, 51 (2d Cir. 2019) (concluding that "any amendment to the complaint cannot fix the statute of limitations problem that the tenants face" because the tenants had actual notice); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 132 (2d Cir. 1993) (rejecting amendment after two years of discovery revealed no evidence for a fraud claim).

3

and Plaintiffs should be able to defend the justiciability of the case in light of the more up-to-date facts and finely tuned claims in Plaintiffs' proposed amended complaint, rather than relying on the original complaint filed more than seven months ago. *See* State Opp'n at 15 (acknowledging that if the motion is denied, "the original Complaint would still be outstanding" and that the defendants would "expeditiously submit motions to dismiss the original Complaint"); City Opp'n at 2 n.1 (similar). Allowing an amendment is particularly appropriate given that "the burden of showing mootness logically falls on a defendant." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016).

3. **Amendment Is Not Futile Because This Case Is Not Moot**

   A. **Plaintiffs Remain Subject to Unequal Health and Safety and Social Distancing Requirements**

Defendants' mootness arguments fail on the merits. This case is not moot because theaters are still subject to unequal health and safety and social distancing requirements. Prop. Am. Compl. ¶ 47. The State has lifted all industry-specific *capacity* restrictions. But the Governor's May 3 announcement is clear that he has not declared the emergency over and "industry specific requirements will remain in effect."[3] This includes interim guidance from the New York Department of Health imposing unequal health and safety and social distancing requirements on theaters

---

[3] State's Opp'n at 1 n.3 (citing https://www.governor.ny.gov/news/governor-cuomo-governor-murphy-and-governor-lamont-announce-significant-easing-covid-19); *see also* Executive Order No. 202.108 (May 17, 2021) ("[T]here shall no longer be capacity limits based on percentage of maximum occupancy on such entities, subject to adherence to Department of Health guidance.").

compared to comparable venues.[4] For instance, theaters are required to separate talent and the audience by 12 feet, while there is no similar requirement for houses of worship. Russell Decl. ¶ 5. Similarly, theaters must follow onerous seating requirements such as keeping two seats empty between patrons, only utilizing every other row of seating, and banning standing viewers—while no similar limitations apply to houses of worship. *Id.* This unequal treatment continues to cause significant stigma against theaters by baselessly and falsely suggesting to the public that theaters are uniquely more dangerous than similarly situated venues. *Id.* ¶ 6.

These lingering unequal requirements show the clear need for relief from this Court—commanding Defendants to treat like venues alike, regardless of the content of the speech they are hosting. Absent rescission of these interim guidelines and the unequal enforcement authority they create, Plaintiffs continue to suffer the same Free Speech and Equal Protection injuries that gave rise to this action.

### B. Plaintiffs Present a Live Claim for Nominal Damages

Plaintiffs' proposed amended complaint includes a request for nominal damages, which is a separate basis for rejecting Defendants' mootness argument. Nominal damage claims "are meant to guarantee that unconstitutional acts remain actionable." *Amato v. City of Saratoga Springs,* 170 F.3d 311, 319 (2d Cir. 1999);

---

[4] Interim Guidance for Small and Medium Scale Performing Arts & Entertainment During the COVID-19 Public Health Emergency (as of Apr. 1, 2021), https://www.governor.ny.gov/sites/default/files/atoms/files/Small_and_Medium_Performing_Arts_Detailed_Guidance.pdf; Interim Guidance for Religious & Funeral Services During the COVID-19 Public Health Emergency (as of Apr. 6, 2021), https://www.governor.ny.gov/sites/default/files/atoms/files/ReligiousandFuneral ServicesMasterGuidance.pdf.

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) ("[W]e conclude that a request for nominal damages satisfies the redressability element of standing.").

The State argues that the nominal damages claim against it fails because of sovereign immunity. But Plaintiffs' nominal damages claim is equitable rather than legal in nature because it is "incidental to or intertwined with injunctive relief." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 571, (1990) (quoting *Tull v. United States*, 481 U.S. 412, 424 (1987)). And even if sovereign immunity barred a nominal damages claim against the Governor, it cannot bar the claim against Mayor de Blasio. *N. Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 193 (2006) ("[O]nly States and arms of the State possess immunity from suits authorized by federal law."); *Workman v. City of New York*, 179 U.S. 552, 570 (1900) (New York City not protected by sovereign immunity).

### C. The Voluntary Cessation Doctrine Applies

Even if Plaintiffs' injuries were not ongoing, voluntary cessation of unlawful actions does not moot a case unless the "defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc.*, 819 F.3d at 603 (quoting *Granite State Outdoor, Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002)). This is a "stringent" and "formidable burden" as a defendant must show it is "absolutely clear" that its unlawful actions will not recur. *Id.* at 603–04. The Second Circuit has applied that standard to the cessation of government policies. *Id.* Even a government agency's

6

"good faith" efforts to implement changes does not make it "absolutely clear" that the unlawful behavior will not recur. *New York Pub. Int. Rsch. Grp. v. Whitman*, 321 F.3d 316, 327 (2d Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Defendants argue that since the Governor has lifted capacity limitations, there is no "reasonable expectation" that Plaintiffs will again be harmed. But the Governor's declaration of a disaster emergency remains in effect, and he still claims the authority to issue executive orders shutting down or severely restricting Plaintiffs. Hence, the latest order lifting capacity limits "continu[es] [the] temporary suspension and modification of laws" and "modif[ies] and extend[s]" his prior orders. Executive Order No. 202.108 (May 17, 2021). Nothing would "preclude [Defendants] from reenacting precisely the same provision" in the future; therefore, this case is not moot. *Mhany Mgmt., Inc.,* 819 F.3d at 604. That also sets this case apart from the more definitive situation when a statute is repealed by the legislature. *See also Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 377 (2d Cir. 2004) (noting that even "the amendment or repeal of an allegedly unconstitutional legislative provision will not necessarily moot litigation already underway" when there are indications that the policy might recur).

Moreover, Defendants do not concede the error of their ways, and there is no evidence of a change of heart or that the new policy is "entrenched" or "permanent." *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018) (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015)). Nor have Defendants represented to the Court that

7

they will not reintroduce the challenged policies. *Cf. Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 138 (S.D.N.Y. 2019) (refusing to accept the Government's assertion that it did not expect to reintroduce a challenged policy because "this stated intent is not binding"). To the contrary, Defendants continue to "vigorously defend[] the constitutionality" of their actions. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Under such circumstances, "courts have been particularly unwilling to find" mootness. *Porter v. Clarke*, 852 F.3d 358, 365 (4th Cir. 2017). And the timing of Defendants' announcement raising capacity limits, coming four days after Plaintiffs informed them of their intent to file an amended complaint and seek a preliminary injunction, could even be suggestive of an effort "to avoid judicial scrutiny." *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996).

The State Defendants hyperbolically argue that if this case is not moot, then "it is difficult to imagine what COVID-19 related case would *ever* be moot." State Opp'n at 14. But it is not hard to imagine a case being moot because the legislature revoked a policy by statute or where the government clearly and unequivocally declared that an allegedly unconstitutional former policy would never be reimplemented. That is clearly not the case here.

Courts across the country, including in New York, have found challenges to revised COVID-19 restrictions were not moot for these very reasons. *See, e.g., Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 494–95 (N.D.N.Y. 2020) (finding that the "uncompelled relaxation" of shutdown orders implicated the voluntary

8

cessation doctrine "because there is a reasonable expectation that New York might be forced to shut down once again" and the government "made no commitment that they will not reinstate the shutdown orders should COVID-19 spread increase yet again"); *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020) (concluding that a challenge was not moot because it was not "absolutely clear" that more severe restrictions would not be reimplemented).[5]

These decisions are consistent with the Supreme Court's decisions in *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020), and *Tandon v. Newsom*, 141 S. Ct. 1294 (2021). With regard to mootness, the Supreme Court tersely stated that "[i]t is clear that this matter is not moot" and cited to a case invoking the voluntary cessation mootness exception. *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68 (citing *Friends of the Earth, Inc.*, 528 U.S. at 189). *Tandon* and *Diocese* applied ordinary mootness doctrine and then granted extraordinary emergency relief against the "constant threat" of shifting COVID-19 restrictions. These decisions do not establish a heightened mootness inquiry; to the contrary, *Tandon* and *Diocese* directly support the conclusion that a governor's voluntary repeal of some emergency COVID-19 measures does not deprive this Court of jurisdiction.[6]

---

[5] *See also Amato v. Elicker*, No. 3:20CV464 (MPS), 2021 WL 1430918, at *4 (D. Conn. Apr. 15, 2021); *Hartman v. Acton*, 499 F. Supp. 3d 523 (S.D. Ohio 2020); *Connecticut Citizens Def. League, Inc. v. Lamont*, No. 3:20-CV-00646 (JAM), 2020 WL 3055983, at *8 (D. Conn. June 8, 2020); *Prof'l Beauty Fed'n of Cal. v. Newsom,* No. 2:20-cv-04275-RGK-AS, 2020 WL 3056126 (C.D. Cal. June 8, 2020); *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 228 (D. Md. 2020).

[6] Defendants attempt to differentiate *Tandon* and *Roman Catholic Diocese* by arguing that the "cluster zones" or "colored tiers" challenged in those cases are categorically

Defendants urge this Court to play armchair epidemiologist and declare that this case is moot because a resurgence of COVID-19 is, in their view, unlikely. One hopes they are correct, but this is a familiar refrain. In late 2020, many states relaxed restrictions and promised that businesses could reopen. But just a few months later, COVID-19 rates spiked, resulting in new waves of shutdown measures. Despite advances in vaccination, it is not "absolutely clear" that the pandemic is over and that there will be no new wave of infection. *New York Pub. Int. Rsch. Grp.*, 321 F.3d at 327. Indeed, there have been recent troubling spikes around the world. For instance, in early May, the Seychelles—then the nation with the highest percentage of fully vaccinated adults—experienced a sudden and dramatic spike in COVID-19 cases that led to a return of restrictions on public gatherings.[7] Japan similarly recently experienced a significant spike,[8] and the United Kingdom and India are both battling a new and especially virulent variant of COVID-19.[9]

---

different from Governor Cuomo's current industry-specific capacity and social distancing guidelines. But while the exact limitations have varied throughout the COVID-19 pandemic, the Governor has utilized the same metrics—transmission and infection rates—to justify a wide range of constantly changing restrictions. There is no categorical difference between the prior use of shifting cluster zone borders and the ongoing industry-specific capacity or distancing restrictions.

[7] *Seychelles brings back curbs despite vaccination success*, BBC News (May 5, 2021), https://www.bbc.com/news/world-africa-56992121.

[8] *Tokyo, other areas seek extension of virus emergency as Olympics loom*, Kyodo News (May 26, 2021), https://english.kyodonews.net/news/2021/05/807d11478d4d-tokyo-to-seek-covid-19-state-of-emergency-extension-as-olympics-loom.html.

[9] Benjamin Mueller, *New Variant Posing Threat, as Global Vaccine Drive Falters*, NY Times (May 24, 2021), https://www.nytimes.com/2021/05/24/world/europe/india-uk-variant-vaccine-coronavirus.html.

The past year has shown that if COVID-19 rates increase, new shutdown measures will follow. And for more than a year, Defendants have consistently treated theaters worse than comparable businesses at every turn. There is every reason to think that if capacity limits of any kind are reintroduced, theaters will be treated worse once again, especially since Defendants continue to falsely assert that small theaters carry a "significantly elevated risk of transmitting the coronavirus that causes COVID-19." State Opp'n at 2. Accordingly, the unequal treatment complained of in this case is very likely to recur if there is a spike in COVID-19 cases.

Nor does SB 5357 moot this case by limiting the Governor's power. City Opp'n at 10 (the State does not make any argument about SB 5357). The Act does not prevent new capacity limits or other restrictions, but expressly allows the Governor to continue extending or modifying any COVID-19-related executive orders. Any such extension is authorized if "in the sole discretion[] of the commissioner of health," it addresses "the spread and/or reduction of the COVID-19 virus." 2021 N.Y. SB 5357 § 2(1). This includes "additional restrictions," including those related to "social distancing" and the "seating capacity of a business to operate during a state of emergency." *Id*. § 2(2)(d). Before issuing such an extension, the Governor is required to provide a certification from the Director of Public Health and to submit the new order for legislative and municipal comment, which "may be received after the issuance of the directive and shall not affect the validity thereof." *Id*. § 2(2)(b). And while the legislature may terminate these executive orders by concurrent resolution,

11

*id*. § 2(2)(g), this does not prevent the implementation of such restrictions in the first place. While SB 5357 provides useful safeguards, it does not moot this case.

The effects of Defendants' unlawful actions will also not be eradicated even after the Governor declares the emergency over. For more than a year, Defendants have enacted policies which repeatedly treated theaters as less important and less safe than other similar venues. This year-long campaign has created a stigma that has done incalculable damage to small theaters. Russell Decl. ¶¶ 6–7. This stigma is the direct result of the message that Defendants have sent through the policies challenged here. As noted above, the State's opposition brief contributes to that stigma by falsely claiming that small theaters carry a "significantly elevated risk of transmitting the coronavirus that causes COVID-19." State Opp'n at 2. A declaratory judgment from this Court would provide Plaintiffs with meaningful relief by establishing as a matter of law that Defendants lacked a sufficiently compelling justification for their mistreatment of small theaters and by helping to remedy the lingering harm that Defendants have caused over the past year. Russell Decl. ¶ 7.

Until Defendants declare the emergency over, relent from imposing emergency public health measures, and acknowledge the error of their unequal application of the restrictions they have imposed and are currently enforcing, this case is not moot.

### 4. Mayor de Blasio Is a Proper Defendant

Mayor de Blasio is sued only in his official capacity. Prop. Am. Compl. ¶ 24. Plaintiffs' claims against him are thus "treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005). Officers may be

liable under § 1983 where an unconstitutional action implements or executes an official policy "adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 659 (1978). Thus, to state a claim in an official-capacity action, the plaintiff need only allege "that the government entity's 'policy or custom . . . played a part in the violation of federal law.'" *Harrell v. City of New York*, 138 F. Supp. 3d 479, 495 (S.D.N.Y. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

That standard is met here. Executive Orders issued by the Mayor, closing Plaintiffs' venues and locally enforcing the Governor's Executive Orders, are precisely the type of official policies that suffice under *Monell*. *See Harrell*, 138 F. Supp. 3d at 495; *Monell*, 436 U.S. at 659; *see also* Prop. Am. Compl. ¶¶ 25–26 (allegations regarding the Mayor's Executive Orders). Moreover, Plaintiffs allege that they were "forced by these Executive Orders to shut down their theaters" and that the Orders "treated theaters and comedy clubs worse than other businesses." Prop. Am. Compl. ¶¶ 27, 29. Thus, at the very least, Plaintiffs have sufficiently alleged that the Mayor's Orders "played a part" in the violation of their constitutional rights. *Graham*, 473 U.S. at 166.[10]

---

[10] Mayor de Blasio incorrectly argues that Plaintiffs must allege his "personal involvement . . . in a constitutional violation." City Opp'n at 12. That is the standard for *individual* capacity suits, not official capacity suits such as this one. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). But even if that standard applied, it would be met here because the Mayor's Orders "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Id.*

13

The Mayor argues that Plaintiffs cannot maintain a claim against him because he merely implemented restrictions imposed by the State and because "State Executive Order Nos. 202.3 and 202.5 *require* the City to adhere to any State Emergency Executive Orders." City Opp'n at 13. That argument fails, for three reasons.

First, even before the Governor issued Orders 202.3 and 202.5, the Mayor took independent action to restrict Plaintiffs' venues. *See* Executive Order No. 98 (Mar. 12, 2020) (declaring a local state of emergency); Executive Order No. 99 (Mar. 15, 2020) (imposing capacity restrictions). And if the State's restrictions are revoked, the Mayor is free to renew these restrictions.[11] In fact, Mayor de Blasio has already expressed plans to issue "guidance" for the operation of theaters through the New York City Mayor's Office of Media and Entertainment.[12]

Second, the Mayor affirmatively issued dozens of local Executive Orders embracing and requiring City personnel to enforce the restrictions in the Governor's Executive Orders, even though he did not need to do so. Although the Governor's Executive Orders 202.3 and 202.5 prevented the City from "issu[ing] any local emergency order . . . inconsistent with, conflicting with or superseding" State Orders, they did not require the Mayor to issue his own orders enforcing the State

---

[11] Under S5357, the ability of local executives to issue any "order within such municipality's existing power" is expressly protected unless "such an order conflicts with any executive order issued by the state." 2021 N.Y. SB 5357 § 2(2)(e).

[12] *NYC to Set Up Vax Sites for Theater Industry; Calls to Pause Reopenings Grow as Cases Plateau*, NBC News 4 (Mar. 25, 2021), https://www.nbcnewyork.com/news/coronavirus/calls-to-pause-nyc-reopenings-grow-as-covid-19-cases-plateau/2963656/.

14

restrictions. Thus, the Mayor's Executive Orders shutting or otherwise restricting Plaintiffs' venues were a "conscious choice," not merely obligatory action over which the Mayor lacked any "meaningful" discretion. *Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008).

Third, at the Mayor's direction, city personnel have taken and continue to take enforcement action against Plaintiffs. This includes regular inspection and regulation by City fire marshals and other City officers. Prop. Am. Compl. ¶ 26; Russell Decl. ¶¶ 9–10. Local implementation and enforcement of the restrictions adopted by the Mayor's Executive Orders supports Plaintiffs' claims against Mayor de Blasio.

Dated: June 4, 2021.

Respectfully submitted,

DANIEL M. ORTNER*
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: DOrtner@pacificlegal.org

/s/ James G. Mermigis
JAMES G. MERMIGIS, ESQ.
The Mermigis Law Group, P.C.
85 Cold Spring Road, Suite 200
Syosset, New York 11791
Telephone: (516) 353-0075
Email: James@MermigisLaw.com

GLENN E. ROPER*
Pacific Legal Foundation
1745 Shea Center Drive, Suite 400
Highlands Ranch, Colorado 80129
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: GERoper@pacificlegal.org

*Pro Hac Vice*

*Counsel for Plaintiffs*