UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE CLEMENTINE COMPANY LLC. d/b/a THE
THEATER CENTER, PLAYERS THEATER
MANGAEMENT CORP. d/b/a THE PLAYERS
THEATER, WEST END ARTISTS COMPANY
d/b/a THE ACTORS TEMPLE, SOHO
PLAYHOUSE INC. d/b/a SOHO PLAYHOUSE,
THE GENE FRANKEL THEATER LLC., TRIAD
PROSCENIUM PARTNERS INC. d/b/a THE
TRIAD, CARAL LTD. d/b/a BROADWAY
COMEDY CLUB, and DO YOU LIKE COMEDY
LLC. d/b/a NEW YORK COMEDY CLUB,

                              Plaintiffs,

    -against-

ANDREW M. CUOMO, in his Official Capacity as
Governor of the State of New York, ATTORNEY
GENERAL OF THE STATE OF NEW YORK,
BILL de BLASIO, in his Official Capacity as
Mayor of the City of New York, and THE STATE
OF NEW YORK,

                              Defendants.

No. 20 Civ. 8899 (CM)

---

**DECISION AND ORDER GRANTING IN PART
PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT AND
DISMISSING THIS CASE AGAINST DEFENDANT CUOMO**

McMahon, J.:

      Pending before the court is plaintiffs' motion for leave to amend the complaint (dkt. 73),

which defendants de Blasio and Cuomo oppose on grounds that plaintiffs' claims are moot (dkts.

79, 81). Indeed, both defendants have indicated that, once the motion for leave to amend is

resolved, they intend to move to dismiss this action as moot.

Plaintiffs' motion to amend is granted to the limited extent of allowing them to drop the New York Attorney General and the State of New York as defendants and to assert a claim for backward-looking nominal damages in the amount of $1 (together with any backward looking declaratory relief required to undergird any such award). The motion is denied as futile insofar as plaintiffs seek to add claims for forward looking injunctive and declaratory relief addressed to a non-existent and perhaps never-again-to-be-existent regulation that no longer affects their operations. Nor can plaintiffs add a claim against Cuomo for nominal damages and corresponding declaratory relief addressed to the rescinded regulations, as the Eleventh Amendment bars any such claim and renders amendment futile.

The complaint is dismissed *sua sponte* against both the Governor and the Mayor as moot insofar as it sought to enjoin enforcement of the regulations that have now been rescinded. But plaintiffs can add a claim for nominal damages and corresponding declaratory relief as against the Mayor; in light of the Supreme Court's decision in *Uzuegbunam v. Preczewski,* 141 S. Ct. 792 (2021), such a claim is not moot. The Mayor's options will be discussed at the end of this decision.

## BACKGROUND

The facts of this case are recounted in *Clementine Company LLC v. Cuomo*, No. 20 Civ. 8899 (CM), 2020 WL 7321504 (S.D.N.Y. Dec. 11, 2020), and will not be repeated here. The original complaint sought declaratory and forward looking injunctive relief, as well as actual damages in an unspecified amount, stemming from the Governor's issuance of Executive Order 202.3, which shut down plaintiffs' theatrical operations as a public safety measure during the pandemic.

The court was well on its way to deciding the plaintiffs' motion for a preliminary injunction when New York State's COVID shutdown regulations began loosening up as the so-called "second

2

wave" of the virus receded. The parties asked that I stand down, and I acceded to that request. On March 9, 2021, the plaintiffs formally withdrew their motion for a preliminary injunction. (Dkt. 67.)

And so matters stood – in suspended animation, with nothing happening in this lawsuit – when, on May 3, 2021, Governor Cuomo announced that percentage-based and industry-specified capacity restrictions affecting a variety of establishments, including plaintiffs' theatres, would be lifted in their entirety on May 19, 2021, as part of a statewide "reopening."  On May 10, Cuomo issued NYS Executive Order No. 202.107, which permitted indoor gatherings without restriction at "events, arts, and entertainment venues" holding up to 250 people. And on May 17, 2021, Cuomo issued NYS Executive Order No. 202.108, which lifted all capacity limits based on percentage of maximum occupancy.  As the plaintiff theatres all hold, at most, 199 people, the plaintiffs were, effective May 19, able to operate at full capacity without any state-mandated social distancing or masking, as long as they required audience members to provide proof of vaccination status. Alternatively, they could operate at full capacity with social distancing if they choose not to restrict entry on account of vaccination status. (Lutterloh Decl. Ex. F.) Whether or not to require proof of vaccination status rests entirely with the theatres.

At the present time, there is absolutely no restriction on the plaintiffs' ability to operate their theatres at their full capacity. By virtue of the Governor's decision to end of what was known as "New York on Pause," Plaintiffs have obtained the equivalent of the principal relief that they have always sought in this lawsuit – the right to "reopen on equal terms as other similar venues." (Proposed Amended Complaint ¶ 10.)

**The Motion Before the Court**

Nonetheless, on May 5, 2021 – two days after Cuomo's announcement – plaintiffs filed a motion for leave to amend.[1] (Dkt. 62). The motion was accompanied by a Proposed Amended Complaint, in which the plaintiff theatres both reasserted all of their original claims for relief, and added an additional count alleging that E.Os. 202.3-202.8, 202.10-202.14, 202.28, 202.31, 202.34-202.35, 202.81, and 202.98 – which is to say, all Executive Orders issued prior to E.O. 202.107 that had impacted plaintiffs' operations – violated their First Amendment rights. This theory was not originally pleaded, but as a result of questions raised by the court it had been lurking on the fringes of the case for a couple of months.

In their Proposed Amended Complaint, plaintiffs allege that the above-listed series of Executive Orders issued by the Governor beginning in March 2020 had resulted in the shutdown of all "non-essential" businesses in the State – known as "New York on PAUSE" – including Plaintiffs' theaters and comedy clubs; that the Mayor issued City-wide orders authorizing the enforcement of the State's orders; and that such shutdown impermissibly targeted businesses engaged in First Amendment-protected artistic activity, while businesses deemed "essential" and religious institutions were permitted to operate with varying limitations on capacity. The Proposed Amended Complaint further alleged that, beginning on March 21, 2021, the Governor began to issue orders rolling back the shutdown – specifically EO 202.98, which permitted plaintiffs to reopen at 33% or up to 150 people, subject to social distancing, face covering, disinfecting, and negative COVID test requirements – and acknowledged that, on May 3, 2021, the Governor had announced a plan to lift capacity limits from most businesses in New York, including plaintiffs' theaters, as of May 19, 2021. However, plaintiffs alleged that the Governor "made clear when

---

[1] Leave to amend as of right was not available because the Mayor had long since filed an answer to the complaint. See Fed. R. Civ. P. 15(a)(2).

announcing the plans for a tentative May 19 reopening that these plans were subject to change

depending on COVID-19 transmission rates and that it was entirely possible that theaters or other

businesses could be shut down once again without notice." (Proposed Amended Complaint ¶ 45.)[2]

In the Proposed Amended Complaint, plaintiffs again seek injunctive and declaratory

relief.  Specifically, they seek an injunction preventing defendants from imposing in the future (1)

any lower capacity limits on the plaintiff theaters as compared to other similar venues, and (2) any

health and safety requirements on the plaintiff theaters that are more restrictive than the least

restrictive requirements imposed on any similar venues.  They also seek a declaration that

defendants' future enforcement of lower capacity limits against the plaintiff theaters, as compared

to other similar venues, would violate the First and Fourteenth Amendments.

While the original complaint demanded actual damages in an unspecified amount, the

proposed Amended Complaint seeks only nominal damages of $1 for any constitutional violation

that may have occurred.  It also drops the New York State Attorney General and the State of New

York as defendants.

Both the Governor and the Mayor opposed the motion, arguing that amendment would be

futile because the claims Plaintiffs seek to assert in the Proposed Amended Complaint are now

moot, or (in the case of the Governor) are barred by the Eleventh Amendment.  The Mayor also

argued that amendment would be futile because no viable claim was alleged against him. (Dkts.

79, 81.)

---

[2] The Proposed Amended Complaint was drafted and filed before E.O. 202.107 took effect and suggested that it might not ever actually take effect. As we know now, the order did take effect and almost three months have passed with no suggestion that plaintiffs' operations will be subject in the future to a restriction similar to those in force at the height of the pandemic.

**DISCUSSION**

The plaintiffs have moved for leave to amend their complaint. Leave to amend is to be granted liberally – especially at this relatively early point in the progress of a lawsuit. Fed. R. Civ. P. 15. *Rutolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  However, leave to amend will not be granted when amendment would be futile – that is, when the claim asserted would be dismissed on motion. *Id*.

**I.     The Motion for Leave to Amend Is Granted In Part And Denied In Part**

The principal issue implicated by the motion is whether the reopening of theatres and other event spaces in New York City, which occurred three months ago, has rendered this lawsuit moot. Until last year, I submit that the answer would have been a clear "yes." Plaintiffs have obtained, via the issuance of Executive Orders 202.107 and 202.108, the very relief they sought to obtain via an injunction; and their motion for leave to amend confirms that they are dropping their claim for actual damages for any constitutional violation that resulted from the prior executive orders.

However, a handful of Supreme Court cases in the last ten months have changed the concept of "mootness" as it applies to this case.

*A.   The Law*

In two recent cases dealing with COVID restrictions, the Court held that the government's withdrawal or modification of a COVID restriction in the face of a request for emergency injunctive relief would not moot that request if the applicant remains "under a constant threat" that government officials would use their power to reinstate the challenged restriction. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) ("*RCD*"); *Tandon v. Newsom*, 593 U.S __, 141 S. Ct. 1294 (2021). As my colleague Judge Crotty recently put it:

> *Roman Catholic Diocese* and *Tandon,* together, articulate two mootness principles that are of concern here; (1) a lawsuit brought against COVID restrictions is not simply moot because the restrictions at issue have been rescinded; and (2) if the

> COVID restrictions (at issue) have been rescinded in the course of litigation, the relevant inquiry is whether the plaintiff remains under a constant threat of those restrictions being reintroduced in the future.

*Hopkins Hawley LLC v. Cuomo*, 20 civ. 10932 (PAC), 2021 WL 1894277, at *4 (S.D.N.Y. May 11, 2021). In *Hopkins Hawley*, my colleague denied a motion to dismiss as moot a lawsuit brought by persons whose livelihoods depend on the restaurant industry, challenging the constitutionality of a COVID-related limitation on dining venues, even though the regulation under attack had been rescinded by the Governor. The court found it impossible to conclude that the plaintiffs were not under "constant threat" that the challenged regulation would be reimposed – even though he admitted that was highly unlikely – just because of the uncertainty surrounding COVID.

However, a very recent Second Circuit decision suggests that that "uncertainty surrounding COVID," without more, is an insufficient basis on which to conclude that plaintiffs in a case like this one are under a "constant threat" that restrictions no longer in effect will be reintroduced in the future.

In *36 Apartment Associates, LLC v. Cuomo*, No. 20-2565-cv, 2021 WL 3009153 (2d Cir. July 16, 2021), the Second Circuit dismissed an appeal taken by three residential landlords from an order of this court, which granted summary judgment dismissing a claim that Governor Cuomo had violated the constitutional rights of landlords by issuing another COVID era regulation, E.O. 202.28, which banned evictions and temporarily allowed tenants to apply their security deposit funds to rents due and owing.  The order had expired while the appeal was pending, and the State sought dismissal on mootness grounds.  Notwithstanding *RCD* and *Tandon,* the Circuit granted the motion. The Circuit rejected the plaintiffs' argument that they remained under a "constant threat" that the Governor might reinstate the challenged restrictions because COVID had not yet been conquered: "We are not persuaded that the circumstances under which the [provision] might

7

be reinstated are sufficiently likely to reoccur such that plaintiffs 'remain under a constant threat' of reinstatement."  2021 WL 3009153, at *2 (quoting *Tandon*, 141 S. Ct. at 1297).

The other case that must be considered is *Uzuegbunam v. Preczewski*, 593 U.S. __, 141 S. Ct. 792 (2021).  In *Uzuegbunam*, a student at a public university challenged a policy that prevented him from sharing his religious beliefs on campus.  The student initially sought injunctive relief and nominal damages.  The school discontinued the policy shortly after the lawsuit was filed, and the student graduated by the time his case reached the Supreme Court. The plaintiff abandoned as moot his claims for preliminary injunctive and declaratory relief, but maintained his claim for nominal damages.  The university sought dismissal of the appeal, but the Court, by an 8-1 vote, held that the petitioner satisfied the "redressability" element of Article III standing by seeking nominal damages for a completed violation of a legal right.  The Court's holding was limited to that issue.

Against that background of new developments, I turn to the plaintiff theatres' motion for leave to amend.

B.  *Forward Looking Injunctive Relief*

The motion is denied insofar as plaintiffs seek forward looking injunctive relief.

The issue is whether the plaintiffs can be said to be under "constant threat" that the offending but no-longer-effective regulations will be reimposed. Although the facts of this case are not identical either to those in *RCD, Tandon,* or for that matter *36 Apartment Associates*, they are, in the opinion of this court, far closer to those in *36 Apartment Associates* than to the two Supreme Court cases where the issue of "constant threat" was invented but not defined.

So let us first consider why, in those cases, the Supreme Court could make a finding that the plaintiffs were under "constant threat" that the regulations they challenged would be reimposed.

In *RCD*, the challenged restrictions imposed capacity limits and social distancing requirements on houses of worship in areas of the State classified as "orange" or "red" (i.e., at higher risk of COVID transmission). The plaintiffs, whose churches and synagogues[3] were located in areas so classified, alleged that the restrictions to which they were subject were more stringent than those imposed upon non-religious "essential" activities in their zones, including bicycle repair shops, liquor stores, and acupuncturists. They asserted that this violated their First Amendment rights.

The plaintiffs' motion for a preliminary injunction against the regulations was denied in the district court, and that decision was affirmed in the Second Circuit. But when the plaintiffs sought Supreme Court review, the State changed the boundaries of the "orange" and "red" zones so that their houses of worship were no longer located in a zone where the challenged restrictions applied. The defendants then argued to the Supreme Court that the plaintiffs' claims were moot, even though the challenged regulation remained on the books. The Supreme Court disagreed and concluded that the challenged regulation was unconstitutional.

For "constant threat" purposes, the differences between *RCD* and this case are obvious.

First and foremost, at all times the regulations that were challenged as unconstitutional in *RCD* remained in force; the State did not rescind the regulations, but executed a maneuver to try to circumvent them. In our case, the allegedly offending regulations have been entirely withdrawn. That alone renders *RCD* inapposite when considering the "constant threat" issue.

---

[3] The plaintiffs in a companion case, *Agudath Israel of America v. Cuomo*, 141 S. Ct. 889 (Mem) (2020).

Second, in *RCD*, the plaintiffs' motion for a preliminary injunction was under heated litigation, and the sudden and precipitous change in the boundaries of the high-risk areas of New York City was an obvious litigation stratagem. In our case, the plaintiffs voluntarily withdrew their preliminary injunction motion two and a half months before the challenged Executive Orders were revoked, so there can be no claim that the rescinding of the regulations was a litigation maneuver designed to deprive this court of jurisdiction.

Third, in *RCD*, the State reclassified only the limited areas in which the plaintiff religious institutions were located from "orange" or "red" to "yellow;" the boundaries in other orange and red zones were left untouched, proving beyond peradventure that the change was being implemented for the sole purpose of trying to moot the case. In this case, the regulations affecting plaintiffs' operations were lifted along with regulations affecting numerous other enterprises and activities as part of a state-wide reopening.

Finally, in *RCD*, the Supreme Court majority believed that Governor Cuomo had expressed hostility toward religious institutions because of their opposition to COVID-related mandates, *see* 141 S. Ct. at 66. In this case, no one contends that the Governor has expressed any particular bias against small theatres that might lead to a genuine fear that regulations reflecting that bias would be reimposed.

In short, in *RCD* there was both an in-effect regulation that could be challenged as unconstitutional and reason to believe that the State might redraw the boundary lines to include the plaintiff houses of worship if the lawsuit was dismissed. The same cannot be said here.

*Tandon* came to the high court on an emergency appeal from the Ninth Circuit's refusal to enjoin the enforcement of a California COVID regulation pending appeal. As a result, the opinion neither explains the details of the challenged regulation nor makes any final determination (as

opposed to a finding of likelihood of success) on the merits. However, the 5-4 majority noted that *Tandon* represented the fifth time in less than six months that the Supreme Court had "summarily rejected" the Ninth Circuit's analysis of California's COVID restrictions on religious institutions. 141 S. Ct. at 1297.  Given a consistent pattern of activity by State officials, whom the majority accused of repeatedly "moving the goalposts" where regulation of religious activity during COVID was concerned, 141 S. Ct. at __, citing *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 720 (2021) (Gorsuch, dissenting), the majority  concluded that the plaintiffs remained under constant threat that the State would try to restrict the activities of houses of worship yet again – even though California had preemptively withdrawn the offending regulation once the Supreme Court became involved.

Nothing in the facts of this case points to any similar threat. Of particular significance, we have here no "moving the goalposts" where the regulation of plaintiffs' operations are concerned. In fact, on the "constant threat" scale, this case is far more similar to *36 Apartment Associates.* The regulations in this case – like those in *36 Apartment Associates* – are no longer on the books; they have been ineffective for some months, without any overt threat of reimposition. Moreover, the offending regulations were not circumvented or rescinded in the face of a motion for emergency relief, let alone as part of a string of repeatedly rejected challenges, as in *Tandon*. Rather, they ceased to operate as part of a state-wide reopening and the concomitant rescinding of a panoply of regulations applicable to most industries, types of businesses, and cultural operations – just as the regulation challenged in *36 Apartment Associates* ceased to apply to New York State landlords generally.

I acknowledge that, in *36 Apartment Associates,* the challenged regulation in question was not affirmatively rescinded, but was simply allowed to expire by its terms. But that is not a

11

difference that makes a difference for "constant threat" purposes – especially where, as here, the record reveals not the slightest suggestion that the Governor intends either to shut down small theatres again or to reimpose capacity limiting rules that would raise constitutional concerns.

In short, the plaintiffs in this case – unlike the plaintiffs in *RCD* and *Tandon* – have not identified any continuing "threat" to their renewed operations, aside from the possibility that health conditions could deteriorate again. But that is precisely what the Second Circuit deemed insufficient proof of any "constant threat" in *36 Apartment Associates*. The Circuit's position is perfectly understandable; if "constant threat" were interpreted as Plaintiffs suggest, then nothing will ever be moot, because we are all under "constant threat" that some new incurable virus will suddenly emerge, or some terrible natural disaster will occur, or the sky will fall, any of which might lead government to issue orders impacting the operations of various enterprises. Nor does the Circuit run afoul of the Supreme Court by so concluding. The majority in *RCD* and *Tandon* did not suggest, let alone hold, that COVID alone created a "constant threat" that an allegedly-offending-but-no-longer-applicable regulation would be reimposed, or that no case involving such a regulation could ever be deemed moot. Rather, the Court went out of its way to cite facts *in addition to the public health threat* that suggested a lack of mootness.

Plaintiffs argue that they remain under "constant threat" that the Governor will reimpose regulations that would impact their operations because the Governor himself "made it clear" that he could and would reimpose limits on their activities when he announced E.O. 202.107 and E.O. 202.108 in May of this year. (Proposed Amended Complaint ¶ 45.)  That, however, is not correct. The text of these new orders[4] – which this court considers the best indicator of what the Governor

---

[4] The Court may take judicial notice of court filings and other matters of public record, including newspaper articles and media interviews, without converting a motion to dismiss into a motion for summary judgment. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); Fed. R. Evid. 201(c)(2).

may or may not do in the future – contains no suggestion that the challenged restrictions will be reimposed. Moreover, the proposed amended pleading itself makes clear that there is no such threat at this time.  When asked whether the rescinded regulations might be reimposed, the Governor said this: "What happens next? What happens next is what the science and data says happens next.  Well what happens in two months?  What happens in three months?  What happens in four months?  I don't know.  Unless you have a crystal ball, you don't know either, and then you'd have to believe in a crystal ball, even if you had a crystal ball, I followed the numbers and the science and the data." (Proposed Amended Complaint ¶ 46.) That is nothing more than saying that COVID is still with us and no one can know today what might be required to fight it tomorrow – precisely the argument for a finding of "constant threat" that was rejected by the Second Circuit in *36 Apartment Associates*.

It is certainly true that, if health conditions go seriously south once again – and they could, given the variant forms of COVID that are presently spreading – state authorities might impose rules of some sort would impact the operations of the plaintiff theatres. And perhaps those rules would even raise the same thorny constitutional issues that the plaintiff theatres identified in this case – namely, that, while being engaged in a First Amendment-protected activity, plaintiffs were being treated differently than other, similarly situated actors, most particularly the religious institutions that were plaintiffs in *RCD* and *Tandon*.

But perhaps they would not.  As the Governor said, "Who knows?" what as-yet undrafted restrictions designed to combat a resurgence of COVID might look like? The statement quoted in the Proposed Amended Complaint does not suggest that any regulations the State might impose in the future would be identical in impact to the ones he has withdrawn, and very recent developments only underscore the "substantial certainty," as we used to say in law school, that if new regulations

are imposed, they are likely to differ dramatically from the regulations that were put in place at the height of the pandemic and prior to widely available vaccines. Because the Delta variant has created what the Director of the CDC recently called "a pandemic of the unvaccinated,"[5] future regulations might well be directed toward restricting the activity of the unvaccinated, as opposed to restricting the activity of entire classes of business operations.[6] This possibility exposes the futility of litigating over what the future might bring.

Significantly, Plaintiffs did not and do not challenge the state's police power to impose all health-related restrictions. What got plaintiffs into court was their claim that the original executive orders impermissibly discriminated against them, in that other, similarly situated entities were allowed to operate with fewer or no restrictions. Those allegedly discriminatory regulations are no longer in effect. Without having any actual regulation before the court, it is impossible to decide whether it would subject the plaintiffs to any sort of unconstitutional "discrimination," or whether it could qualify as a perfectly legal "time, place and manner" restriction on First Amendment activity.  Such issues cannot and ought not be decided "in the air."

Significantly, *RCD* was not decided "in the air." In that case the Supreme Court addressed the lawfulness of actual regulations that were on the books and capable of being enforced. But to the extent that it seeks forward looking injunctive relief, the Proposed Amended Complaint is addressed to purely hypothetical future regulations, the contents of which are unknown and cannot be known. All a court could realistically do today is issue an injunction directing the Governor and the Mayor not to run afoul of the Constitution if he ever issues new regulations that would impact

---

[5] https://www.nytimes.com/2021/07/16/health/covid-delta-cdc-walensky.html.
[6] On August 3, 2021, Mayor de Blasio announced that unvaccinated New Yorkers would be prohibited from entering certain types of venues: restaurants, theatres, and gyms. A regulation of that type is not comprehended by the Proposed Amended Complaint and does not raise the same constitutional concerns as the regulation that was withdrawn some months ago.

plaintiffs' operations. But public officials are already subject to that requirement, in everything they do; a court order would add nothing to his existing legal obligation – a fact that would render any decision from this Court discussing forward-looking relief "advisory" in the purest sense of the word.

Finally, it bears noting that, thanks to new procedures imposed by the New York State Legislature, no new regulation affecting plaintiffs' operations can be imposed upon the theatres unawares – or, for that matter, by the Governor acting alone. The Governor has been shorn by the Legislature of his emergency power to take unilateral action, and there is no constant threat that the Governor will get his sweeping powers back. As a result, before the Governor can modify or extend an executive order, the Commissioner of Health must certify that the modification is designed to address "the spread and/or reduction of the COVID-19 virus, facilitate vaccine distribution or administration, or require the use of face coverings," 2021 N.Y. ALS 71, § II(1). The Commissioner must also present his certification, together with a detailed explanation of how the modification will achieve that goal, to the State Legislature for notice and comment, as well as to any municipality explicitly targeted by the order. § II (2)(a) and (b). The notice and comment period lasts for five days.  § II (2)(b) and (c).

These new requirements make it impossible for the Governor to issue any unilateral order that would shut down plaintiffs' operations immediately. Plaintiffs will have sufficient time to study any proposed order and to identify any actual, as opposed to hypothetical, constitutional defect. And if there is to be a lawsuit for forward looking injunctive relief, it will address, not an expired order, or a theoretical order, but an order that is actually on the books. Which will give the court a real case or controversy to decide, not a hypothetical one on which to opine.

So sufficient unto the day. Plaintiffs' motion for leave to amend is denied insofar as they seek forward looking injunctive and declaratory relief addressing regulations that have yet to be propounded. Amendment would be futile, because any such hypothetical claim would be dismissed on Article III grounds.

C. *Other Aspects of the Motion for Leave to Amend*

There are, however, aspects of the plaintiffs' motion that can be granted.

For example, the court readily grants the motion to amend to the extent that Plaintiffs seek to drop the New York Attorney General and the State of New York as defendants in this lawsuit. It also grants certain other purely technical amendments: an updating of the facts to discuss developments since the filing of the original complaint; the withdrawal of a state law equal protection claim; and its replacement with a claim for violation of the plaintiff theatres' rights under the First Amendment to the United States Constitution.

The court also grants the motion for leave to amend to the extent that plaintiffs seek to drop their claim for actual damages and replace it with a claim for nominal damages of $1 as against Mayor de Blasio. After *Uzuegbunam*, it is clear that the case is not moot as long as such a claim is pleaded, so this amendment is not futile; to the extent that plaintiffs are seeking damages for a completed violation of a legal right, nominal though those damages be, they have Article III standing. I happen to agree with Justice Roberts, who dissented in *Uzuegbunam* on ground that, if this be the law, no lawsuit will ever be moot again. Unfortunately, this is now the law.

The Mayor argues that this aspect of the motion should be denied as futile because the Governor issued the offending orders and the Mayor is not alleged to have done anything that violates the plaintiffs' constitutional rights. That is not correct. Both the original and the Proposed Amended Complaint allege that the Mayor issued two municipal executive orders authorizing

enforcement of the allegedly unconstitutional State orders.  (Proposed Amended Complaint ¶¶ 25-27.)  Therefore, a claim against him for nominal damages does not fail to state a claim and amendment would not be futile.  To the extent that plaintiffs require a declaration that the now-rescinded regulations were unconstitutional in order to obtain their $1, they can obtain that relief as well.

However, I must deny the motion for leave to amend to the extent that plaintiffs seek the same nominal damages and corresponding declaratory relief against Governor Cuomo. That aspect of the proposed amendment would be futile, because the Eleventh Amendment bars such claims against the Governor.

Cuomo, who is sued only in his official capacity and not in his individual capacity, argues that the Eleventh Amendment precludes the court from awarding any damages against state officials sued in their official capacities, *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), and also prohibits judgments against state officers declaring that they violated federal law in the past, *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 US. 139, 146 (1993).  Cuomo is quite obviously a state official, and so there is no viable claim against him for nominal damages or backward looking declarator relief – not because those claims are moot, but because this Court lacks the power to grant the relief sought as against Cuomo. *Williams v. Marinelli*, 987 F.3d 188, 196 (2d Cir. 2021).

Plaintiffs argue that a nominal damages award against Cuomo is not barred because it is equitable, not monetary, in nature, since it is "incidental to or intertwined with injunctive relief." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 571, (1990) (quoting *Tull v. United States*, 481 U.S. 412, 424 (1987)).  But plaintiffs' claim for injunctive relief against the rescinded orders is moot (*see infra*, pp. 8-15), and I have denied their motion to amend their

complaint to assert a claim for an injunction against a theoretical and non-existent future regulation.  As a result, there is no claim for injunctive relief with which a claim for nominal damages against the Governor can be intertwined.

Additionally, the cases Plaintiffs cite for the proposition that nominal damages in these instances are "equitable" in nature discussed only whether certain types of monetary relief – back pay in *Chauffeurs* and civil penalties in *Tull* – were equitable or legal in nature, thereby entitling a party to a jury trial under the Seventh Amendment.  This Court has yet to locate a single Second Circuit case extending this line of cases to Eleventh Amendment sovereign immunity.

Even if there were, I would find that the nominal damages sought by Plaintiffs in this case are legal, not equitable, in nature because they are not "restitutionary," as were the nominal damages awarded in *Chauffeurs*.  Such damages do not restore to Plaintiffs anything that was rightfully theirs, but rather "signif[y] that 'the law recognizes the importance to organized society that [constitutional] rights be scrupulously observed.'"  *See Hopkins*, 199 F.3d at 977 (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).  For substantially the reasons articulated in *Hopkins*, I conclude that the nominal damages sought by Plaintiffs from the Governor in this case are legal in nature, and so are barred by the Eleventh Amendment.[7]

## II.    Any Remaining Claims for Backward-Looking Injunctive Relief are Moot

The Governor has indicated that in addition to opposing the motion to amend on mootness grounds, he will move to dismiss the entire action as moot.  Because courts may *sua sponte* address the issue of whether a claim has been rendered moot and so can be dismissed, *North Carolina v.*

---

[7] Several other courts of appeals have confirmed that *nominal* damages, in particular, are barred by the Eleventh Amendment.  *See American Civil Liberties Union v. United States Conference of Catholic Bishops*, 705 F.3d 44, 53 n.7 (1st Cir. 2013); *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1022 & n.5 (9th Cir. 2010); *Hopkins v. Saunders*, 199 F.3d 968, 978 (8th Cir. 1999).

*Rice*, 404 U.S. 244, 246 (1971), I will save the taxpayers of New York the expense and resolve that issue now.

Any claim against the Governor for injunctive relief relating to the now-rescinded regulations must be dismissed as moot. Plaintiffs have no basis upon which to obtain an injunction against regulations that have not been in effect for months. Plaintiffs recognized as much by voluntarily withdrawing their claim for injunctive relief, just as the plaintiff in *Uzuegbunam* did. Therefore, the court will dismiss, on mootness grounds, any claim against Cuomo that seeks injunctive relief addressed to the rescinded regulations.

In light of this ruling, this case is dismissed as against Governor Cuomo in its entirety.

Just as the complaint must be dismissed against Cuomo to the extent that it seeks injunctive relief addressed to the now-rescinded Executive Orders (and any implementing regulations that were issued by the Mayor with respect to those orders), it must be dismissed against de Blasio. That claim, for the reasons discussed at length above, is moot.

## III.   Future Litigation Options

So what remains of this case is a claim for backward looking nominal damages and corresponding declaratory relief against the Mayor.

At this point, it seems to me that the Mayor has three options.

He can move to dismiss the claim for nominal damages and corresponding declaratory relief on the ground of qualified immunity. Nothing that has been litigated to date addresses that issue.

He can litigate the constitutionality of the rescinded orders and try to defeat the plaintiffs' claim for backward-looking monetary relief.

Or he can tender $1 to the plaintiffs, under cover of a letter in which he denies liability and asserts immunity but refuses to waste another dime of taxpayer money on what is an essentially

meaningless case. In his dissent in *Uzuegbunam,* the Chief Justice endorsed that solution to the problem raised by the majority's ruling (nothing is ever moot), applying the reasoning of the Court in *California v. San Pablo & Tulare R. Co*, 149 U.S. 308, 313-14 (1893). It is certainly an option.

The ball is in the Mayor's court.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend their complaint is granted in part and denied in part as indicated in this decision. Paragraphs 45, 46, and the claim for injunctive relief (p. 18, item 3) are deemed stricken from the Proposed Amended Complaint, which is otherwise deemed the First Amended Complaint.

All remaining claims against Governor Cuomo in what is now the First Amended Complaint are dismissed.

Any claim against Mayor de Blasio for injunctive relief addressed to the rescinded regulations is dismissed as moot.

The clerk of court is directed to close the motion at docket no. 73.

This constitutes the decision and order of the court. This is a written opinion.

Dated: August 4, 2021

_____
U.S.D.J.

BY ECF TO ALL COUNSEL